No. 23-10832

---

# In the United States Court of Appeals for the Fifth Circuit

---

JASON COLEMAN, ON BEHALF OF THE RVNB HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, AND ON BEHALF OF A CLASS OF ALL OTHER PERSONS SIMILARLY SITUATED; JESSICA CASEY, ON BEHALF OF THE RVNB HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, AND ON BEHALF OF A CLASS OF ALL OTHER PERSONS SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

NEIL M. BROZEN; ROBERT PETERSON, JR.; VASILIA PETERSON; MIKE PAXTON; STERLING INVESTMENT PARTNERS III, L.P.; NICK BOURAS; NICOLE PETERSON 2012 IRREVOCABLE TRUST; BROOKE PETERSON 2012 IRREVOCABLE TRUST,

*Defendants-Appellants.*

---

On Appeal from the United States District Court for the Northern District of Texas, Dallas Division

---

## RECORD EXCERPTS OF APPELLANTS

---

Todd D. Wozniak (counsel of record)
**HOLLAND & KNIGHT LLP**
1180 West Peachtree Street NW, Suite 1800
Atlanta, GA 30309
404-817-8431
todd.wozniak@hklaw.com

Lindsey R. Camp
**HOLLAND & KNIGHT LLP**
West Tower, 777 S. Flagler Dr., Suite 1900
West Palm Beach, FL 33401
404-817-8439
lindsey.camp@hklaw.com

Melissa Davis Andrews
**HOLLAND & KNIGHT LLP**
98 San Jacinto Blvd., Suite 1900
Austin, TX 78701
512-469-6100
melissa.davis@hklaw.com

Counsel for Defendants-Appellants Robert Peterson, Jr.; Vasilia Peterson; Mike Paxton; Sterling Investment Partners III, L.P.; Nick Bouras; Nicole Peterson 2012 Irrevocable Trust; Brooke Peterson 2012 Irrevocable Trust

J. Christian Nemeth
**MCDERMOTT WILL & EMERY, LLP**
333 SE 2nd Ave., Suite 4500
Miami, FL 33131
305-358-3500
jcnemeth@mwe.com

Peter B. Allport
**LEVIN SCHREDER & CAREY, LTD.**
120 N. LaSalle St., Floor 38
Chicago, IL 60602
312-895-6359
pallport@lsclaw.com

Counsel for Defendant-Appellant Neil M. Brozen

**T**ABLE OF **C**ONTENTS

**Tab #**                                                                    **ROA**

1       Docket Sheet …………………………………………ROA.1

2       Notice of Appeal …………………………………..ROA.1728

3       Memorandum Opinion and Order …………………………....ROA.1687

4       Declaration of Robert Peterson ………………………………ROA.168

5       2018 Plan Amendment …………………………………………ROA.171

6       Declaration of Nick Bouras …………………………………..ROA.180

7       Plan Amendment and Termination Provision ……………..ROA.235

8       2017 Plan Amendment ………………………………………ROA.246

9       Excerpts of Defendants' Motion to Compel
        Individual Arbitration ……………………………………...ROA.588

10      Certificate of Service

# Tab 1

# U.S. District Court
# Northern District of Texas (Dallas)
# CIVIL DOCKET FOR CASE #: 3:20-cv-01358-E

Coleman et al v. Brozen et al
Assigned to: Judge Ada Brown
 Case in other court:  USCA5, 23-10832
                    Texas Eastern, 4:19-cv-00705
Cause: 28:1132 E.R.I.S.A.

Date Filed: 05/27/2020
Jury Demand: None
Nature of Suit: 791 Labor: Employee
Retirement Income Security Act (ERISA)
Jurisdiction: Federal Question

**Plaintiff**

**Jason Coleman**
*on behalf of the RVNB Holdings, Inc.*
*Employee Stock Ownership Plan, and on*
*behalf of a class of all other persons*
*similarly situated*

represented by **Gregory Yann Porter**
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
Email: gporter@baileyglasser.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Alexandra Langley Serber**
Bailey and Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
Email: aserber@baileyglasser.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**J Douglas Uloth**
Uloth, P.C.
5080 Spectrum Drive
Suite 1000 East
Addison, TX 75001
469/791/0411
Fax: 888/780-5946
Email: douguloth@ulothlaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**James Lawrence Kauffman**
Bailey & Glasser LLP

1055 Thomas Jefferson Street
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
Email: jkauffman@baileyglasser.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John Saul Edwards, Jr**
Ajamie LLP
711 Louisiana Street
Suite 2150
Houston, TX 77002
713-860-1600
Fax: 713-860-1699
Email: jedwards@ajamie.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Patrick Muench**
Bailey & Glasser LLP
318 W Adams St
Suite 1512
Chicago, IL 60606
312-500-8680
Email: pmuench@baileyglasser.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ryan Thomas Jenny**
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
Email: rjenny@baileyglasser.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas R Ajamie**
Ajamie LLP
711 Louisiana
Suite 2150
Houston, TX 77002
713/860-1600
Fax: 713/860-1699
Email: tajamie@ajamie.com
*ATTORNEY TO BE NOTICED*

*Bar Status: Admitted/In Good Standing*

**Plaintiff**

| | | |
|---|---|---|
| **Jessica Casey**<br>*on behalf of the RVNB Holdings, Inc.*<br>*Employee Stock Ownership Plan, and on*<br>*behalf of aa class of all other persons*<br>*similarly situated* | represented by | **Gregory Yann Porter**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |

**Alexandra Langley Serber**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**J Douglas Uloth**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**James Lawrence Kauffman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John Saul Edwards, Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Patrick Muench**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ryan Thomas Jenny**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas R Ajamie**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Neil M Brozen**                                represented by   **Christopher M LaVigne**
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
214-665-3675
Fax: 214-665-5975
Email: lavignec@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**J Christian Nemeth**
McDermott Will & Emery LLP
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
305-358-3500
Fax: 305-347-6500
Email: jcnemeth@mwe.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Nicole Nicole Figueroa**
McDermott Will & Emery LLP
2501 North Harwood Street
Suite 1900
Dallas, TX 75201-4629
214-295-8062
Fax: 972-767-0190
Email: nfigueroa@mwe.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Peter Beauregard Allport**
Levin Schreder & Carey LTD
120 N LaSalle Street, Floor 38
Chicago, IL 60602
312-332-6300
Fax: 312-332-6393
Email: pallport@lsclaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Robert Peterson, Jr**                          represented by   **Micah Randall Prude**
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201-2533
214-969-1795
Fax: 214-880-3113
Email: micah.prude@hklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher S Dodrill**
Greenberg Traurig
2200 Ross Ave
Suite 5200
Dallas, TX 75201
214-665-3681
Fax: 214-665-3601
Email: dodrillc@gtlaw.com
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Christopher M LaVigne**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Lindsey R Camp**
Holland & Knight LLP
West Tower
777 S Flagler Dr
Suite 1900
West Palm Beach, FL 33401
404-817-8439
Fax: 404-881-0470
Email: lindsey.camp@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Todd D Wozniak**
Holland & Knight LLP
1180 W Peachtree Street, Suite 1800
Atlanta, GA 30309
404-817-8500
Fax: 404-881-0470
Email: todd.wozniak@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Vasilia Peterson**                    represented by    **Micah Randall Prude**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher S Dodrill**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Christopher M LaVigne**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Lindsey R Camp**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Todd D Wozniak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

Mike Paxton                    represented by    **Micah Randall Prude**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher S Dodrill**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Christopher M LaVigne**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Lindsey R Camp**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Todd D Wozniak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

Paul Generale                  represented by    **Christopher M LaVigne**
*TERMINATED: 04/03/2020*                        (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher S Dodrill**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Todd D Wozniak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

| | | |
|---|---|---|
| **Sterling Investment Partners III LP** | represented by | **Micah Randall Prude** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher S Dodrill**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Christopher M LaVigne**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Lindsey R Camp**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Todd D Wozniak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

| | | |
|---|---|---|
| **Nick Bouras** | represented by | **Micah Randall Prude** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher S Dodrill**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Christopher M LaVigne**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Lindsey R Camp**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Todd D Wozniak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Nicole Peterson 2012 Irrevocable Trust**        represented by    **Micah Randall Prude**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher M LaVigne**
(See above for address)
*TERMINATED: 04/11/2022*
*Bar Status: Admitted/In Good Standing*

**Lindsey R Camp**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Todd D Wozniak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Brooke Peterson 2012 Irrevocable Trust**        represented by    **Micah Randall Prude**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher M LaVigne**
(See above for address)
*TERMINATED: 04/11/2022*

*Bar Status: Admitted/In Good Standing*

**Lindsey R Camp**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Todd D Wozniak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/27/2019 | 1 (p.25) | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0540-7455463.), filed by Jessica Casey, Jason Coleman. (Attachments: # 1 (p.25) Civil Cover Sheet, # 2 (p.57) Summons(es) for Robert Peterson, # 3 (p.59) Summons(es) for Vasilia Peterson, # 4 (p.61) Summons(es) for Paul Generale, # 5 (p.63) Summons(es) for Nick Bouras)(Ajamie, Thomas) (Attachment 1 replaced on 9/30/2019) (rpc, ). [Transferred from Texas Eastern on 5/27/2020.] (Entered: 09/27/2019) |
| 09/27/2019 |  | Case Assigned to District Judge Sean D. Jordan. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 09/30/2019) |
| 09/30/2019 |  | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice Regarding Consent to Proceed Before Magistrate Judge.* (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 09/30/2019) |
| 10/04/2019 | 2 (p.57) | SUMMONS Issued as to Mike Paxton. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/04/2019) |
| 10/04/2019 | 3 (p.59) | SUMMONS Issued as to Neil M. Brozen. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/04/2019) |
| 10/04/2019 | 4 (p.61) | SUMMONS Issued as to Nick Bouras. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/04/2019) |
| 10/04/2019 | 5 (p.63) | SUMMONS Issued as to Robert Peterson, Jr. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/04/2019) |
| 10/04/2019 | 6 (p.65) | SUMMONS Issued as to Sterling Investment Partners III, L.P. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/04/2019) |
| 10/04/2019 | 7 (p.67) | SUMMONS Issued as to Vasilia Peterson. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/04/2019) |
| 10/04/2019 | 8 (p.69) |  |

| | | |
|---|---|---|
| | | SUMMONS Issued as to Paul Generale. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/04/2019) |
| 10/11/2019 | 9 (p.71) | TRANSFER ORDER. It is hereby ORDERED that this civil action is transferred to the Honorable Amos L. Mazzant, effective immediately. Signed by District Judge Sean D. Jordan on 10/11/2019. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/11/2019) |
| 10/17/2019 | 10 (p.72) | SUMMONS REISSUED as to Mike Paxton. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 10/17/2019) |
| 11/04/2019 | 11 (p.74) | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Vasilia Peterson.( LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/04/2019) |
| 11/04/2019 | 12 (p.75) | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Paul Generale.( LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/04/2019) |
| 11/05/2019 | | Defendant's Unopposed FIRST Application for Extension of Time to Answer Complaint is granted pursuant to Local Rule CV-12 for Vasilia Peterson to 11/20/2019. 14 Days Granted for Deadline Extension.( baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/05/2019) |
| 11/05/2019 | | Defendant's Unopposed FIRST Application for Extension of Time to Answer Complaint is granted pursuant to Local Rule CV-12 for Paul Generale to 11/18/2019. 14 Days Granted for Deadline Extension.( baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/05/2019) |
| 11/08/2019 | 13 | ***DEFICIENT DOCUMENT - PLEASE DISREGARD*** <br><br> STIPULATION by Jessica Casey, Jason Coleman. (Ajamie, Thomas) Modified on 11/12/2019 (baf, ). [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/08/2019) |
| 11/12/2019 | | NOTICE of Deficiency regarding the JOINT STIPULATION submitted DOCUMENT 13 - A MOTION AND PROPOSED ORDER ARE REQUIRED. Correction should be made by ONE BUSINESS DAY (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/12/2019) |
| 11/13/2019 | 14 (p.76) | Joint MOTION for Extension of Time to File Answer / *Set Response Deadline* by Jessica Casey, Jason Coleman. (Attachments: # 1 (p.25) Text of Proposed Order Granting Joint Motion to Set Response Deadline)(Ajamie, Thomas) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/13/2019) |
| 11/15/2019 | 15 (p.80) | ORDER - GRANTING 14 (p.76) Motion for Extension of Time to Answer. Signed by District Judge Amos L. Mazzant, III on 11/15/2019. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 11/15/2019) |
| 01/14/2020 | 16 (p.81) | NOTICE of Attorney Appearance - Pro Hac Vice by James L. Kauffman on behalf of All Plaintiffs. Filing fee $ 100, receipt number 0540-7610230. (Kauffman, James) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 01/14/2020) |
| 01/14/2020 | 17 (p.83) | NOTICE of Attorney Appearance - Pro Hac Vice by Alexandra Langley Serber on behalf of All Plaintiffs. Filing fee $ 100, receipt number 0540-7610276. (Serber, Alexandra) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 01/14/2020) |

| | | |
|---|---|---|
| 01/14/2020 | 18 (p.85) | NOTICE of Attorney Appearance - Pro Hac Vice by Ryan Thomas Jenny on behalf of All Plaintiffs. Filing fee $ 100, receipt number 0540-7610292. (Jenny, Ryan) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 01/14/2020) |
| 01/14/2020 | 19 (p.87) | NOTICE of Attorney Appearance - Pro Hac Vice by Gregory Yann Porter on behalf of All Plaintiffs. Filing fee $ 100, receipt number 0540-7610321. (Porter, Gregory) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 01/14/2020) |
| 02/03/2020 | 20 (p.89) | NOTICE of Attorney Appearance by Xenia Nicole Figueroa on behalf of Neil M. Brozen (Figueroa, Xenia) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 02/03/2020) |
| 02/03/2020 | 21 (p.91) | Joint MOTION to Set Date Certain for Defendants to Answer or Otherwise Respond to the Complaint by Nick Bouras, Paul Generale, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P.. (Attachments: # 1 (p.25) Text of Proposed Order Order Granting Joint Motion to Set Date Certain For Defendants to Answer or Otherwise Respond to the Complaint)(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 02/03/2020) |
| 02/04/2020 | 22 (p.96) | ORDER - GRANTING 21 (p.91) Motion to Set Date Certain for Defendants to Answer or Otherwise Respond to the Complaint. The Court ORDERS that the deadline for Defendants to respond to the Complaint is March 16, 2020. Signed by District Judge Amos L. Mazzant, III on 2/4/2020. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 02/04/2020) |
| 02/04/2020 | 23 (p.97) | NOTICE of Attorney Appearance - Pro Hac Vice by J Christian Nemeth on behalf of Neil M. Brozen. Filing fee $ 100, receipt number 0540-7645299. (Nemeth, J) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 02/04/2020) |
| 02/19/2020 | 24 (p.100) | NOTICE of Attorney Appearance by Christopher S. Dodrill on behalf of Nick Bouras, Paul Generale, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P.. (Dodrill, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 02/19/2020) |
| 03/16/2020 | 25 (p.101) | MOTION to Dismiss *Defendant Sterling Investment Partners III Motion to Dismiss and Brief in Support* by Sterling Investment Partners III, L.P.. (Attachments: # 1 (p.25) Text of Proposed Order Granting Defendant Sterling Investment Partners III Motion to Dismiss)(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/16/2020) |
| 03/16/2020 | 26 (p.111) | ANSWER to 1 (p.25) Complaint, *and Affirmative Defenses* by Neil M. Brozen.(Figueroa, Xenia) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/16/2020) |
| 03/16/2020 | 27 (p.149) | MOTION to Change Venue *Defendants Motion to Transfer Venue to the Northern District of Texas Pursuant to Valid Forum Selection Clause* by Nick Bouras, Paul Generale, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P.. (Attachments: # 1 (p.25) Exhibit 1 - Peterson Declaration, # 2 (p.57) Exhibit 2 - Bouras Declaration, # 3 (p.59) Exhibit 3 - Generale Declaration, # 4 (p.61) Text of Proposed Order Granting Defendants Motion to Transfer Venue to the Northern District of Texas Pursuant to Valid Forum Selection Clause)(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/16/2020) |
| 03/16/2020 | 28 (p.260) | ANSWER to 1 (p.25) Complaint, *Answer and Defenses to Complaint by Defendants Robert Peterson, Vasilia Peterson, Paul Generale, Mike Paxton, Nick Bouras, and Sterling Investment Partners III* by Nick Bouras, Paul Generale, Mike Paxton, |

| | | |
|---|---|---|
| | | Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P..(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/16/2020) |
| 03/18/2020 | | Counsel are reminded that the Court has not opted out of this court's Local Rules concerning courtesy copies; therefore, Counsel are asked to comply with Local Rule CV-5(a)(9) and Local Rule CV-10(b) with respect to sending courtesy copies to Judge Mazzant. Please send copies of pleadings that exceed 20 pages to Judge Mazzant's chambers. Please use tabs and dividers for exhibits, and please place voluminous pleadings in three-ring binder(s). (tls) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/18/2020) |
| 03/18/2020 | 29 (p.282) | NOTICE of Attorney Appearance - Pro Hac Vice by Todd D. Wozniak on behalf of All Defendants. Filing fee $ 100, receipt #0540-7713957. (jmv, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/18/2020) |
| 03/24/2020 | 30 (p.285) | ORDER GOVERNING PROCEEDINGS. Rule 26 Meeting Report due by 4/27/2020. Rule 16 Management Conference set for 5/12/2020 at 09:30 AM in Ctrm 208 (Sherman) before District Judge Amos L. Mazzant III. Signed by District Judge Amos L. Mazzant, III on 3/24/2020. (rpc, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/24/2020) |
| 03/24/2020 | 31 (p.295) | Unopposed MOTION to Amend/Correct 15 (p.80) Order on Motion for Extension of Time to Answer by Jessica Casey, Jason Coleman. (Attachments: # 1 (p.25) Text of Proposed Order)(Ajamie, Thomas) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/24/2020) |
| 03/25/2020 | 32 (p.299) | ORDER - GRANTING 31 (p.295) Motion to Amend Order. It is ORDERED that the deadline for Plaintiffs to file an amended complaint as of right pursuant to Fed. R. Civ. P. 15(a) is April 3, 2020; the deadline for Defendants to respond to the amended complaint is May 4, 2020; if Defendants file Rule 12 motions, Plaintiffs shall have until May 25, 2020, to file oppositions; Defendants shall have until June 8, 2020, to file replies; and Plaintiffs shall have until June 22, 2020, to file sur-replies. Signed by District Judge Amos L. Mazzant, III on 3/25/2020. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 03/25/2020) |
| 04/03/2020 | 33 (p.300) | AMENDED COMPLAINT against All Defendants, filed by Jessica Casey, Jason Coleman.(Ajamie, Thomas) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/03/2020) |
| 04/06/2020 | 34 (p.334) | ORDER - DENYING AS MOOT 25 (p.101) Motion to Dismiss. Signed by District Judge Amos L. Mazzant, III on 4/6/2020. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/06/2020) |
| 04/09/2020 | 35 (p.335) | ORDER. Pending before the Court is Defendants' Motion to Transfer Venue to the Northern District of Texas Pursuant to a Valid Forum Selection Clause (Dkt. 27 (p.149) ), to which no response has been filed. Plaintiffs shall file a response no later than April 16, 2020, or notify the Court that there is no opposition. Signed by District Judge Amos L. Mazzant, III on 4/9/2020. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/09/2020) |
| 04/14/2020 | 36 (p.336) | MOTION to Stay *Defendants' Motion for Temporary Stay of Discovery* by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P.. (LaVigne, Christopher) (Additional attachment(s) added on 4/15/2020: # 1 (p.25) Text of Proposed Order) (baf, ). [Transferred from Texas |

| | | |
|---|---|---|
| | | Eastern on 5/27/2020.] (Entered: 04/14/2020) |
| 04/16/2020 | 37 (p.345) | RESPONSE to Motion re 27 (p.149) MOTION to Change Venue *Defendants Motion to Transfer Venue to the Northern District of Texas Pursuant to Valid Forum Selection Clause filed by Jessica Casey, Jason Coleman.* (Attachments: # 1 (p.25) Affidavit Declaration of J. Casey, # 2 (p.57) Affidavit Declaration of J. Coleman, # 3 (p.59) Text of Proposed Order Proposed Order)(Ajamie, Thomas) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/16/2020) |
| 04/21/2020 | 38 (p.379) | REPLY to Response to Motion re 27 (p.149) MOTION to Change Venue *Defendants Motion to Transfer Venue to the Northern District of Texas Pursuant to Valid Forum Selection Clause (Defendants' Reply in Support of Their Motion to Transfer Venue [ECF No. 27]) filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M. Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P..* (Attachments: # 1 (p.25) Exhibit A - Declaration of Robert Peterson, # 2 (p.57) Exhibit B - Declaration of Mike McWherter)(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/21/2020) |
| 04/23/2020 | 39 (p.392) | NOTICE of Discovery Disclosure by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P. *(Defendants Notice of Service of Their Initial Disclosures)* (LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/23/2020) |
| 04/23/2020 | 40 (p.395) | NOTICE of Discovery Disclosure by Jessica Casey, Jason Coleman *(Plaintiffs Notice of Disclosure)* (Serber, Alexandra) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/23/2020) |
| 04/27/2020 | 41 (p.398) | REPORT of Rule 26(f) Planning Meeting. (Attachments: # 1 (p.25) Text of Proposed Order, # 2 (p.57) Text of Proposed Order)(Ajamie, Thomas) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/27/2020) |
| 04/28/2020 | 42 (p.418) | SUR-REPLY to Reply to Response to Motion re 27 (p.149) MOTION to Change Venue *Defendants Motion to Transfer Venue to the Northern District of Texas Pursuant to Valid Forum Selection Clause filed by Jessica Casey, Jason Coleman.* (Ajamie, Thomas) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/28/2020) |
| 04/28/2020 | 43 (p.426) | RESPONSE in Opposition re 36 (p.336) MOTION to Stay *Defendants' Motion for Temporary Stay of Discovery filed by Jessica Casey, Jason Coleman.* (Ajamie, Thomas) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 04/28/2020) |
| 05/04/2020 | 44 (p.432) | REPLY to Response to Motion re 36 (p.336) MOTION to Stay *Defendants' Motion for Temporary Stay of Discovery (Defendant's Reply in Support of Motion for Temporary Stay of Discovery) filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M. Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P..* (LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/04/2020) |
| 05/04/2020 | 45 (p.438) | ANSWER to 33 (p.300) Amended Complaint by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III, L.P..(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/04/2020) |

| 05/04/2020 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice Regarding Consent to Proceed Before Magistrate Judge*. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/04/2020) |
| --- | --- | --- |
| 05/04/2020 | 46 (p.465) | MOTION for Judgment on the Pleadings *and Brief in Support* by Sterling Investment Partners III, L.P.. (Attachments: # 1 (p.25) Text of Proposed Order Granting Defendant Sterling Investment Partners III, L.P.'s Motion for Judgment on the Pleadings)(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/04/2020) |
| 05/04/2020 | 47 (p.475) | *Affirmtaive Defenses and* ANSWER to 33 (p.300) Amended Complaint by Neil M. Brozen.(Figueroa, Xenia) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/04/2020) |
| 05/04/2020 | | NOTICE of Hearing: The Court hereby RESETS the time of the 5/12/2020 Scheduling Conference. Conference reset for 10:30 AM before District Judge Amos L. Mazzant III, via telephone. Attorneys are instructed to call the Conference Number at 10:25 AM: 888-363-4749; Access Code: 1588844, followed by #. (tls) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/04/2020) |
| 05/04/2020 | 48 (p.522) | MOTION for Judgment on the Pleadings *and Brief in Support* by Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust. (Attachments: # 1 (p.25) Text of Proposed Order Granting Motion for Judgment on the Pleadings)(LaVigne, Christopher) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/04/2020) |
| 05/06/2020 | 49 (p.530) | MEMORANDUM OPINION AND ORDER. Defendants' Motion to Transfer Venue to the Northern District of Texas Pursuant to a Valid Forum Selection Clause (Dkt. 27 (p.149) ) is GRANTED. This civil action is hereby transferred to the United States District Court for the Northern District of Texas, Dallas Division. Signed by District Judge Amos L. Mazzant, III on 5/6/2020. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/06/2020) |
| 05/11/2020 | | In light of the 5/6/20 Memorandum Opinion and Order (Dkt. #49), the May 12, 2020 Scheduling Conference is CANCELLED. (tls) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/11/2020) |
| 05/26/2020 | | Interdistrict transfer to the NORTHERN District of TEXAS DALLAS Division. (baf, ) [Transferred from Texas Eastern on 5/27/2020.] (Entered: 05/26/2020) |
| 05/27/2020 | 50 (p.544) | Case electronically transferred in from District of Texas Eastern; Case Number 4:19-cv-00705. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas should seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. Copy of NEF to be sent US Mail to parties not electronically noticed. (Entered: 05/27/2020) |
| 05/27/2020 | 51 (p.553) | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Ramirez). Clerk to provide copy to plaintiff if not received electronically. |

| | | |
|---|---|---|
| | | (oyh) (Entered: 05/27/2020) |
| 06/02/2020 | 52 (p.555) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-10880574) filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Additional Page(s) ADDITIONAL FEDERAL COURT ADMISSIONS, # 2 (p.57) Exhibit(s) GPorter Certificate of Good Standing) (Porter, Gregory) (Entered: 06/02/2020) |
| 06/03/2020 | 53 (p.560) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-10885418) filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Additional Page(s) ADDITIONAL FEDERAL COURT ADMISSIONS, # 2 (p.57) Exhibit(s) RJenny Certificate of Good Standing) (Jenny, Ryan) (Entered: 06/03/2020) |
| 06/08/2020 | 54 | ELECTRONIC ORDER granting 52 (p.555) Application for Admission Pro Hac Vice of Gregory Y. Porter. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 6/8/2020) (chmb) (Entered: 06/08/2020) |
| 06/08/2020 | 55 | ELECTRONIC ORDER granting 53 (p.560) Application for Admission Pro Hac Vice of Ryan T. Jenny. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 6/8/2020) (chmb) (Entered: 06/08/2020) |
| 06/08/2020 | 56 (p.565) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-10896427) filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Additional Page(s) ADDITIONAL FEDERAL COURT ADMISSIONS, # 2 (p.57) Exhibit(s) DC Certificate of Good Standing, # 3 (p.59) Exhibit(s) FL Certificate of Good Standing) (Kauffman, James) (Entered: 06/08/2020) |
| 06/08/2020 | 57 (p.571) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-10896760) filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP (Attachments: # 1 (p.25) Certificate of Good Standing)Attorney Todd D Wozniak added to party Brooke Peterson 2012 Irrevocable Trust(pty:dft), Attorney Todd D Wozniak added to party Nicole Peterson 2012 Irrevocable Trust(pty:dft) (Wozniak, Todd) (Entered: 06/08/2020) |
| 06/09/2020 | 58 | ELECTRONIC ORDER granting 56 (p.565) Application for Admission Pro Hac Vice of James Kauffman. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 6/9/2020) (chmb) (Entered: 06/09/2020) |
| 06/09/2020 | 59 | ELECTRONIC ORDER granting 57 (p.571) Application for Admission Pro Hac Vice of Todd D. Wozniak. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 6/9/2020) (chmb) (Entered: 06/09/2020) |
| 06/09/2020 | 60 (p.575) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-10900846) filed by Jessica Casey, Jason Coleman |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.25) Exhibit(s) Certificate of Good Standing) (Serber, Alexandra) (Entered: 06/09/2020) |
| 06/10/2020 | 61 | ELECTRONIC ORDER granting 60 (p.575) Application for Admission Pro Hac Vice of Alexandra L. Serber. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 6/10/2020) (chmb) (Entered: 06/10/2020) |
| 06/11/2020 | 62 (p.579) | Application for Admission Pro Hac Vice (Fee Not Paid) by J Christian Nemeth on behalf of Neil M Brozen. (Filer confirms contact info in ECF is current.) (Attachments: # 1 (p.25) Additional Page(s) Court Admissions, # 2 (p.57) Additional Page(s) Certificate of Good Standing) (Nemeth, J) Modified event and title on 6/16/2020 (awc). (Entered: 06/11/2020) |
| 06/17/2020 | 63 | Payment for 62 (p.579) Application for Admission Pro Hac Vice filed by Neil M Brozen. ($100; Receipt number 0539-10922742). (Nemeth, J) (Entered: 06/17/2020) |
| 06/18/2020 | 64 | ELECTRONIC ORDER granting 62 (p.579) Application for Admission Pro Hac Vice of John Christian Nemeth. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 6/18/2020) (chmb) (Entered: 06/18/2020) |
| 06/18/2020 | 65 (p.584) | Joint MOTION to Stay *(Joint Motion for Temporary Stay Until Court Rules on Defendants' Motion to Compel Arbitration)* filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP (LaVigne, Christopher) (Entered: 06/18/2020) |
| 06/22/2020 | 66 (p.588) | MOTION to Compel *(Defendants' Motion to Compel Individual Arbitration and Brief in Support)* filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP with Brief/Memorandum in Support. (Attachments: # 1 (p.25) Proposed Order Granting Motion to Compel Individual Arbitration) (LaVigne, Christopher) (Entered: 06/22/2020) |
| 06/22/2020 | 67 (p.619) | Appendix in Support filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re 66 (p.588) MOTION to Compel *(Defendants' Motion to Compel Individual Arbitration and Brief in Support)* (LaVigne, Christopher) (Entered: 06/22/2020) |
| 06/23/2020 | 68 | ELECTRONIC ORDER granting 65 (p.584) the parties' Joint Motion to Stay. This case is stayed pending a ruling on Defendants' Motion to Compel Arbitration. (Ordered by Judge Ada Brown on 6/23/2020) (chmb) (Entered: 06/23/2020) |
| 06/24/2020 | 69 (p.746) | NOTICE of Attorney Appearance by J Douglas Uloth on behalf of Jessica Casey, Jason Coleman. (Filer will update contact info in ECF.) (Uloth, J) (Entered: 06/24/2020) |
| 07/13/2020 | 70 (p.749) | RESPONSE AND OBJECTION filed by Jessica Casey, Jason Coleman re: 66 (p.588) MOTION to Compel *(Defendants' Motion to Compel Individual Arbitration and Brief in Support)* (Attachments: # 1 (p.25) Exhibit(s), # 2 (p.57) Proposed Order) (Ajamie, Thomas) (Entered: 07/13/2020) |

| | | |
|---|---|---|
| 07/27/2020 | 71 (p.804) | REPLY filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 66 (p.588) MOTION to Compel *(Defendants' Motion to Compel Individual Arbitration and Brief in Support)* (LaVigne, Christopher) (Entered: 07/27/2020) |
| 08/24/2020 | 72 (p.817) | MOTION for Leave to File Plaintiffs' Notice of Supplemental Authority Related to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Exhibit(s) A, # 2 (p.57) Exhibit(s) 1, # 3 (p.59) Proposed Order) (Ajamie, Thomas) (Entered: 08/24/2020) |
| 08/25/2020 | 73 | ELECTRONIC ORDER granting 72 (p.817) Plaintiffs' Motion for Leave to File Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 8/25/2020) (chmb) (Entered: 08/25/2020) |
| 08/25/2020 | 74 (p.836) | NOTICE of Supplemental Authority filed by Jessica Casey, Jason Coleman re: 66 (p.588) MOTION to Compel *Individual Arbitration*. (axm) (Entered: 08/25/2020) |
| 09/03/2020 | 75 (p.849) | RESPONSE filed by Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 74 (p.836) Notice (Other) (LaVigne, Christopher) (Entered: 09/03/2020) |
| 09/24/2020 | 76 (p.856) | MOTION for Leave to File Plaintiffs' Second Notice of Supplemental Authority in Further Support of Their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Exhibit(s) A, # 2 (p.57) Exhibit(s) 1, # 3 (p.59) Exhibit(s) 2, # 4 (p.61) Proposed Order) (Ajamie, Thomas) (Entered: 09/24/2020) |
| 09/25/2020 | 77 | ELECTRONIC ORDER granting 76 (p.856) Plaintiff's Motion for Leave to File Second Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 9/25/2020) (chmb) (Entered: 09/25/2020) |
| 09/25/2020 | 78 (p.887) | Second NOTICE of Supplemental Authority filed by Jessica Casey, Jason Coleman re: 66 (p.588) MOTION to Compel *Individual Arbitration* (Attachments: # 1 (p.25) Exhibit(s), # 2 (p.57) Exhibit(s)) (oyh) (Entered: 09/25/2020) |
| 10/01/2020 | 79 (p.911) | RESPONSE *to Plaintiff's Second Notice of Supplemental Authority Regarding Defendants' Motion to Compel Individual Arbitration* filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 66 (p.588) Motion to Compel. (LaVigne, Christopher) Modified text and linkage on 10/2/2020 (axm). (Entered: 10/01/2020) |
| 11/30/2020 | 80 (p.914) | Joint NOTICE *Regarding Plaintiffs' First Notice of Supplemental Authority Regarding Defendants' Motion to Compel Individual Arbitration)* filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP (LaVigne, Christopher) (Entered: 11/30/2020) |
| 01/29/2021 | 81 (p.917) | MOTION for Leave to File Plaintiffs' Third Notice of Supplemental Authority Related to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Exhibit(s) A, # 2 (p.57) Exhibit(s) 1, # 3 (p.59) Proposed Order) (Ajamie, Thomas) (Entered: 01/29/2021) |

| 02/01/2021 | 82 | ELECTRONIC ORDER granting 81 (p.917) Motion for Leave to File Plaintiff's Third Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 2/1/2021) (chmb) (Entered: 02/01/2021) |
|---|---|---|
| 02/01/2021 | 83 (p.937) | Third NOTICE of Supplemental Authority re: 66 (p.588) MOTION to Compel *Individual Arbitration* filed by Jason Coleman. (Attachments: # 1 (p.25) Additional Page(s)) (oyh) (Entered: 02/01/2021) |
| 02/03/2021 | 84 (p.950) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-11577721) filed by Neil M Brozen (Attachments: # 1 (p.25) Certificate of Admission/Good Standing, # 2 (p.57) Proposed Order)Attorney Peter Beauregard Allport added to party Neil M Brozen(pty:dft) (Allport, Peter) (Entered: 02/03/2021) |
| 02/04/2021 | 85 | ELECTRONIC ORDER granting 84 (p.950) Application for Admission Pro Hac Vice of Peter B. Allport. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 2/4/2021) (chmb) (Entered: 02/04/2021) |
| 02/10/2021 | 86 (p.955) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 83 (p.937) Notice (Other) (LaVigne, Christopher M) Modified attorney on 2/10/2021 (ndt). (Entered: 02/10/2021) |
| 03/09/2021 | 87 (p.962) | Unopposed MOTION for Leave to File Plaintiffs' Fourth Notice of Supplemental Authority Related to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Exhibit(s) A, Plaintiffs' Fourth Notice of Supplemental Authority, # 2 (p.57) Exhibit(s) 1, # 3 (p.59) Proposed Order) (Ajamie, Thomas) (Entered: 03/09/2021) |
| 03/16/2021 | 88 | ELECTRONIC ORDER granting 87 (p.962) Unopposed Motion for Leave to File Fourth Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 3/16/2021) (chmb) (Entered: 03/16/2021) |
| 03/16/2021 | 89 (p.989) | Fourth Notice of Supplemental Authority *Related to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman. (axm) (Entered: 03/17/2021)* |
| 03/25/2021 | 90 (p.1009) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 89 (p.989) Notice (Other) (LaVigne, Christopher) (Entered: 03/25/2021) |
| 09/16/2021 | 91 (p.1012) | MOTION for Leave to File Plaintiffs' Fifth Notice of Supplemental Authority in Further Support of Their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Exhibit(s) Ex. A, Plf's 5th Notice of Supp. Authority, # 2 (p.57) Exhibit(s) Ex. 1, Henry v. Wilmington Trust, # 3 (p.59) Exhibit(s) Ex. 2, Smith v. BOD of Triad M., # 4 (p.61) Proposed Order) (Ajamie, Thomas) (Entered: 09/16/2021) |
| 09/17/2021 | 92 | ELECTRONIC ORDER granting 91 (p.1012) Unopposed Motion for Leave to File Plaintiffs' Fifth Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by |

| | | |
|---|---|---|
| | | Judge Ada Brown on 9/17/2021) (chmb) (Entered: 09/17/2021) |
| 09/17/2021 | 93 (p.1041) | Fifth NOTICE of Supplemental Authority Related to Defendants' Motion to compel Individual Arbitration filed by Jessica Casey, Jason Coleman. (jmg) (Entered: 09/17/2021) |
| 09/27/2021 | 94 (p.1047) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 93 (p.1041) Notice (Other) (LaVigne, Christopher) (Entered: 09/27/2021) |
| 11/08/2021 | 95 (p.1055) | Unopposed MOTION for Leave to File Plaintiffs' Sixth Notice of Supplemental Authority in Further Support of Their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Exhibit(s) Ex. A, # 2 (p.57) Exhibit(s) Ex. 1, # 3 (p.59) Proposed Order Proposed Order) (Ajamie, Thomas) (Entered: 11/08/2021) |
| 12/08/2021 | 96 | ELECTRONIC ORDER granting 95 (p.1055) Motion for Leave to File Plaintiffs' Sixth Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 12/8/2021) (chmb) (Entered: 12/08/2021) |
| 12/08/2021 | 97 (p.1074) | Plaintiffs' Sixth Notice of Supplemental Authority In Further Support of Their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman. (ndt) (Entered: 12/08/2021) |
| 12/17/2021 | 98 (p.1085) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 97 (p.1074) Notice (Other) (LaVigne, Christopher) (Entered: 12/17/2021) |
| 12/17/2021 | 99 (p.1090) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Lindsey R. Camp (Filing fee $100; Receipt number 0539-12466935) filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP (LaVigne, Christopher) (Entered: 12/17/2021) |
| 12/20/2021 | 100 | ELECTRONIC ORDER granting 99 (p.1090) Application for Admission Pro Hac Vice of Lindsey R. Camp. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 12/20/2021) (chmb) (Entered: 12/20/2021) |
| 01/25/2022 | 101 (p.1095) | MOTION for Leave to File a Notice of Supplemental Authority Supporting Their Motion to Compel Individual Arbitration filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP (Attachments: # 1 (p.25) Exhibit(s) A - Defendants' Notice of Supplement Authority Supporting Their Motion to Compel Individual Arbitration, # 2 (p.57) Exhibit(s) B - Proposed Order Granting Defendants' Motion for Leave) (Dodrill, Christopher) (Entered: 01/25/2022) |
| 02/11/2022 | 102 (p.1113) | MOTION to Transfer Case out of District/Division filed by Jessica Casey, Jason Coleman with Brief/Memorandum in Support. (Attachments: # 1 (p.25) Exhibit(s) Appendix (with exhibits), # 2 (p.57) Proposed Order Proposed Order) (Ajamie, Thomas) Modified text on 2/14/2022 (mjr). (Entered: 02/11/2022) |

| | | |
|---|---|---|
| 03/04/2022 | 103 (p.1216) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 102 (p.1113) MOTION to Transfer Case out of District/Division (LaVigne, Christopher) (Entered: 03/04/2022) |
| 03/17/2022 | 104 (p.1227) | REPLY filed by Jessica Casey, Jason Coleman re: 102 (p.1113) MOTION to Transfer Case out of District/Division (Ajamie, Thomas) (Entered: 03/17/2022) |
| 03/24/2022 | 105 (p.1233) | NOTICE of Attorney Appearance by Micah Randall Prude on behalf of Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP. (Filer confirms contact info in ECF is current.) (Prude, Micah) (Entered: 03/24/2022) |
| 04/08/2022 | 106 (p.1235) | Unopposed MOTION to Withdraw as Attorney filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP (Dodrill, Christopher) (Entered: 04/08/2022) |
| 04/11/2022 | 107 (p.1237) | ORDER granting 106 (p.1235) Motion to Withdraw as Attorney. Christopher M. LaVigne and Christopher S. Dodrill of Greenberg Traurig, LLP are withdrawn as counsel for Defendants Robert Peterson, Jr., Vasilia Peterson, Mike Paxton, Nick Bouras, Sterling Investment Partners III, L.P., Nicole Peterson 2012 Irrevocable Trust, and Brooke Peterson 2012 Irrevocable Trust. (Ordered by Judge Ada Brown on 4/11/2022) (ygl) (Entered: 04/11/2022) |
| 07/11/2022 | 108 (p.1238) | MOTION for Leave to File Plaintiffs' Seventh Notice of Supplemental Authority in Further Support of Their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Exhibit(s) Ex. A - P's 7th Notice of Supp. Authority, # 2 (p.57) Exhibit(s) Ex. 1 - Amicus Brief (Cedeno v. Argent), # 3 (p.59) Proposed Order) (Ajamie, Thomas) (Entered: 07/11/2022) |
| 07/15/2022 | 109 | ELECTRONIC ORDER granting 101 (p.1095) Defendants' Motion for Leave to File Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 7/15/2022) (chmb) (Entered: 07/15/2022) |
| 07/15/2022 | 110 | ELECTRONIC ORDER granting 108 (p.1238) Plaintiffs' Motion for Leave to File Notice of Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 7/15/2022) (chmb) (Entered: 07/15/2022) |
| 07/15/2022 | 111 (p.1290) | NOTICE of Supplemental Authority Supporting their 66 (p.588) Motion to Compel Individual Arbitration filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP. (mjr) (Entered: 07/18/2022) |
| 07/18/2022 | 112 (p.1301) | Seventh NOTICE of Supplemental Authority re: 66 (p.588) MOTION to Compel (Defendants' Motion to Compel Individual Arbitration and Brief in Support) filed by Jessica Casey, Jason Coleman. (mjr) (Entered: 07/18/2022) |
| 07/20/2022 | 113 (p.1344) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, |

| | | |
|---|---|---|
| | | Vasilia Peterson, Sterling Investment Partners III LP re: 112 (p.1301) Notice (Other) (Attachments: # 1 (p.25) Exhibit(s) A - Amicus Brief by The ESOP Association and American Benefits Counsel, # 2 (p.57) Exhibit(s) B - Amicus Brief by the Chamber of Commerce of the United States of America, # 3 (p.59) Exhibit(s) C - Reply Brief by the Appellants) (Prude, Micah) (Entered: 07/20/2022) |
| 07/22/2022 | 114 (p.1467) | RESPONSE filed by Jessica Casey, Jason Coleman re: 111 (p.1290) Notice (Other), (Ajamie, Thomas) (Entered: 07/22/2022) |
| 08/03/2022 | 115 (p.1472) | Unopposed MOTION for Leave to File A Second Notice of Supplemental Authority Supporting Their Motion to Compel Individual Arbitration filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP (Attachments: # 1 (p.25) Exhibit(s) A - Second Notice of Supplemental Authority, # 2 (p.57) Exhibit(s) B - Proposed Order) (Prude, Micah) (Entered: 08/03/2022) |
| 08/04/2022 | 116 | ELECTRONIC ORDER granting 115 (p.1472) DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE A SECOND NOTICE OF SUPPLEMENTAL AUTHORITY SUPPORTING THEIR MOTION TO COMPEL INDIVIDUAL ARBITRATION. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 8/4/2022) (chmb) (Entered: 08/04/2022) |
| 08/04/2022 | 117 (p.1519) | Second Notice of Supplemental Authority Supporting re: 66 (p.588) MOTION to Compel filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Paul Generale, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP. (oyh) (Entered: 08/04/2022) |
| 08/15/2022 | 118 (p.1560) | RESPONSE filed by Jessica Casey, Jason Coleman re: 117 (p.1519) Notice (Other), (Ajamie, Thomas) (Entered: 08/15/2022) |
| 08/25/2022 | 119 (p.1565) | NOTICE of *Withdrawal of Their Motion to Transfer Venue* re: 102 (p.1113) MOTION to Transfer Case out of District/Division filed by Jessica Casey, Jason Coleman (Ajamie, Thomas) (Entered: 08/25/2022) |
| 02/13/2023 | 120 (p.1568) | MOTION for Leave to File Plaintiffs' Eighth Notice of Supplemental Authority in Further Support of their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman with Brief/Memorandum in Support. (Attachments: # 1 (p.25) Exhibit(s) Ex. A, # 2 (p.57) Exhibit(s) Ex. 1, # 3 (p.59) Proposed Order) (Ajamie, Thomas) (Entered: 02/13/2023) |
| 03/22/2023 | 121 | ELECTRONIC ORDER: In light of Plaintiffs' Notice of Withdrawal of Their Motion to Transfer Venue (Doc. No. 119), the Court **finds as MOOT** Plaintiffs' Motion to Transfer Venue (Doc. No. 102). (Ordered by Judge Ada Brown on 3/22/2023) (chmb) (Entered: 03/22/2023) |
| 03/31/2023 | 122 (p.1597) | MOTION for Leave to File Plaintiffs' Ninth Notice of Supplemental Authority in Further Support of their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman with Brief/Memorandum in Support. (Attachments: # 1 (p.25) Exhibit(s) Exhibit A, # 2 (p.57) Exhibit(s) Exhibit 1, # 3 (p.59) Exhibit(s) Exhibit 2, # 4 (p.61) Proposed Order) (Ajamie, Thomas) (Entered: 03/31/2023) |
| 05/15/2023 | | |

| | 123 (p.1622) | ORDER: Before the Court are (1) Plaintiffs Jason Coleman and Jessica Casey's on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated(collectively, "Plaintiffs") Motion for Leave to File Plaintiffs' Eighth Notice of Supplemental Authority in Further Support of their Opposition to Defendants' Motion to Compel Individual Arbitration, (Doc. 120 (p.1568) ); and (2) Plaintiffs' Motion for Leave to File Plaintiffs' Ninth Notice of Supplemental Authority in Furtherance of their Opposition to Defendants' Motion to Compel Individual Arbitration, (Doc. 122 (p.1597) ). The motions are hereby GRANTED. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Ada Brown on 5/15/2023) (oyh) (Entered: 05/15/2023) |
|---|---|---|
| 05/15/2023 | 124 (p.1624) | Eight Notice of Supplemental Authority In Further Support of Their Opposition to 66 (p.588) MOTION to Compel *Defendants' Motion to Compel Individual Arbitration and Brief in Support)* filed by Jessica Casey, Jason Coleman. (Attachments: # 1 (p.25) Exhibit(s)) (oyh) (Entered: 05/15/2023) |
| 05/15/2023 | 125 (p.1645) | Ninth Notice of Supplemental Authority in Further Opposition to 66 (p.588) Defendants' Motion to Compel Individual Arbitration and Brief in Support filed by Jessica Casey, Jason Coleman. (Attachments: # 1 (p.25) Exhibit(s)) (oyh) (Entered: 05/15/2023) |
| 05/18/2023 | 126 (p.1660) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 125 (p.1645) Notice (Other), 124 (p.1624) Notice (Other), (Wozniak, Todd) (Entered: 05/18/2023) |
| 06/05/2023 | 127 | ELECTRONIC ORDER: The Court ORDERS the Parties in this proceeding to take notice that Judge Ada Brown shall adopt revised policies and procedures on July 1, 2023. The revised policies and procedures are posted on the Courts page on the Northern District of Texas Website. RevisedJSR-Brown.pdf (uscourts.gov). If the Parties have any motion or response deadlines between now and July 1, 2023, which are affected by new briefing requirements, the Parties may proceed under the current policies and procedures. The Parties may further seek leave of Court for any filings due in July 2023 to comply with the Courts revised briefing requirements. (Ordered by Judge Ada Brown on 6/5/2023) (chmb) (Entered: 06/05/2023) |
| 07/06/2023 | 128 (p.1667) | MOTION for Leave to File Plaintiffs' Tenth Notice of Supplemental Authority in Further Support of Their Opposition to Defendants' Motion to Compel Individual Arbitration filed by Jessica Casey, Jason Coleman with Brief/Memorandum in Support. (Attachments: # 1 (p.25) Exhibit(s) Exhibit A, # 2 (p.57) Exhibit(s) Exhibit 1, # 3 (p.59) Proposed Order) (Ajamie, Thomas) (Entered: 07/06/2023) |
| 07/11/2023 | 129 (p.1685) | RESPONSE filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP re: 128 (p.1667) MOTION for Leave to File Plaintiffs' Tenth Notice of Supplemental Authority in Further Support of Their Opposition to Defendants' Motion to Compel Individual Arbitration (Prude, Micah) (Entered: 07/11/2023) |
| 07/12/2023 | 130 (p.1687) | MEMORANDUM OPINION AND ORDER: The Court concludes that the Arbitration Procedure's Class Action Waiver is unenforceable because it prospectively waives Plaintiffs' statutory right to seek Plan-wide relief under ERISA §§ 502(a)(2) and 409(a). Because the Class Action Waiver is not severable from the Arbitration Procedure, the Court must conclude the entire Arbitration Procedure is |

| | | |
|---|---|---|
| | | unenforceable. As such, the Court DENIES Defendants Motion to Compel Arbitration. (ECF No. 66 (p.588) ). (Ordered by Judge Ada Brown on 7/12/2023) (twd) (Entered: 07/12/2023) |
| 07/12/2023 | 131 (p.1719) | ORDER LIFTING STAY: On 7/12/2023, the Court issued a 130 (p.1687) Memorandum Opinion and Order denying the Motion to Compel Individual Arbitration. Accordingly, the Court LIFTS the stay of this case. The parties are ORDERED to meet and confer and file a Joint Status report. The Court directs the Parties to its Standard Forms, Attachment 1: Sample Joint Discovery/Case Management Plan Under Federal Rule of Civil Procedure Rule 26(f), which can be found on the Court's Northern District of Texas website at www.txnd.uscourts.gov/judge/judge-ada-brown. The Joint Status Report shall be filed no later than Wednesday, 8/2/2023, at 5:00 pm. (Ordered by Judge Ada Brown on 7/12/2023) (twd) (Entered: 07/13/2023) |
| 07/26/2023 | 132 (p.1720) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number BTXNDC-13910247) filed by Jessica Casey, Jason Coleman (Attachments: # 1 (p.25) Certificate of Good Standing)Attorney Patrick Muench added to party Jessica Casey(pty:pla), Attorney Patrick Muench added to party Jason Coleman(pty:pla) (Muench, Patrick) (Entered: 07/26/2023) |
| 07/27/2023 | 133 | ELECTRONIC ORDER granting 132 (p.1720) Application for Admission Pro Hac Vice of Patrick O. Muench. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Ada Brown on 7/27/2023) (chmb) (Entered: 07/27/2023) |
| 08/02/2023 | 134 (p.1724) | Joint STATUS REPORT filed by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP. (Prude, Micah) (Entered: 08/02/2023) |
| 08/11/2023 | 135 (p.1728) | NOTICE OF INTERLOCUTORY APPEAL as to 130 (p.1687) Memorandum Opinion and Order,, to the Fifth Circuit by Nick Bouras, Brooke Peterson 2012 Irrevocable Trust, Neil M Brozen, Nicole Peterson 2012 Irrevocable Trust, Mike Paxton, Robert Peterson, Jr, Vasilia Peterson, Sterling Investment Partners III LP. Filing fee $505, receipt number ATXNDC-13948991. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Prude, Micah) (Entered: 08/11/2023) |
| 08/16/2023 | | USCA Case Number 23-10832 in USCA5 for 135 (p.1728) Notice of Appeal filed by Brooke Peterson 2012 Irrevocable Trust, Sterling Investment Partners III LP, Neil M Brozen, Nick Bouras, Mike Paxton, Nicole Peterson 2012 Irrevocable Trust, Vasilia Peterson, Robert Peterson, Jr. (svc) (Entered: 08/16/2023) |
| 08/24/2023 | 136 (p.1731) | Transcript Order Form: re 135 (p.1728) Notice of Appeal,,,,, transcript not requested Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy |

of the order form with the appeals court.. (Davis, Melissa) (Entered: 08/24/2023)

23-10832.24

# Tab 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON COLEMAN and JESSICA CASEY, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | § § § § § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. 3:20-cv-01358-E |
| v. | § | |
| | § | |
| NEIL M. BROZEN, *et al*., | § | |
| | § | |
| *Defendants*. | § | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Defendants Robert Peterson, Jr., Vasilia Peterson, Mike Paxton, Nick Bouras, Sterling Investment Partners III, L.P., Nicole Peterson 2012 Irrevocable Trust, Brooke Peterson 2012 Irrevocable Trust, and Neil M. Brozen hereby appeal to the United States Court of Appeals for the Fifth Circuit from the District Court's Order denying the Defendants' Motion to Compel Individual Arbitration, which is contained in the Memorandum Opinion and Order [ECF No. 130] entered July 12, 2023.  Appeal of the District Court's Order denying Defendants' Motion to Compel Individual Arbitration is authorized by 9 U.S.C. § 16.

Dated:  August 11, 2023

Respectfully submitted,

By: /s/ *Micah R. Prude*
Micah R. Prude
Texas Bar No. 24051216
**HOLLAND & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751
Email: Micah.Prude@hklaw.com

Todd D. Wozniak (admitted *pro hac vice*)
todd.wozniak@hklaw.com
**HOLLAND & KNIGHT, LLP**
Regions Plaza
1180 West Peachtree Street NW
Atlanta, Georgia 30309
Telephone: (404) 817-8500
Facsimile: (404) 881-0470

*ATTORNEYS FOR DEFENDANTS*
*ROBERT PETERSON, JR., VASILIA*
*PETERSON, MIKE PAXTON, NICK*
*BOURAS, STERLING INVESTMENT*
*PARTNERS III, L.P., NICOLE*
*PETERSON 2012 IRREVOCABLE*
*TRUST, AND BROOKE PETERSON 2012*
*IRREVOCABLE TRUST*

By: /s/ *Nicole Figueroa (with permission)*
Nicole Figueroa
Texas Bar No. 24069716
**MCDERMOTT WILL & EMERY LLP**
2501 N. Harwood St., Ste 1900
Dallas, Texas 75201
Tel: (214) 295-8062
nfigueroa@mwe.com

J. Christian Nemeth (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, Illinois 60606
Tel: (312) 984-3292
jcnemeth@mwe.com

Peter B. Allport (admitted *pro hac vice*)
**LEVIN SCHREDER & CAREY, Ltd.**
120 North LaSalle Street, Floor 38
Chicago, Illinois 60602
Tel: (312) 332-6300
pallport@lsclaw.com

*ATTORNEYS FOR DEFENDANT NEIL M.*
*BROZEN*

2

23-10832.1729

**<u>CERTIFICATE OF SERVICE</u>**

This certifies that on this 11th day of August, 2023, a true and correct copy of the foregoing

has been served on all counsel of record through the Court's CM/ECF system.

/s/ *Micah R. Prude*
Micah R. Prude

23-10832.1730

# Tab 3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON COLEMAN and JESSICA CASEY on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:20-CV-01358-E |
| NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, MIKE PAXTON NICK BOURAS, STERLING INVESTMENT PARTNERS III, L.P., NICOLE PETERSON 2012 IRREVOCABLE TRUST, and BROOKE PETERSON 2012 IRREVOCABLE TRUST, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Neil M. Brozen, Robert Peterson, Jr., Vasilia Peterson, Mike Paxton, Nick Bouras, Sterling Investment Partners III, L.P., the Nichole Peterson 2012 Irrevocable Trust, and the Brooke Peterson 2012 Irrevocable Trust's (collectively, "Defendants") Motion to Compel Individual Arbitration (the "Motion to Compel"). (ECF No. 66). Having considered the motion, the response, reply, the parties' respective notices of supplemental authority and responses thereto, the relevant portions of the record, and the relevant law, the Court concludes that the Motion to Compel should be, and therefore is, **DENIED**.

# I. BACKGROUND

**A.    Factual and Procedural Background**

This case arises from disputes involving an employee stock ownership plan. Plaintiffs Jason Coleman and Jessica Casey (collectively, "Plaintiffs") are former participants in the RVNB Holdings, Inc. Employee Stock Ownership Plan and initiated this litigation individually and on behalf of a class[1] alleging various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The factual background detailed below is taken from Plaintiffs' First Amended Complaint. (ECF No. 33).

Plaintiffs are former employees of All My Sons Moving & Storage ("All My Sons"), which was founded in 1993 by Defendant Robert Peterson, Jr. ("Mr. Peterson") and his wife Defendant Vasilia Peterson ("Mrs. Peterson") (collectively, "the Petersons"). At all relevant times, All My Sons was a privately held company. According to the First Amended Complaint, RVNB Holdings, Inc. ("RVNB") was formed as a holding company in March 2012 to purchase 100% of the stockholders' ownership interests in All My Sons. Plaintiffs allege that RVNB then formed the RVNB Holdings, Inc. Employee Stock Ownership Plan (the "Plan")—a defined contribution plan designed to invest in RVNB stock. RVNB adopted the Plan effective October 1, 2012. In December 2012, the Plan purchased from the Petersons—who were parties in interest to the Plan— 100% of the outstanding RVNB stock for $85,000,000. Upon close of the sale of the RVNB stock, RVNB became an employee-owned company. During the period in which it owned RVNB, the Plan's only investment was in RVNB's common stock. As a defined contribution plan and an individual account plan, a separate account was established for each participant.

The Plan named RVNB as the Administrator and a "Named Fiduciary." (ECF No. 67, pg.

---

[1] No class certification has occurred, at this time.

89: 2012 Plan: § 12-1). Accordingly, as members of the RVNB Board of Directors, Mr. Peterson,

Mrs. Peterson, and Defendant Mike Paxton ("Paxton") (the Petersons and Paxton collectively, the

"Board Defendants") were fiduciaries of the Plan. Plaintiffs also allege that Defendant Nick

Bouras ("Bouras")—the Chief Financial Officer of RVNB—was a fiduciary of the Plan because

he was one of the persons exercising RVNB's role as Administrator of the Plan. The Plan initially

named Reliant Trust Company as its trustee; however, RVNB appointed Argent Trust Company

("Argent") as Plan trustee in 2014. Eventually, the Board Defendants appointed Defendant Neil

M. Brozen ("Brozen") as Plan trustee on June 29, 2017, replacing Argent.

Plaintiffs allege the Petersons formed the Plan in 2012 with no intention of sustaining the

Plan, but rather using it as a vehicle to reap tax benefits from an eventual sale of RVNB to a private

equity group. Plaintiffs allege the Board Defendants and Bouras violated their fiduciary duty to

the Plan by causing the Plan to receive less than fair market value for its shares of RVNB. Plaintiffs

allege that the Board Defendants appointed a compliant trustee—Brozen—to bless the termination

of the Plan in 2017[2] and sell the Plan's RVNB shares back to the company. Plaintiffs allege the

Board Defendants and Bouras did this so RVNB could sell substantially all of RVNB's assets to

the private equity group Defendant Sterling Investment Partners III, L.P., ("SIP"), through SIP's

affiliate company Residential Logistic Solutions ("RLS"). Plaintiffs allege RVNB officers and SIP

partners formed RLS to serve as a conduit for SIP's later acquisition of RVNB. Plaintiffs allege:

---

[2] On June 29, 2017, RVNB adopted the 2017 Terminating Amendments to the Plan, terminating the Plan. (ECF No. 67, pg. 41: Decl. of Nick Bouras, ¶ 6; ECF No. 67, pgs. 106-115: Unanimous Written Consent of the Directors of RVNB Holdings, Inc.). Upon termination of the Plan, participants became 100% vested in their company stock and other investment accounts in the Plan. (ECF No. 67, pg. 102: Terminating Amendments, ¶ 3). Under the terms of the Terminating Amendments, while Plan participants were 100% vested upon termination, they could only receive a 50% distribution of their vested interest in their Plan accounts until the issuance of a favorable determination letter from the Internal Revenue Service ("IRS") ruling on the termination of the Plan and the Plan document. (ECF No. 67, pg. 102-103: Terminating Amendments, ¶ 4). Although the Plan was terminated effective June 29, 2017, it remained in existence as a legal entity until after the IRS issued its favorable determination letter in May 2019; all remaining assets of the Plan were distributed during the second half of 2019. (ECF No. 67, pgs. 118: Mar. 2020 Decl. of Robert Peterson, ¶ 6).

---

(1) RVNB sold its assets to SIP—through RLS—for substantially more than what the Plan received for those assets; and (2) the Board Defendants intentionally "usurp[ed] the Plan's opportunity to sell RVNB directly to [SIP] and profit therefrom." (ECF No. 33, pg. 5, ¶ 12).

Finally, Plaintiffs allege that, after RVNB sold all of its assets to SIP, RVNB became a shell company and the Petersons merged it into RVNB Holdings, LLC ("the LLC")—a Delaware limited liability company formed in 2012. Plaintiffs allege that the LLC has just four members: Mr. Peterson, Mrs. Peterson, the Nichole Peterson 2012 Irrevocable Trust, and the Brooke Peterson 2012 Irrevocable Trust (the trusts together, "the Peterson Trusts"). Plaintiffs allege Mrs. Peterson has the power and authority to direct the actions of the Peterson Trusts with respect to the governance and operation of the LLC. According to the First Amended Complaint, once RVNB was merged into the LLC, the Plan had a new plan sponsor—the LLC—and a new Employer Identification Number. Plaintiffs allege that no members of the alleged class were ever employed by the LLC and the LLC had no employees at any relevant time.

After amendments to the Parties' agreements discussed in the next section, Plaintiffs filed this suit in the United States District Court for the Eastern District of Texas on September 27, 2019. (*See* ECF No. 1). Plaintiffs assert various causes of action under ERISA against Brozen, the Petersons, Paxton, Bouras, SIP, and the Peterson Trusts (collectively, "Defendants"). On May 6, 2020, this case was transferred to this Court pursuant to a forum-selection clause. (ECF No. 49). On June 22, 2020, Defendants moved to compel individual arbitration of Plaintiffs' ERISA claims.

**B.    The Arbitration Procedure and the Motion to Compel**

On May 18, 2018, the four members of the LLC—Mr. Person, Mrs. Peterson on behalf of herself, and Mrs. Peterson on behalf of the two Peterson Trusts—unanimously adopted an amendment the Plan (the "2018 Amendment"). (ECF No. 67, pg. 5: June 2020 Decl. of Robert

Peterson, ¶¶ 4-7). The 2018 Amendment included, among other things, a forum-selection clause

selecting this Court[3] and a "Mandatory and Binding Arbitration Procedure" (the "Arbitration

Procedure"). Defendants have moved to compel individual arbitration pursuant to the Arbitration

Procedure, the relevant portions of which are excerpted below:

> **Section A-2 - Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"):** As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims. . . .

(ECF No. 67, pgs. 8: 2018 Amendment: § A-2). The Arbitration Procedure provides that any

"Covered Claims," as defined by the Arbitration Procedure, "shall be settled by binding

arbitration." (ECF No. 67, pg. 8: 2018 Amendment, § A-2(a)). The Arbitration Procedure includes

a section entitled "No Group, Class, or Representative Arbitrations." (the "Class Action Waiver").

The Class Action Waiver states:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any employee, participant or beneficiary other than the Claimant. The requirement that (x) all

---

[3] This case was transferred to this Court from the Eastern District of Texas pursuant to the forum-selection clause in the 2018 Amendment. (*See* ECF No. 49).

Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section A-2, Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section A-6, then the entire Arbitration Procedure (i.e., all of this Section A-2) shall be rendered null and void in all respects. Except as to the applicability and enforceability of the foregoing Class Action Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability, or performance of this Arbitration Procedure or any of its provisions. Any dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined solely by the court specified in Section A-6. Moreover, nothing in this Arbitration Procedure shall preclude a party from seeking interim or provisional relief or remedies in aid of arbitration from the court specified in Section A-6.

(ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)) (emphasis in original).

Defendants seek to compel Plaintiffs to individually arbitrate their claims pursuant to the Arbitration Procedure and the Class Action Waiver. Plaintiffs oppose individual arbitration on several grounds. First, Plaintiffs argue there is no agreement to arbitrate because: (1) they did not assent to the 2018 Amendment and the Arbitration Procedure contained therein; and (2) the Arbitration Procedure fails for lack of consideration and mutuality. (ECF No. 70, pgs. 15-21). Next, Plaintiffs argue that—even if an arbitration agreement was formed—the Arbitration Procedure is invalid because it conflicts with certain substantive rights, remedies, and standards under ERISA. (ECF No. 70, pgs. 21-35). Specifically, Plaintiffs assert the Class Action Waiver: (1) violates ERISA's anti-cutback rule embodied in ERISA § 204(g), 29 U.S.C. § 1054(g)(1); (2) operates as an unlawful exculpatory provision under ERISA § 410(a), 29 U.S.C. § 1110; (3) prevents the effective vindication of their right to seek Plan-wide relief under ERISA § 502(a), 29 U.S.C. § 1132(a), and § 409, 29 U.S.C. § 1109; (4) alters the standard of review used to review fiduciary actions in arbitration in violation of ERISA § 404(a), 29 U.S.C. 1104(a); and (5)

improperly shifts attorneys' fees in violation of ERISA § 502(g), 29 U.S.C. § 1132(g).

## II.    LEGAL STANDARD

### A.    The Federal Arbitration Act

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The first step is contract formation—whether the parties entered into *any arbitration agreement at all. Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *see Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citations omitted). If the answer is yes, the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether a plaintiff's claim is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Kubala*, 830 F.3d at 201 (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Courts apply "the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citing *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073–74 & n. 5 (5th Cir.2002)). In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

**B.    Delegation Clauses**

When an agreement to arbitrate "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 202 (citing *First Options*, 514 U.S. at 942 (1995)). "Delegation clauses are enforceable and transfer [a] court's power to decide arbitrability questions to the arbitrator." *Kubala*, 830 F.3d at 202. "[A] valid delegation clause requires the court to refer a claim to the arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202 (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

"[I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited." *Kubala*, 830 F.3d at 202. As the Fifth Circuit has explained:

> [The Court] performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

---

*Kubala*, 830 F.3d at 202 (emphasis added).[4] The Fifth Circuit has further explained that "absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir, 2018) (footnote omitted); *see, e.g.*, *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *2 (5th Cir. Aug. 6, 2021) (discussing the same).

## C.    The Effective Vindication Exception

The Supreme Court has recognized an "'effective vindication' exception" to the enforcement of otherwise valid arbitration agreements under the Federal Arbitration Act. *See Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235 (2013). This exception, which rests on public policy grounds, "finds in its origins the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies[.]'" *Id.* at 236 (emphasis in original) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985)). The question of whether the effective vindication exception applies rests on whether a "prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Id.* at 235 (citation and internal quotation marks omitted). The Supreme Court has said this exception would "certainly" apply when a "provision in an arbitration agreement forbid[s] the assertion of certain statutory rights." *Id.* at 236.

"Although the Supreme Court has repeatedly recognized the existence of the effective vindication exception, it has, to date, declined to actually apply the exception to any case before

---

[4] In determining whether parties entered into an agreement to arbitrate, courts must "distinguish between [(i)] 'validity' or 'enforceability' challenges and [(ii)] 'formation' or 'existence' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (some internal quotation marks omitted) (quoting *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)).

---

it." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1098 (10th Cir.

2023) (collecting cases).[5] However, several federal courts have recently invalidated arbitration

provisions contained in ERISA employee stock ownership plans under the effective vindication

exception because those plans' arbitration language prohibited participants from seeking or

obtaining plan-wide relief under ERISA §§ 409(a) and 502(a)(2). *See Henry on behalf of BSC*

*Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, No. 21-2801, 2023

WL 4281813, at *4-5 (3d Cir. June 30, 2023) (invalidating a defined contribution plan's arbitration

agreement that "prohibited a claimant from 'seek[ing] or receiv[ing] any remedy which has the

purpose or effect of providing additional benefits or monetary or other relief' to anyone other than

the claimant" under the effective vindication exception) (quoting arbitration language) (alterations

in original); *Harrison*, 59 F.4th at 1107-09 (same); *Smith v. Bd. of Directors of Triad Mfg., Inc.*,

13 F.4th 613, 620-623 (7th Cir. 2021) (same); *Cedeno v. Argent Trust Co.*, No. 20-cv-9987, 2021

WL 5087898, at 4-6 (S.D.N.Y. Nov. 2, 2021) (same); *Burnett v. Prudent Fiduciary Servs. LLC*,

No. CV 22-270-RGA-JLH, 2023 WL 387586, at *6 (D. Del. Jan. 25, 2023), *report and*

*recommendation adopted sub nom. Burnett v. Prudent Fiduciary Serv.*, LLC, No. CV 22-270-

RGA, 2023 WL 2401707 (D. Del. Mar. 8, 2023) (same); *Lloyd v. Argent Tr. Co.*, No. 22CV4129

(DLC), 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022) (same).

---

[5] *See, e.g.*, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 99 (2012) (declining to hold an arbitration agreement prevented the effective vindication of statutory rights under the Credit Repair Organizations Act because the law's disclosure and nonwaiver provisions did not create a right to sue); *Italian Colors*, 570 U.S. at 235 (recognizing the exception but declining to apply it in the context of the Sherman Antitrust Act where plaintiffs argued that an arbitration agreement's class action waiver resulted in there being "no economic incentive [for plaintiffs] to pursue their antitrust claim individually in arbitration"); *Epic Systems Corp. v. Lewis*, — U.S. —, 138 S.Ct. 1612, 1624-25 (2018) (declining to invalidate an arbitration agreement's class action waiver because the National Labor Relation Act's guarantee of workers' right to engage in concerted activities for the purpose of collective bargaining does not reflect a clearly expressed and manifest congressional intention to displace the FAA and outlaw class and collective action waivers); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (declining to invalidate an agreement to arbitrate statutory claims under the Age Discrimination in Employment Act).

---

### III. ANALYSIS

In opposing the motion to compel arbitration, Plaintiffs first argue that there is no agreement to arbitrate because they did not assent to the 2018 Plan Amendment and the Arbitration Procedure contained therein. Second, Plaintiffs argue that the Arbitration Procedure unenforceable because its Class Action Waiver prevents the effective vindication of their rights under ERISA. Third, Plaintiffs argue that the Class Action Waiver is not severable from the Arbitration Procedure as a whole.

Upon careful consideration of the Motion to Compel, the briefings, the relevant portions of the record, and the law, the Court concludes that the Class Action Waiver: (1) commits the question of its enforceability to this Court and not the arbitrator; (2) prevents the effective vindication of Plaintiffs' statutory right to seek plan-wide relief under ERISA §§ 502(a)(2) and 409; and (3) is not severable from the overall Arbitration Procedure. For the reasons discussed below, the Court concludes the Arbitration Procedure is unenforceable and **DENIES** the Motion to Compel. Having so concluded, the Court pretermits consideration of Plaintiffs' remaining arguments as to whether: (1) Plaintiffs assented to the Arbitration Procedure; and (2) the Class Action Waiver prevents the effective vindication of Plaintiffs' other statutory rights.

### A. The Arbitration Procedure Commits the Question of the Enforceability of the Class Action Waiver to this Court

The Court concludes the Arbitration Procedure commits the question of the validity and enforceability of its Class Action Waiver to this Court. Defendants argue the Class Action Waiver contains a delegation clause that commits the question of whether the Class Action Waiver is enforceable to the arbitrator. "The Supreme Court ha[s] recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Reyna v. Int'l Bank of Com.*, 839 F.3d

---

373, 378 (5th Cir. 2016) (some internal quotation marks omitted) (quoting *Rent-A-Center*, 561

U.S. at 68-69). While Defendants are correct that the Arbitration Procedure contains a delegation

clause, that delegation clause excludes the issue of the Class Action Waiver's enforceability and

commits that issue to this Court.

In arguing that the question of the Class Action's Waiver enforceability is delegated to the

arbitrator, Defendants cite to a portion of the Arbitration Procedure that provides:

> Except as to the applicability and enforceability of the foregoing Class Action
> Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or
> issue of arbitrability with respect to this Arbitration Procedure, including as to the
> jurisdiction of the arbitrator(s) or relating to the existence, scope, validity,
> enforceability, or performance of this Arbitration Procedure or any of its provisions.

(ECF No. 71, pg. 7 n. 5) (citing ECF No.  67, pg. 9: 2018 Amendment: § A-2(b)). Defendants fail

to cite, however, the very next sentence of the Class Action Waiver, which provides that "[a]ny

dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined

solely by the court specified in Section A-6." (ECF No.  67, pgs. 8-10: 2018 Amendment: § A-

2(b)). Section A-6 of the 2018 Amendment specifically identifies this Court as the forum of choice

for challenges to the legal enforceability of the Arbitration Procedure. (ECF No. 67, pg. 13: 2018

Amendment: § A-6)[6]. Thus, the terms of the Arbitration Procedure (1) separates the issue of the

Class Action Waiver's enforceability from its delegation clause and (2) reserves that issue for this

Court.

The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt

Info. Sciences, Inc. v. Bd. of Trustees of Leland Standford Univ.*, 489 U.S. 468, 476 (1989). Instead,

the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other

---

[6] Section A-6 states that, "[t]o the extent . . . any Claimant fails or refuses to comply with the Arbitration Procedure
[or] wishes to challenge the legal enforceability of the Arbitration Procedure, . . . such action or challenge shall be
filed exclusively in the United States District Court for the Northern District of Texas." (ECF No. 67, pg. 13: 2018
Amendment: § A-6).

---

contracts, in accordance with their terms." *Id.* Here, *inter alia*, Plaintiffs challenge the validity and enforceability of the Class Action Waiver on the grounds that it prevents the effective vindication of their statutory rights under ERISA. The Class Action Waiver commits that issue to this Court. As a consequence of the Court's conclusion above, the Court next addresses this challenge.

**B.    The Arbitration Procedure Prevents the Effective Vindication of Plaintiffs' Statutory Rights under ERISA § 502(a)(2)**

Having concluded the Arbitration Procedure commits the question of the Class Action Waiver's validity to this Court, the Court next considers whether the Class Action Waiver prevents the effective vindication of Plaintiffs' statutory rights under ERISA §§ 502(a)(2) and 409(a). The Court considers this question in two parts: (1) whether Plaintiffs have a statutory right to seek Plan-wide relief; and, if so, (2) whether the Arbitration Procedure prevents the effective vindication of that right.

*1.    Whether Plaintiffs' Have a Statutory Right to Seek Plan-Wide Relief under ERISA §§ 502(a)(2) and 409(a)*

ERISA § 502(a)(2) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary[,] or fiduciary for appropriate relief under [ERISA § 409]." 29 U.S.C. § 1132(a)(2). Section 409(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter **shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits** of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall **be subject to such other equitable or remedial relief as the court may deem appropriate**, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). Plaintiffs' claims implicate § 502(a)(2) and seek plan-wide relief under § 409(a). Plaintiffs allege, *inter alia*, that Brozen, the Board Defendants, and Bouras violated their fiduciary duties to the Plan under ERISA § 404(a), 29 U.S.C. § 1104(a). (ECF No.

33, pgs. 22-24). *Inter alia* and as pleaded, Plaintiffs seek relief from the Court requiring Brozen, the Board Defendants, and Bouras: (1) "to make good to the Plan and/or any successor trust(s) the losses resulting from their breach of ERISA and restore any profits they have made through the use of assets of the Plan;" and (2) "provide other appropriate equitable relief to the Plan and its participants and beneficiaries," including surcharge, an accounting of profits, the imposition of a constructive trust, and an equitable lien on any funds wrongfully held by the defendants. (ECF No. 33, pg. 32). Plaintiffs also seek an order from the Court allocating the recovered Plan losses to the individual accounts of the putative class members in order to make them whole for any injury suffered as a result of the fiduciary breaches of Brozen, the Board Defendants, and Bouras. (ECF No. 33, pg. 32). As pleaded, Plaintiffs have invoked ERISA § 502(a)(2) and § 409(a) to recover losses to the entire Plan—not only the losses to their individual account(s).

Plaintiffs argue the Class Action Waiver is void because it prevents the effective vindication of their right to such Plan-wide relief. Defendants argue that the Class Action Waiver does not preclude Plaintiffs from suing in a "representational" capacity on behalf of the Plan. (ECF No. 71, pg. 9). Defendants assert "[t]he representational nature of the ERISA fiduciary breach claims, however, does not mean that Plaintiffs are entitled to litigate on behalf of other Plan participants or other Plan participants' accounts." (ECF No. 71, pg. 9). Defendants contend that the Class Action Waiver is not unlawful because "nothing in ERISA entitles Plaintiffs' to litigate on behalf of class participants." (ECF No. 71, pg. 9). Moreover, Defendants argue that the Class Action Waiver "does not preclude the recovery of 'any losses' to the Plan," but rather requires Plaintiffs to "pursue alleged claims on behalf of themselves and not on a class or collective bases." (ECF No. 71, pgs. 9-10).

However, whether the Class Action Waiver prohibits class arbitration procedures is not the

issue here. Instead, as discussed below, the determinative issue is whether the Class Action Waiver prohibits Plaintiffs from pursuing Plan-wide relief in arbitration. Defendants assert that ERISA § 502(a)(2) claims are not "inherently representative" in the context of defined contribution plans. (ECF No. 94, pg. 4; ECF No. 126, pg. 2). Defendants contend that individual participants in a defined contribution plan may seek relief under ERISA § 502(a)(2) for fiduciary breaches that impair the value of plan assets solely in a participant's individual account. (ECF No. 94, pg. 4; ECF No. 126, pg. 2). Thus, according to Defendants, participants in a defined contribution plan only have an ERISA-recognized interest in their own individual accounts under § 502(a)(2), not in the entire plan. (ECF No. 94, pg. 4-5; ECF No. 126, pg. 2). In so arguing, Defendants refer the Court to the Supreme Court's decision in *LaRue v. DeWolf, Boberg & Assocs.*, 552 U.S. 248 (2008). However, Defendants misread *LaRue* and the Fifth Circuit has rejected Defendants' interpretation.

For its decision in *LaRue*, the Supreme Court relied on its prior opinion in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (2018). *See generally LaRue*, 552 U.S. 248 (discussing *Russell*, throughout). Unlike *LaRue* and the case before the Court, *Russell* involved a plaintiff who was a participant in a defined benefit plan. *LaRue*, 552 U.S. at 255. Defined benefit plans, such as traditional pension plans, promise participants a specified monthly benefit upon retirement. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 98 (2007) ("A defined-benefit plan, as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment.") (citation and internal quotation marks omitted).[7] In *Russell*, the plaintiff received all

---

[7] *See also, Definitions, Retirement Plans*, Internal Revenue Service, https://www.irs.gov/retirement-plans/plan-participant-employee/definitions (last reviewed or updated Jun. 29, 2023) ("Defined Benefit Plan, also known as a traditional pension plan, promises the participant a specified monthly benefit at retirement. Often, the benefit is based on factors such as the participant's salary, age and the number of years he or she worked for the employer.").

---

of the benefits to which she was contractually entitled but sought damages stemming from a delay in the processing of her disability claim. *Russell*, 473 U.S. at 136-137. The Supreme Court held § 502(a)(2) did not provide a remedy for this type of individual claim because the text and history of the statute indicate that "its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142. The *Russell* Court concluded that, since "Congress did not intend [§§ 409 and 502(a)(2)] to authorize any relief except for the plan itself," the plaintiff did not have a cause of action under § 502(a)(2) because relief would accrue only to her, without any benefit to the entire plan. *Id.* at 144.

*LaRue*, by contrast, involved a plaintiff who was a participant in a defined contribution plan. *LaRue*, 552 U.S. at 250-51. Unlike defined benefit plans, defined *contribution* plans—such as 401(k) plans and employee stock ownership plans—involve individual accounts that do not pay fixed contractual benefits. *See LaRue*, 552 U.S. at 255-56 (distinguishing defined contribution plans).[8] Instead, participants' benefits in a defined contribution plan are typically tied to the value of the assets in their individual accounts; thus, participants' benefits can turn on plan fiduciaries' particular investment decisions. *Thole v. U.S. Bank N.A.*, — U.S. —, 140 S.Ct. 1615, 1618 (2020); *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("A defined contribution plan is one where employees and employers may contribute to the plan, and the employer's contribution is fixed[,] and the employee receives whatever level of benefits the amount contributed on his behalf will provide.") (internal quotation marks omitted). In *LaRue*, the plaintiff alleged that acts

---

[8] A "Defined Contribution Plan is a retirement plan in which the employee and/or the employer contribute to the employee's individual account under the plan. The amount in the account at distribution includes the contributions and investment gains or losses, minus any investment and administrative fees." *See Definitions, Retirement Plans*, INTERNAL REVENUE SERVICE, https://www.irs.gov/retirement-plans/plan-participant-employee/definitions (last reviewed or updated Jun. 29, 2023).

of the plan fiduciary specifically depleted the value of the assets in the plaintiff's own plan account.

*LaRue*, 552 U.S. at 250-51. The *LaRue* Court explained:

> For defined contribution plans, [unlike for defined benefit plans], fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. . . Consequently, our references to the "entire plan" in *Russell*, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context.

*Id.* at 255-56. Thus, the Supreme Court held that the *LaRue* plaintiff, unlike the *Russell* plaintiff, did have a cause of action under § 502(a)(2). *Id.* at 256. The *LaRue* Court explained that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.*

Thus, a plain reading of *LaRue* shows that Defendants have misread its holding—*LaRue* does not hold that defined contribution plan participants "may seek relief under ERISA § 502(a)(2) for fiduciary breaches that impair the value of plan assets *solely* in [the] participant's individual account." (ECF No. 94, pg. 4) (emphasis added). Defendants' insertion of the word "solely" is not supported by the text of § 502(a)(2) and § 409 or the Supreme Court's interpretation those statutes in *LaRue*. Moreover, *LaRue* did not conclude that defined contribution plan participants do not have an ERISA-recognized interest in the assets of the entire plan under § 502(a)(2) and § 409(a). "Far from constraining relief under § 409(a) in a defined contribution plan, *LaRue* makes clear that relief is available wherever it would advance the protection of the entire plan." *Cedeno*, 2021 WL 508789, at *4.

The Fifth Circuit has further rejected Defendants' reading of *LaRue* as discussed in *Perez v. Bruister*, 823 F.3d 250 (2016). In *Perez*, the Fifth Circuit discussed both *Russell* and *LaRue* in the context of employee stock ownership plans—like the one at issue here. The *Perez* court

---

explained:

> The Supreme Court has held that claims for relief under ERISA § 502(a)(2) must inure to the benefit of the plan as a whole, not to individual beneficiaries. *Mass. Mutual Life Ins. Co. v. Russell*, 472 U.S. 134, 139-144, 105 S.Ct. 3085, 3088-91, 87 L.Ed.2d 96 (1985). But the Court expanded on this statutory interpretation **by affording a remedy to a defined contribution plan participant to recoup the impaired value of plan assets "in a participant's individual account [when] caused by a fiduciary breach."** *LaRue v. DeWolff, Boberg, & Assocs.*, 552 U.S. 248, 256, 128 S.Ct. 1020, 1022-23, 169 L.Ed.2d 847 (2008). In this case, the "loss [] to the plan" is the amount that the ESOP overpaid for [the company] stock. Consequently, **the losses suffered by the participants in ESOP are coterminous with those of the plan,** and [the plaintiff's] individual claim is proportional to the claims and losses of fellow participants.

*Id.* at 257-58 (emphasis added).[9] Thus, the Fifth Circuit has recognized that individual plan participants in defined contribution plans have an ERISA-recognized interest assets of a plan assets as a whole because the losses suffered by individual plan participants are "coterminous" with the

---

[9] The Fifth Circuit addressed *LaRue* and *Russell* in the context of the defendants' argument that the individual plaintiff did not have standing to sue on behalf of the employee stock ownership plan (the "ESOP") under ERISA §§ 409(a) and 502(a)(2). *Perez*, 823 F.3d at 257-58. The *Perez* defendants argued that "the district court erred by allowing [the individual plaintiff] to pursue a claim on behalf of the ESOP and its beneficiaries without seeking class certification or the court's affording other safeguards for the absent beneficiaries' interests." *Id.* at 257. The Fifth Circuit noted that the defendants raised a "theoretically difficult question" as to whether the individual defendant "was required to sue as a class representative, or the court was required to impose safeguards to ensure that all class members are notified, fairly treated, and not disadvantaged by self-interested prosecution of the claims." *Id.* at 258. The court explained that:

> Although the district court here imposed no such safeguards, this court has implicitly approved the use of class actions to obtain relief for alleged ERISA plan-wide violations. *See, e.g.*, *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 293, 308 (5th Cir. 2000) (ERISA plan beneficiary filed class action to challenge trustees' plan termination agreements) . . . . If [the plaintiff], with only one or two other participants, had pursued this case independently, we would have to confront theses issues. In theory, there is no difference between plan participants and class members vis-à-vis the need to protect absentees' rights in representative litigation. As it is, the [Secretary of Labor's] participation here, and the joinder of the cases for trial and judgment, eliminates concerns about protecting the absent participants' interests.

*Id.* at 258. Thus, the Fifth Circuit recognized that individual participants in a defined contribution plan may sue for plan-wide relief but indicated some concern as to whether the interests of absentee participants and beneficiaries would be adequately protected without class certification-type procedures. This concern is of no moment here because Plaintiffs have moved for class certification. (*See* ECF No. 33, pgs. 28-31). Thus, if litigation in this case proceeds, the Court will have the opportunity to determine whether Plaintiffs satisfy the class representative requirements of Federal Rule of Civil Procedure 23 and adequately represent the interests of the putative class members. Moreover, as will be discussed below, the Class Action Waiver's language is not problematic because it funnels participants away from class arbitration procedures, but because it prevents them from seeking Plan-wide remedies, which the Fifth Circuit recognized that they are entitled to under ERISA § 409(a).

---

loss to the entire plan. *See id.* at 257-58

Numerous courts have recognized that individual participants in a defined contribution plan may seek plan-wide relief under ERISA §§ 409(a) and 502(a)(2). *See, e.g.*, *Browe v. CTC Corp.*, 15 F.4th 175 (2d Cir. 2021) (affirming district court's trial judgment in part with respect to imposing liability under § 502(a)(2) in action brought by individual participant in a defined contribution plan on behalf of the plan); *Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019) (affirming district court's trial judgment awarding $29.7 million in ESOP losses in action brought by an individual participant on behalf of an ESOP under ERISA §§ 409(a) and 502(a)(2)); *Harrison*, 59 F.4th at 1107-09 (recognizing plaintiff's right to seek plan-wide relief in invalidating a defined contribution plan's arbitration agreement that prohibited such relief under the effective vindication exception); *Smith*, 13 F.4th at 620-623 (7th Cir. 2021) (same); *Cedeno*, 2021 WL 5087898, at *4-6 (same); *Burnett*, 2023 WL 387586, at *6 (same); *Lloyd*, 2022 WL 17542071, at *3-5 (same).

Plaintiffs allege that Plan fiduciaries violated ERISA by repurchasing RVNB stock from the Plan below market value and are seeking, *inter alia*, to recoup the losses to the entire Plan that resulted from that breach. Section 502(a)(2) authorizes plan participants like Plaintiffs to sue plan fiduciaries for violations of § 409(a). Section 409(a), in turn, makes fiduciaries liable for "any losses *to the plan*" resulting from such breaches. 29 U.S.C § 1109(a) (emphasis added). Thus, §§ 502(a)(2) and 409(a) specifically entitles Plaintiffs to sue for the Plan-wide relief they seek. Having concluded that Plaintiffs have a statutory right to seek Plan-wide relief, the Court next addresses whether the Class Action Waiver in the Arbitration Procedure prevents the effective vindication of that right.

2.    *Whether the Class Action Waiver Prevents the Effective Vindication of Plaintiffs' Statutory Rights under ERISA § 502(a)(2)*

The Court concludes the Class Action Waiver is unenforceable because it prevents Plaintiffs from effectively vindicating their statutory right to seek plan-wide relief under ERISA §§ 502(a)(2) and 409(a). As a threshold matter, the Fifth Circuit—like all other circuits that have addressed the question—has held that ERISA claims are generally arbitrable. *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) ("Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act"); *see Smith* 13 F.4th at 620 ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable.") (collecting cases). In doing so, however, the Fifth Circuit recognized that arbitration of ERISA claims is appropriate only "[s]o long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." *Kramer*, 80 F.3d at 1084 (citation and internal quotation marks omitted). While the Fifth Circuit has held that ERISA claims are generally arbitrable, it has not addressed the precise question before the Court—whether an arbitration provision can prevent an individual participant from seeking any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to other participants in the ERISA plan.

Numerous federal courts have recently addressed this exact question and invalidated such arbitration provisions under the effective vindication exception because they prospectively waive participants' rights to pursue relief authorized by ERISA §§ 409(a). As discussed below, those courts were faced with arbitration language that is substantively identical to the language in the Class Action Waiver in this proceeding. The Court finds and concludes the well-reasoned opinions of those courts are persuasive and concludes the Class Action Waiver is invalid because it constitutes a "prospective waiver of [Plaintiffs'] *right to pursue* statutory remedies." *Italian Colors*, 570 U.S. at 236 (emphasis in original) (citation and internal quotation marks omitted).

Because the Class Action Waiver prevents Plaintiffs from seeking in arbitration relief specifically authorized by § 409(a), the Arbitration Procedure is "an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* And, according to the Supreme Court, the effective vindication exception "certainly cover[s]" such agreements. *Id.*

First, the Arbitration Procedure's Class Action Waiver encompasses the claims asserted and relief sought by Plaintiffs in their Amended Complaint. The Arbitration Procedure defines "Covered Claims" as:

> Any claim by a Claimant which arises out of, relates to, or concerns this Plan, . . . , including without limitation, any claim for benefits under the Plan, . . . ; any claim asserting a breach of, or failure to follow, the Plan . . . ; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code. . . .

(ECF No. 67, pgs. 8: 2018 Amendment: § A-2(a)). A "Claimant" is defined as "an Employee, Participant, or Beneficiary." (ECF No. 67 pg. 8: 2018 Amendment: § A-1(a)). As participants in the Plan who are "asserting a breach of, or failure to follow the Plan" and "a breach of or failure to follow, any provision of ERISA," Plaintiffs' claims are covered by the Arbitration Procedure. (ECF No. 67, pgs. 8: 2018 Amendment: § A-2(a)). The Arbitration Procedure provides that these claims "shall be settled by binding arbitration." (ECF No. 67, pgs. 8: 2018 Amendment: § A-2(a)).

The Class Action Waiver purports to limit remedies that ERISA expressly authorizes. The Class Action Waiver states, in relevant parts, that:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or

equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any employee, participant or beneficiary other than the Claimant. . . .

(ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)) (emphasis in original). The Court concludes that the Class Action Waiver—in preventing Plaintiffs from "seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to anyone other than themselves—prevents the effective vindication of Plaintiffs' right to seek plan-wide relief. (ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)).

Recently, the Tenth Circuit addressed this question in *Harrison v. Envision Management Holding, Inc. Board of Directors*. *See generally Harrison*, 59 F.4th 1090. In *Harrison*, the Tenth Circuit considered arbitration language that was substantively identical to the language before the Court, holding such language prevented the effective vindication of the plaintiff's rights under §§ 409(a) and 502(a)(2). *See Harrison*, 59 F.4th at 1104-1106 (reciting arbitration language). Referring to the first sentence of the class action waiver before it—which is word-for-word identical to the Class Action Waiver before this Court—the Tenth Circuit noted that:

> The prohibition on class or collective actions, in our view, is not cause for invoking the effective vindication exception. Indeed, as the Seventh Circuit has noted, the Supreme "Court has blessed that maneuver many times, including under the National Labor Relations Act." *Smith*, 13 F.4th at 622. But the prohibition on a claimant proceeding in a representative capacity is more problematic, at least where the claimant alleges that the named defendants violated fiduciary duties that resulted in plan-wide harm and not just to the claimant's own account and the claimant seeks relief under [§ 502(a)(2)]. As the Sixth Circuit recently concluded, "[t]he weight of authority suggests that [such] claims should be thought of as Plan claims, not [the plaintiff's] claims." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022). If the Sixth Circuit is correct on that point, then [the arbitration clause's] prohibition on a claimant proceeding in a representative capacity is inconsistent with, and prevents a claimant from effectively vindicating the remedies afforded by, § 1132(a)(2). We ultimately do not need to decide that question because, as we shall proceed to discuss, the second sentence of Section 21(b) prevents Harrison from effectively vindicating the statutory remedies cited in his complaint.

*Id.* (footnote omitted). The Tenth Circuit rested its decision on the second and third sentences of the class action waiver before it—both of which are substantively identical to the Arbitration Procedure's Class Action Waiver in this proceeding.[10] The *Harrison* court concluded that the second sentence "would clearly prevent Harrison from obtaining at least some forms of relief that he seeks in his complaint pursuant to [§ 502(a)(2)] . . . because [those] forms of relief would have the purpose or effect of providing additional benefits or monetary or other relief to all Plan participants and would thus be barred." *Id.* (internal quotation marks omitted, some non-substantive alterations incorporated). The Tenth Circuit determined that its conclusion was confirmed by the third sentence of the class action waiver. *Id.* The Tenth Circuit explained that the class action waiver before it was:

> [Written] in a manner intended to foreclose any such plan-wide relief. In other words, [the class action waiver] **is not problematic because it requires Harrison to arbitrate his claims, but rather because it purports to foreclose a number of remedies that were specifically authorized by Congress in the ERISA provisions cited by Harrison.** Because [the class action waiver], if enforced, would prevent Harrison from vindicating in the required arbitral forum the statutory causes of action listed in his complaint, we conclude that the effective vindication exception applies in this case. Indeed, it is not clear what remedies Harrison would be left with if [the class action waiver] is enforced as written. And, in fact, [the class action waiver] effectively prevents any claimant from pursuing the types of claims that Harrison asserts in his complaint.

*Id.* (emphasis added)

The Tenth Circuit relied on the Seventh Circuit's recent decision in *Smith v. Board of Directors of Triad Manufacturing, Inc. See generally Smith*, 13 F.4th at 615. In *Smith*, the Seventh

---

[10] The only difference between the second sentence in the Arbitration Procedure's Class Action Waiver here and the second sentence in the arbitration provision's class action waiver in *Harrison* is that the *Harrison* language inserts the word "Eligible" before "Employee, Participant, or Beneficiary other than the Claimant" and the Class Action Waiver does not. *Harrison*, 59 F.4th at 1106. The only differences between the third sentence in the *Harrison* class action waiver and the Arbitration Procedure's Class Action Waiver are: (1) the *Harrison* class action waiver refers to "arbitrator(s)" rather than a single "arbitrator"; and (2) again inserts "Eligible" before "Employee, Participant, or Beneficiary." *Id.* at 1107. These differences are immaterial and do not diminish the persuasive value of the Tenth Circuit's analysis.

---

Circuit applied the effective vindication exception to arbitration language identical the arbitration language in *Harrison*, and thus substantively identical to the Arbitration Procedure before the Court.[11] The arbitration provision in *Smith*—like the Arbitration Procedure here and the arbitration provision in *Harrison*—prevented claimants from "seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to anyone other than themselves. *Id.*

Like the Tenth Circuit in *Harrison*, the Seventh Circuit held that, while ERISA claims are generally arbitrable, this language constituted a prospective wavier of plan participants' right to pursue statutory remedies for plan-relief under ERISA §§ 502(a)(2) and 409(a). *Id.* At 621. The *Smith* court explained:

> [I]ndividualized arbitration [is not] inherently incompatible with ERISA. Because Smith participated in a defined contribution plan, ***LaRue***, and not *Russell*, **governs, and the Court made clear in *LaRue* that § 1132(a) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account."** 552 U.S. at 256, 128 S.Ct. 1020 (emphasis added) . . . . The bottom line is that our holding turns on the impermissible relief, and not the chosen vehicle, for ERISA claims under the plan here.

*Id.* At 622 (emphasis added in bold). In other words, the Seventh Circuit held "that the plain text of [ERISA § 409(a)] and the terms of the arbitration provision cannot be reconciled: What the statute permits, the plan precludes." *Id.* at 621.

Recently, the Third Circuit joined the Seventh and Tenth Circuits in holding that arbitration language identical to the language before the Court in this case is unenforceable under the effective

---

[11] *See Smith v. Greatbanc Tr. Co.*, No. 20 C 2350, 2020 WL 4926560, at *1-2 (N.D. Ill. Aug. 21, 2020) (reciting arbitration language), *aff'd sub nom. Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021). The only differences between the language in the arbitration provision in *Smith* and the Arbitration Procedure are the same differences between the language in the Arbitration Procedure and the language in *Harrison*. *See* n. 10.

---

vindication exception. *Henry*, 2023 WL 4281813, at *4-5.[12] As with the class action waivers in *Smith*, *Harrison*, and this proceeding, the Third Circuit considered an employee stock ownership plan's class action waiver that "prohibited claimants from 'seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief' to anyone other than the claimant." *Id.* at *1 (alterations in original). Like the Seventh and Tenth Circuits, the Third Circuit concluded that this language could not be enforced because it "purports to waive rights that a statute creates." *Id.* at *4 (citing *Harrison*, 59 F.4th at 1108-09; *Smith*, 13 F.4th at 621-22). In addition to the Third Circuit, a handful of federal district court have followed the lead of the Seventh and Tenth Circuits in the wake of *Smith* and *Harrison* and have invalidated arbitration provisions with substantively identical class action waivers under the effective vindication exception. *See Cedeno*, 2021 WL 5087898, at *4-6; *Burnett*, 2023 WL 387586, at *6; *Lloyd*, 2022 WL 17542071, at *3.[13]

Defendants argue that these courts are mistaken. Specifically, Defendants argue the reasoning in both *Smith* and *Harrison*: (1) run afoul of the Supreme Court's decision in *LaRue*; and (2) are rejected by the Supreme Court's recent decisions in *Viking River Cruises, Inc. v. Moriana*, — U.S. —, 142 S.Ct. 1906 (2022), and *Thole v. U.S. Bank N.A.* For the reasons discussed

---

[12] The class action waiver before the Third Circuit in *Henry* is identical to the Arbitration Procedure's Class Action Waiver before the Court in this case. *See* Defendant-Appellants' Appendix at 159-60, *Henry*, 2023 WL 4281813, ECF No. 26-3.

[13] *But see Holmes v. Baptist Health S. Fla., Inc.*, No. 21-22986-CIV, 2022 WL 180638, at *2-3 (S.D. Fla. Jan. 20, 2022) (declining to invalidate arbitration provision given: (1) the 11th Circuit has never applied the effective vindication exception and indicated a hesitancy to do so; and (2) the language at issue deviated from the language in *Smith* insofar as it did prohibited "additional benefits or monetary relief to any person" other than claimant but did not prohibit "other relief" like the removal of a fiduciary) (citing *Smith*,13 F.4th at 616); *Robertson v. Argent Tr. Co.*, No. CV-21-01711-PHX-DWL, 2022 WL 2967710, at *8-10 (D. Ariz. July 27, 2022) (declining to apply the effective vindication exception because: (1) the arbitration language, unlike *Smith* and *Harrison*, did not preclude participants from seeking equitable remedies; and (2) the court found no indication that ERISA bars plan participants from choosing to waive collective action when an individualized remedy is still available) (*citing Smith*, 13 F.4th at 615-623; *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 593 F. Supp. 3d 1078 (D. Colo. 2022), *aff'd*, 59 F.4th 1090 (10th Cir. 2023); *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019)).

---

above, the Court rejects Defendants' reading of *LaRue*, *see supra* III.B.1., and the Court declines to repeat its reasoning in this section. Additionally, for the reasons discussed below, the Court is unpersuaded by Defendants' argument that *Viking River* and *Thole* reject the reasoning underpinning the Tenth and Seventh Circuits' decisions in *Harrison* and *Smith*.

Both *Viking River* and *Thole* are materially distinguishable from the case at hand. In *Viking River*, the Supreme Court dealt with the question of whether the FAA preempted a California Supreme Court decision interpreting the California Private Attorney General Act ("PAGA"), which allowed "aggrieved employees" to bring civil actions against former employers for violations of state labor law on behalf of the State of California. *Viking River*, 142 S.Ct. at 1916-17.[14] The California Supreme Court interpreted PAGA as requiring the invalidation of employment agreements that: (1) waived an employee's representational standing to bring a PAGA claim against a former employer on behalf of the state in a judicial or arbitral forum; and (2) required employees to only arbitrate or litigate PAGA claims for violations of state labor law that employee personally suffered. *Viking River*, 142 S.Ct. at 1917-18 (citing *Iskanian v. CLS Transportation Los Angeles*, LLC, 59 Cal. 4th 348, at 383 (2014)). The *Viking River* Court held the first rule was not preempted by the FAA because "[n]othing in the FAA establishes a categorical rule mandating the enforcement of waivers of standing to assert claims on behalf of absent principals." *Id.* at 1922. The Supreme Court interpreted the second rule as an expansive rule of mandatory claim joinder and found that it was preempted by the FAA—holding that the rule "unduly circumscribe[d] the freedom of parties to determine the issues subject to arbitration and

---

[14] Believing that the relevant state agency did not have sufficient resources to reach the desired level of compliance through enforcement actions for violations of state labor law, the California legislature empowered "aggrieved employees"—defined as including "any person who was employed by the allege violator and against whom one or more of the alleged violations was committed"—to bring a civil suit and obtain civil penalties that previously could have only been recovered by the State in an enforcement action. *Viking River*, 142 S.Ct. 1914-15 (citing CAL. LAB. CODE § 2699(a)-(c)).

the rules by which they will arbitrate." *Id.* at 1923 (citation and internal quotation marks omitted).

*Viking River* deals with a conflict between the FAA and state law. For this reason alone, it is inapposite. Unlike *Viking River*, in this proceeding, there is no conflict between the FAA and any law—state or federal. "[T]he conflict in need of harmonization is not between the FAA and ERISA; it is between ERISA and the [Arbitration Procedure], which precludes certain remedies that [§§ 502(a)(2) and 409(a)] expressly permit." *Smith*, 13 F.4th at 622-23; *see also Harrison*, 59 F.4th at 1110 (the question is not whether "the FAA and ERISA conflict in any way," but whether "the specific provisions of the arbitration section of the Plan effectively prevent [participants] from vindicating statutory remedies that are outlined in ERISA"); *Cedeno*, 2021 WL 508798, at * 6 ("[T]here is in fact a clear statutory right for a participant to seek Plan-wide relief under §§ 409(a) and 502(a)(2), and there is no conflict with the FAA because there is no provision of the FAA that prevents a participant from seeking such remedies."). Because this case involves a conflict between an arbitration agreement and the rights of defined contribution plan participants under ERISA— and not a conflict between the FAA and state law—the Court concludes that the Supreme Court's ruling in *Viking River* is inapposite.

Defendants' reliance on *Thole* is misplaced because that case is also entirely distinguishable from the case at hand. Defendants argue that "any attempt to analogize a claim under ERISA § 502(a)(2) to the first form of 'representative' PAGA action[s] [in *Viking River*] necessarily fails" because the Supreme Court held in *Thole* that participants in an ERISA-governed retirement plan did not have representational standing to sue under § 502(a)(2). (ECF No. 126, pg. 3) (citing to *Thole*, 140 S.Ct. 1618-20). However, in *Thole*, the plaintiffs were participants in a defined *benefit* plan—not a defined *contribution* plan. *Thole*, 140 S.Ct at 1618. The *Thole* plaintiffs filed a putative class action, alleging mismanagement of the defined benefit plan; however, the

---

plaintiffs had been paid all of their monthly pension benefits and had not suffered any monetary injury. *Id.* The Supreme Court held that they did not have representational standing to sue on behalf of their plan because they had not suffered an injury in fact giving them a sufficiently concrete interest in the outcome of the litigation. *Id*. at 1620. As the Supreme Court pointed out in the second sentence of its opinion, "[o]f decisive importance to [that] case" was that "*the plaintiffs' retirement plan [was] a defined benefit plan, not a defined contribution plan.*" *Id.* at 1618 (emphasis added). Thus, because the *Thole* plaintiffs continued to receive their contractually-fixed benefits, those plaintiffs had no concrete stake in a case alleging fiduciary mismanagement of the defined benefit plan. *Id.* at 1620.

As discussed above, the Supreme Court has made clear that participants' interest their ERISA plan's assets differ based on whether the plan is a defined contribution or a defined benefit plan. *Compare Russell*, 473 U.S. at 139-45 (a participant in a defined benefit plan cannot bring an individual claim under § 502(a)(2)), *with LaRue*, 552 U.S. at 253-56 (a participant in a defined contribution plan *can* bring such a claim under § 502(a)(2)). Unlike the *Thole* plaintiffs, Plaintiffs in this proceeding have a concrete interest in the outcome of this litigation. Plaintiffs allege, *inter alia*, that Plan fiduciaries—Brozen, the Board Defendants, and Bouras—violated their duties to the Plan under ERISA by selling the Plan's assets—RVNB common stock—for less than fair market value. Thus, the loss to the Plan is the amount that RVNB allegedly underpaid to repurchase the company's stock. "Consequently, the losses suffered by the participants of the [Plan] are coterminous with those of the [Plan]," and Plaintiffs' individual stake in their claims seeking Plan-wide relief are "proportional to the claims and losses of fellow participants." *Perez*, 823 F.3d at 258.

Nevertheless, Defendants argue that the Supreme Court required the *Thole* plaintiffs to

---

"demonstrate their own injury for Article III standing[] *because* a participant's claim under [§] 502(a)(2) is ***not*** similar to an 'agent or proxy' type of 'representative' action." (ECF No. 126, pg. 4 n. 1) (second emphasis in original). In other words, Defendants contend that representative standing does not require a plaintiff to have suffered their own injury in fact. However, the Supreme Court has explained:

> [I]n order to claim "the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving" them "a sufficiently concrete interest in the outcome of the issue in dispute." *Hollingsworth v. Perry*, 570 U.S. 693, 708, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013) (internal quotation marks omitted); *cf. Gollust v. Mendell*, 501 U.S. 115, 125–126, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) (suggesting that shareholder must "maintain some continuing financial stake in the litigation" in order to have Article III standing to bring an insider trading suit on behalf of the corporation); *Craig v. Boren*, 429 U.S. 190, 194–195, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (vendor who "independently" suffered an Article III injury in fact could then assert the rights of her customers).

*Thole*, 140 S.Ct. at 1620. Thus, *Thole* states that, for those plaintiffs to have had representative standing, they had to show they suffered an injury in fact—not, as Defendants propose, that representative plaintiffs *either* suffer an injury in fact *or* have representational standing. As adjudicated, the *Thole* plaintiffs did not suffer an injury in fact and could therefore not assert representational standing. *Id.* By contrast, Plaintiffs here and representational plaintiffs in PAGA suits *have* suffered injuries in fact. Here, as alleged, Plaintiffs have suffered an injury as the diminished value of the assets in Plaintiffs' accounts. In representative PAGA actions, the injury in fact was the state labor law violation the employee personally suffered. *See Viking River*, 142 S.Ct. at 1941 ("PAGA limits statutory standing to 'aggrieved employees'—a term defined to include 'any person who was employed by the alleged violator and *against whom one or more of the alleged violations was committed*.'") (emphasis added) (citing Cal. Lab. Code § 2699(c)). Thus, even if the Court were to assume *arguendo* that the dichotomy at play in *Viking River* was relevant to this proceeding, the Court is not convinced *Thole* illustrates that the Class Action

---

MEMORANDUM OPINION AND ORDER

Waiver is similar to the waivers that the Supreme Court blessed in *Viking River*.

The Court agrees with those courts which have concluded that language like that of the Class Action Waiver before the Court improperly forecloses statutory remedies under ERISA §§ 502(a)(2) and 409(a). The Court bases this conclusion on the portion of the Class Action Waiver that prevents claimants from seeking or receiving "any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant." (ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)). The Court agrees with the considered opinions of the Third Circuit, Seventh Circuit, and Tenth Circuit—this language would prevent Plaintiffs from obtaining at least some forms of relief they seek under ERISA § 490(a), particularly an order requiring Plan fiduciaries to "make good to the Plan and/or any successor trust(s) the losses resulting from their breaches of ERISA and restore any profits they have made through the use of plan assets." (ECF No. 33, pgs. 31-33); *see Henry*, 2023 WL 4281813, at \*4; *Smith*, 13 F.4th at 621-23; *Harrison*, 59 F.4th at 1108-09.

The Court reiterates that the problem with the Class Action Waiver is not that it prohibits class arbitration of Plaintiffs' statutory claims under ERISA. As noted in *Smith*, the Supreme Court "has blessed that arbitration maneuver many times." *Smith* 13 F.4th at 622 (citing *Epic Systems*, 138 S.Ct at 1632 (National Labor Relations Act); *Italian Colors*, 570 U.S. at 238-39 (Sherman Act); *CompuCredit*, 565 U.S. at 100 (Credit Repair Organization Act); *Gilmer*, 500 U.S. at 35 (Age Discrimination in Employment Act)). Instead, the problem is that the Class Action Waiver prohibits statutory remedies that are specifically authorized under ERISA. The Court's decision "turns on the impermissible relief, and not the chosen vehicle, for ERISA claims under the plan here." *Smith* 13 F.4th at 622. The Supreme Court has made clear that a "prospective waiver of a party's *right to pursue* statutory remedies" in arbitration are unenforceable, on public policy

grounds. *Italian Colors*, 570 U.S. at 235-36 (emphasis in original) (citations and internal quotation marks omitted). While the Supreme Court has declined to invalidate any arbitration agreements on under this "effective vindication exception," it has explained that the exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* While such provisions are rare, the Court concludes the Class Action Waiver does just that—it prevents Plaintiffs from seeking the Plan-wide relief they are statutorily entitled to pursue under §§ 502(a)(2) and 409(a). Thus, it the Court must conclude the Class Action Waiver is unenforceable under the effective vindication doctrine. *See id*.

**C.    The Class Action Waiver Is Not Severable from the Arbitration Procedure**

The unenforceable Class Action Waiver is not severable from the Arbitration Procedure as a whole. The Class Action Waiver, in relevant part, states:

> The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section A-2, Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section A-6, then the entire Arbitration Procedure (i.e., all of this Section A-2) shall be rendered null and void in all respects.

(ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)) (emphasis added). For the reasons discussed above, the Class Action Waiver's prohibition on Plaintiffs' right to seek or receive any remedy that has the purpose or effect of providing relief to anyone other than Plaintiff is unenforceable. As the Class Action Wavier itself states, this prohibition is a material and non-severable term of the Arbitration Procedure. Thus, because the Class Action Waiver is an unenforceable prospective waiver of Plaintiffs' statutory rights, the entire Arbitration Procedure outlined in the 2018 Plan Amendment is "rendered null and void in all respects." (ECF No. 67, pg. 9: 2018 Amendment:

§ A-2(b)). "In other words, Defendants are precluded from arguing that [Plaintiffs are] required to submit [their] claims to arbitration without the remedy limitations outlined in the [Class Action Waiver]." *Harrison*, 59 F.4th 1112.

## IV.  CONCLUSION

The Court concludes that the Arbitration Procedure's Class Action Waiver is unenforceable because it prospectively waives Plaintiffs' statutory right to seek Plan-wide relief under ERISA §§ 502(a)(2) and 409(a). Because the Class Action Waiver is not severable from the Arbitration Procedure, the Court must conclude the entire Arbitration Procedure is unenforceable. As such, the Court **DENIES** Defendants' Motion to Compel Arbitration. (ECF No. 66).

**SO ORDERED:** July 12, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE

# Tab 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JASON COLEMAN and JESSICA CASEY, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | § § § § § § | |
| | § | |
| *Plaintiffs*, | § § | |
| **v.** | § § | Case No. 4:19-cv-00705 |
| **NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, PAUL GENERALE, MIKE PAXTON, NICK BOURAS, and STERLING INVESTMENT PARTNERS III, L.P.,** | § § § § § § § § | |
| *Defendants*. | § § | |

## DECLARATION OF ROBERT PETERSON

Pursuant to 28 U.S.C. § 1746, I, Robert Peterson, declare and state the following:

1.       I am over the age of 18, of sound mind, and capable of making this declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct. If called upon as a witness, I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.       I submit this Declaration in support of Defendants' Motion to Transfer Venue to the Northern District of Texas Pursuant To A Valid Forum Selection Clause (the "Transfer Motion").

3.       I am a member of RVNB Holdings, LLC, the successor to RVNB Holdings, Inc. I was also previously a stockholder and board member of RVNB Holdings, Inc.

23-10832.168

4.      Effective October 1, 2012, RVNB Holdings, Inc. executed a certain Employee Stock Ownership Plan which was thereafter amended and restated from time to time (the "Plan").

5.      RVNB Holdings, Inc. merged into RVNB Holdings, LLC on December 22, 2017, with RVNB Holdings, LLC becoming the surviving entity and the "Sponsoring Employer" and Plan Administrator of the Plan.  RVNB Holdings, LLC remained the Sponsoring Employer and Plan Administrator of the Plan well into late 2019.

6.      The Plan was amended in 2017 to terminate the Plan.  Although the Plan was terminated in 2017, it remained in existence and as a legal entity until after the IRS issued its favorable determination letter in May 2019 and all remaining assets of the Plan were distributed in the second half of 2019.

7.      On May 18, 2018, the Plan was further amended to, among other things, include provisions for "a Mandatory and Binding Arbitration Procedure" and "a Restriction on Venue." Attached hereto as **Exhibit A** is a true and correct copy of the Amendment to the RVNB Holdings, Inc. Employee Stock Ownership Plan, dated January 1, 2018, including the amendment to the Claims Procedure which is an attachment to the Plan.

I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on March 11, 2020.

_____
Robert Peterson

# Tab 5

## AMENDMENT TO THE RVNB HOLDINGS, INC.
## EMPLOYEE STOCK OWNERSHIP PLAN
## JANUARY 1, 2018

WHEREAS, RVNB HOLDINGS, INC., a Delaware corporation, executed a certain Employee Stock Ownership Plan effective October 1, 2012, which was thereafter amended and restated from time to time (the "Plan"), and

WHEREAS, the Plan was amended to permanently discontinue contributions to the Plan, to terminate the same, and is no longer invested primarily in employer securities; and

WHEREAS, RVNB HOLDINGS, INC. merged into RVNB Holdings, LLC, a Delaware limited liability company (the "Company") on December 22, 2017, becoming the "Sponsoring Employer" of the Plan, and

WHEREAS, Section 14.1 of the Plan gives the Company the right to amend the Plan.

NOW, THEREFORE, it is agreed by the undersigned that the Plan is hereby amended effective as of January 1, 2018 in the following manner:

**1.**    The definition of "Company" under the Plan is amended effective as of December 22, 2017 to provide that RVNB Holdings, LLC succeeded RVNB HOLDINGS, INC. by adding the following sentence to the end of the first paragraph of the RECITALS: "Effective December 22, 2017, RVNB HOLDINGS, INC. merged into RVNB Holdings, LLC with RVNB Holdings, LLC surviving, and RVNB Holdings, LLC succeeded as the Company on that date." Neither the name of the Plan nor the name of the trust created under the Trust Agreement shall be modified to reflect the change in the name of the Company. The new EIN of the Company is: 37-1882235.

**2.**    The Plan shall be amended to permit modification by supplements to the Plan. The terms and provisions of each supplement are a part of the Plan and supersede any other provisions of the Plan to the extent necessary to eliminate any inconsistencies between the supplement and any other Plan provisions.

**3.**    The Plan shall be amended to add a new Supplement A titled "Claims, Arbitration Procedure and Legal Action" as follows:

## Supplement A

## Claims, Arbitration Procedure and Legal Action

### Section A-1 – Definitions:

**Arbitration Procedure.** The term "Arbitration Procedure" means the Mandatory and Binding Arbitration Procedure set forth in Section A-2 of this Supplement A.

**Claimant.** The term "Claimant" means an Employee, Participant, or Beneficiary.

**Covered Claims.** The term "Covered Claims" has the meaning set forth in Section A-2(a) of this Plan.

**Policy.** The term "Policy" shall have the meaning set forth in Section A-3 of this Plan.

### Section A-2 – Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"):

As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims.

(a) **Covered Claims.** Any claim by a Claimant which arises out of, relates to, or concerns this Plan, the Trust, or the Trust Fund, including without limitation, any claim for benefits under the Plan, Trust, or Trust Fund; any claim asserting a breach of, or failure to follow, the Plan or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect. Under no circumstances are the AAA Supplementary Rules for Class Arbitrations to be used. If the Covered Claims solely involve (i) claims under ERISA § 502(a)(1)(B) to recover benefits due to the Claimant under the terms of the Plan, to enforce the Claimant's rights under the terms of the Plan, or to clarify the Claimant's rights to future benefits under the terms of the Plan, and/or (ii) claims for penalties under ERISA § 502(c), the Covered Claims shall be submitted to and decided by only one (1) arbitrator. For all other disputes, the Covered Claims shall be submitted to and decided by three (3) arbitrators. Claimant shall assert all Covered Claims in the same arbitration, after first exhausting the claims procedure set

2

23-10832.172

forth in the Policy, and shall not split Covered Claims. The judgment on the final award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof and shall be res judicata as to all Covered Claims the Claimant asserted or could have asserted in the arbitration demand but shall have no effect on the claims of any other employee, participant or beneficiary and shall not have any binding effect on the Plan Administrator or Trustee except as to the individual Claimant only.

(b) **No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any employee, participant or beneficiary other than the Claimant. The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section A-2, Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section A-6, then the entire Arbitration Procedure (i.e., all of this Section A-2) shall be rendered null and void in all respects. Except as to the applicability and enforceability of the foregoing Class Action Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability, or performance of this Arbitration Procedure or any of its provisions. Any dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined solely by the court specified in Section A-6. Moreover, nothing in this Arbitration Procedure shall preclude a party from seeking interim or

3

23-10832.173

provisional relief or remedies in aid of arbitration from the court specified in Section A-6.

(c) **Selection of Arbitrator(s).** The arbitrator(s) shall be mutually acceptable to all parties to the dispute and must be attorney(s) with prior experience with ERISA claims.  The arbitrator(s) need not be selected from the AAA's panel of arbitrators if the parties to the dispute can reach agreement on the selection of the arbitrator(s).  If, however, the parties cannot agree on the selection of the arbitrator(s) within twenty-one (21) days of the demand for arbitration, then the arbitrator(s) shall be selected pursuant to the AAA's National Rules for the Resolution of Employment Disputes; provided, however, that (i) the list of potential arbitrators provided by the AAA shall be limited to attorneys with prior ERISA experience; (ii) for an arbitration to be heard by one arbitrator, the AAA shall provide a list of names of seven (7) potential arbitrators from which the two sides (Claimant on one side and all respondents on the other side) shall alternatively strike names until only one name remains, with the Claimant striking first; and (iii) for an arbitration to be heard by three (3) arbitrators, the AAA shall provide a list of names of eleven (11) potential arbitrators from which the two sides shall alternatively strike names until only three names remain, with the Claimant striking first.

(d) **Location and Administration of Arbitration.** The arbitration proceedings shall be held in Dallas, Texas, or at such other place as may be selected by mutual agreement of the parties.  A Claimant may initiate arbitration by serving a demand for arbitration on the Plan Administrator and, if applicable, the Trustee and by filing such demand for arbitration with the appropriate office of the AAA. In order to save time and expenses, the parties may agree to have the arbitrator(s), and not the AAA, administer the arbitration.  In the absence of such an agreement, however, the AAA will administer the arbitration.  Any demand for arbitration involving a claim under ERISA § 502(a)(1)(B) shall be served on the Plan Administrator and, if applicable, Trustee, and filed with the AAA within twelve (12) months of the date on which the denial of claims is issued by the Appropriate Named Fiduciary or the ERISA § 502(a)(1)(B) claim shall be barred as untimely.

(e) **Rules of Arbitration.** The arbitrator(s) will apply the same standards of review as would apply to the Covered Claims as if they were asserted in the court specified in Section A-6.  For example, it is intended that in any arbitration over an ERISA § 502(a)(1)(B) claim, including a claim for benefits under the Plan, discovery will be limited to the Plan documents and the record developed during the administrative review process, and that the determination made by the Appropriate Named Fiduciary during the administrative review process will be reviewed under an "abuse of discretion" (a/k/a "arbitrary and capricious") standard of review.  Similarly, it is intended that in any arbitration over a claim involving the

4

23-10832.174

review of any action, inaction, or determination by a Plan fiduciary for which action, inaction, or determination the fiduciary has been granted discretionary authority, the fiduciary's action, inaction, or determination will also be reviewed under an "abuse of discretion" (a/k/a "arbitrary and capricious") standard of review even if such alleged action, inaction, or determination involves an alleged breach of fiduciary duty or violation of ERISA or the Code. Subject to these limitations, the arbitrator(s) shall have the discretion to order such discovery as permitted under the National Rules for the Resolution of Employment Disputes of the AAA. All disputes regarding discovery shall be decided by the arbitrator(s).

(f) **Arbitration Award.** The arbitration award shall be in writing. In rendering the award, the arbitrator(s) shall determine the respective rights and obligations of the parties under federal law, or, if federal law is not applicable, the laws of the State of Texas. The arbitration award shall be binding on all parties solely with respect to the Claimant's individual claims and it shall have no effect with respect to claims of any other participant or beneficiary including the Plan accounts of any other participant or beneficiary.

(g) **Fees and Expenses.** Except as may be awarded by the arbitrator(s) in a final award: (i) the fees and expenses of the arbitrator(s) and arbitration shall be split equally by the two sides with Claimant being on one side and all respondents being on the other side; and (ii) except as may be otherwise provided in Section A-5, each party shall bear the expense of his, her or its own counsel, experts, witnesses, and preparation and presentation of evidence. The arbitrator(s) may include in his, her or their final award an award of arbitration fees and expenses and/or attorneys' fees and expenses to the extent allowed under ERISA. Notwithstanding the foregoing, if Claimant feels that he or she cannot pay one-half of the fees and expenses of the arbitrator(s) and arbitration, he or she may petition the AAA for relief from such requirement pursuant to the AAA Rules.

(h) **Confidentiality.** Neither the Claimant nor the arbitrator(s) may disclose the existence, content, subject matter, or results of any arbitration without the prior written consent of the Company. This nondisclosure provision shall apply to all aspects of the arbitration proceeding, including without limitation, discovery, testimony, other evidence, briefs, and the award. In the event of a breach or threatened breach of this confidentiality provision, the Company may seek temporary, preliminary and/or permanent injunctive relief to prevent such breach or threatened breach, as well as any damages suffered by the Company, Plan Administrator, or Trustee. In the event the Company brings an action to enforce this confidentiality provision and receives any remedy (whether temporary or permanent), the Claimant or arbitrator responsible for the breach or threatened breach shall pay the Company's attorneys' fees and expenses. In any action to confirm or set aside the arbitration award, the parties shall cooperatively seek to

5

file the arbitration award under seal or for an *in camera* inspection by the court without the award being filed in the public record.

(i)   **Arbitrator Independence.**   The parties intend that the arbitrator(s) be independent and impartial.   To this end, the arbitrator(s) shall disclose to the parties, both before and during the arbitration proceedings, any professional, family, or social relationships, past or present, with any party or counsel.

(j)   **Application of Federal Arbitration Act.**   This Arbitration Procedure, as set forth in all of this Section A-2 of the Plan, shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").   Subject to the provisions of the FAA, the final award rendered by the arbitrator(s) shall be final and binding on the parties to the arbitration with respect to the Claimant's individual claims only.

(k)   **Covered Claims Includes Claims Against Fiduciaries and/or Non-Fiduciaries.**  This Arbitration Procedure shall apply to all Covered Claims asserted by a Claimant, whether such Covered Claims (i) are asserted against one or more of the Plan's fiduciaries or alleged fiduciaries, including but not limited to the Plan Administrator and/or Trustee; and/or (ii) are asserted against the Employer or any other non-fiduciary (e.g., a Plan service provider).

**Section A-3 – Claims Policy:**  The claims procedure required under ERISA §503 and Department of Labor Regulations thereunder is set forth in an administrative policy regarding claims procedures (the "Policy") that is promulgated by the Plan Administrator. The terms of such Policy are incorporated as part of the Plan by reference. Such Policy will be the sole and exclusive remedy for a Claimant to make any Covered Claim, including but not limited to a claim for benefits under the Plan and/or a claim for breach of fiduciary duty. Following the exhaustion of the claims procedure set forth in the Policy, a Claimant whose Covered Claim has been partially or completely denied may initiate arbitration in accordance with Section A-2 of the Plan, Mandatory and Binding Arbitration Procedure.  No arbitration of a Covered Claim may be initiated, however, unless and until the aggrieved Claimant has (a) submitted a timely claim in accordance with the provisions of the Policy; (b) been notified by the Plan Administrator that the claim has been denied (or such claim is deemed denied); (c) filed a written request for a review of the claim in accordance with the Policy; and (d) been notified in writing of an adverse determination on review.  In any arbitration of a Covered Claim, the same standards of review that will be applied by the arbitrator(s) to the Covered Claim as would apply if the Covered Claim had been filed in the United States District Court for the Northern District of Texas, (i) all actions and inactions of any Plan fiduciary, and the determination made by the Appropriate Named Fiduciary, will be reviewed under an abuse of discretion standard of review (a/k/a arbitrary and capricious standard of review) to the extent such Plan fiduciary is granted discretionary authority by the Plan or Trust with respect to such action, inaction, or determination; and (ii) any review of the Appropriate Named Fiduciary's decision on a claim for benefits under the Plan (i.e., an ERISA § 502(a)(1)(B) claim), will be premised solely on the terms of the Plan document and the record developed during the administrative review process.

6

23-10832.176

**Section A-4 – Plan Administrator's Review of Covered Claims:**  The Plan Administrator shall have full and absolute discretionary authority in ruling on, and taking all actions to effectuate a ruling on, all Covered Claims asserted or raised by a Claimant pursuant to the Policy. Notwithstanding any contrary provision of this Plan, benefits under this Plan will be paid only if the Plan Administrator decides in its discretion that the applicant is entitled to them. The Plan Administrator's interpretation of Plan provisions, any findings of fact by the Plan Administrator, including eligibility to participate and eligibility for benefits, and any other discretionary acts or determinations by the Plan Administrator are final and may only be reviewed for abuse of discretion (i.e., under an arbitrary and capricious standard of review).

**Section A-5 – Arbitration, Legal Action, Limitation of Liability and Indemnification:**
Unless otherwise prohibited by law, the Trust will directly pay, or reimburse the Trustee and/or the Plan Administrator for, all costs, attorneys' fees and other expenses associated with any claim, suit, arbitration, or other proceeding brought by a Claimant against them. Notwithstanding the foregoing, the Company may elect to pay, or reimburse the Trustee and/or Plan Administrator for, such costs, attorneys' fees and other expenses in lieu of the Trust paying such amounts. The Trust and/or Company may purchase insurance to reimburse or pay or partially reimburse or pay any such costs, attorneys' fees, and other expenses. With respect to any indemnity and payment of expenses or fees under the Plan, such payments will be made only from assets of the Employer (or insurance purchased by the Employer), and will not be made directly or indirectly from assets of the Trust. The Company shall have the power to select all legal counsel for which it is providing any indemnity or for which it is paying or reimbursing (directly or through insurance) attorneys' fees, expenses or other costs. The Trustee and/or Plan Administrator may also select counsel of its own choosing to participate, along with counsel selected by the Company, in any claim, suit, arbitration, or other proceeding at the sole cost and expense of the Trustee and/or Plan Administrator, without right to reimbursement from the Trust or Company.

**Section A-6 – Restriction on Venue:**  If a Claimant wishes to pursue any Covered Claim, that Claimant shall comply with the Arbitration Procedure, set forth in Section A-2 of the Plan, and shall not file any such claim in a state or federal court. To the extent, however, any Claimant fails or refuses to comply with the Arbitration Procedure, wishes to challenge the legal enforceability of the Arbitration Procedure, or to the extent the Arbitration Procedure is invalidated, such action or challenge shall be filed exclusively in the United States District Court for the Northern District of Texas. In the event a Claimant makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure in any court, the Claimant shall, to the maximum extent permitted by law, reimburse the defendants in that action for all attorneys' fees, costs, and expenses incurred by them in defending against the Claimant's unsuccessful court challenge.

**Section A-7 – Application of Law:**  This Plan will be construed and interpreted in accordance with the Code and ERISA. However, if the Plan needs to be construed and interpreted according to a State's or Commonwealth's laws (to the extent that such laws are not preempted by the

23-10832.177

provisions of the Code and ERISA), then this Plan will be construed and interpreted according to the laws of the State of Texas.

4. Section 12-4 of the Plan, "Claim Procedure" is deleted in its entirety and replaced with "RESERVED". All references to Section 12-4 shall be replaced with Section A-3.

5. Section 15-7 of the Plan, "Application of Law" is deleted in its entirety and replaced with "RESERVED". All references to Section 15-77 shall be replaced with Section A-7.

6. In all other respects, except as hereinbefore modified, the said Plan is hereby ratified and confirmed.

IN WITNESS WHEREOF, RVNB HOLDINGS, LLC has caused this Amendment to be duly executed and its seal to be hereunto affixed as of this 18th day of May , 2018.

RVNB HOLDINGS, LLC

BY: _____

8

23-10832.178

# Tab 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON COLEMAN and JESSICA CASEY, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 4:19-cv-00705 |
| NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, PAUL GENERALE, MIKE PAXTON, NICK BOURAS, and STERLING INVESTMENT PARTNERS III, L.P., | § § § § § § § | |
| *Defendants*. | § § | |

## DECLARATION OF NICK BOURAS

Pursuant to 28 U.S.C. § 1746, I, Nick Bouras, declare and state as follows:

1.    I am over the age of 18, of sound mind, and capable of making this declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct. If called upon as a witness, I could and would testify as to the truth of the facts below. I give this Declaration freely without payment or coercion of any kind.

2.    I submit this Declaration in support of Defendants' Motion to Transfer Venue to the Northern District of Texas Pursuant To A Valid Forum Selection Clause (the "Transfer Motion").

3.    Until September 2017, I was employed by RVNB Holdings, Inc. as its Chief Financial Officer. In connection with my role as an employee of RVNB Holdings, Inc., I took

certain actions and signed certain documents on behalf of RVNB Holdings, Inc. in connection with its administration of the RVNB Holdings, Inc. Employee Stock Ownership Plan.

4.    Effective October 1, 2012, RVNB Holdings, Inc. adopted and executed an Employee Stock Ownership Plan which was thereafter amended and restated from time to time (the "Plan"). A true and correct copy of the Plan document effective October 1, 2012 (the "2012 Plan") is attached hereto as **Exhibit A**.

5.    The Plan named RVNB Holdings, Inc. as Plan Administrator.

6.    The Plan was amended in 2017. Attached hereto as **Exhibit B** is a true and correct copy of the Terminating Amendment to the RVNB Holdings, Inc. Employee Stock Ownership Plan, dated June 29, 2017 (the "2017 Plan Amendment").

7.    Following the 2017 Plan Amendment, Plan participants had the right to request a distribution from the Plan equal to fifty percent (50%) of their vested Plan account balances. The remaining Plan account balances were to be distributed after the IRS issued a favorable determination letter on the Plan's termination.

I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on March 11, 2020.

Nick Bouras

# Tab 7

## ARTICLE XIV

## AMENDMENT AND TERMINATION

14-1. Amendment. Subject to the provisions of Section 15-1, the Company reserves the right to amend the Plan at any time by action of its Board of Directors or of a person designated by resolution of its Board of Directors. However, no amendment shall eliminate any benefit described in Section 411(d)(6)(A) of the Code, including an optional form of benefit, or divest a Participant of any amount that he or she would have received had he or she resigned from employment with his or her Sponsoring Employer immediately prior to the effective date of the amendment. The Company shall provide the Trustee with copies of any proposed amendment to the Plan at least seven days prior to its adoption.

14-2. Termination. The Company reserves the right to terminate the Plan at any time by action of its Board of Directors. The Plan will terminate on the earliest of the following dates:

      (a)    the date the Company is judicially declared bankrupt or insolvent;

      (b)    the date the Company permanently discontinues its contributions under the Plan; or

      (c)    the date the Company is dissolved, merged, or consolidated, or sells all or substantially all of its assets, except that, subject to the provisions of Section 14-3, provision may be made by the successor or purchaser for continuing the Plan (and in that event, the successor or purchaser shall be substituted for the Company under the Plan).

14-3. Merger or Consolidation of Plan, Transfer of Plan Assets. In the case of any merger or consolidation with, or transfer of assets and liabilities to, any other pension or profit-sharing plan, each Participant in the Plan on the date of the merger, consolidation, or transfer shall be entitled to receive a benefit immediately after the merger, consolidation, or transfer if the Plan then terminated which is equal to or greater than the benefit he or she would have been entitled to receive immediately prior to the merger, consolidation, or transfer if this Plan had terminated then.

14-4. Vesting and Distribution on Termination and Partial Termination. Notwithstanding any other provision of the Plan to the contrary, on termination of the Plan in accordance with Section 14-2 or on partial termination of the Plan by operation of law, the date of termination or partial termination will be a Valuation Date and, after all adjustments required on a Valuation Date have been made, each affected Participant's

23-10832.235

# Tab 8

UNANIMOUS WRITTEN CONSENT
of the
DIRECTORS
of
RVNB HOLDINGS, INC.

June 29 2017

The undersigned, being all of the members of the Board of Directors (the "**Board**") of RVNB Holdings, Inc., a Delaware corporation (the "**Corporation**") acting pursuant to Section 141(f) of the Delaware General Corporation Law, do hereby adopt by written consent, the following resolutions with the same force and effect as if they had been adopted at a duly convened meeting of the Board and direct this written consent (the "**Consent**") be filed with the minutes of the proceedings of the Board:

WHEREAS, the Corporation, by written agreement effective October 1, 2012, adopted a certain qualified retirement plan known as the RVNB Holdings, Inc. Employee Stock Ownership Plan for its eligible employees (the "**ESOP**"); and

WHEREAS, the Corporation, by written agreement with Reliance Trust Company ("**Reliance**") effective October 1, 2012, established a trust to hold the assets of the ESOP and appointed Reliance as the Trustee of the ESOP (the "**Trust Agreement**"); and

WHEREAS, the Corporation appointed Argent Trust Company as Trustee of the ESOP by resolution dated May 21, 2014; and

WHEREAS, the Corporation now wishes to appoint NEIL M. BROZEN as a Trustee of the ESOP; and

WHEREAS, it was deemed desirable to permanently discontinue contributions to the ESOP, and to terminate the same.

**NOW, THEREFORE, IT IS HEREBY**

RESOLVED, that the ESOP was terminated and revoked, effective June 29, 2017;

and it is further

RESOLVED, that the ESOP be amended to provide that all distributions shall be made in cash after the ESOP receives a favorable determination letter from the Internal Revenue Service;

and it is further

23-10832.246

**RESOLVED,** that ESOP Participants may elect, on a form provided by the Corporation, to receive fifty percent (50%) of their vested account balance as an early distribution during a limited distribution window prior to the date the determination letter is received from the Internal Revenue Service;

and it is further

**RESOLVED,** that, effective June 5, 2017, NEIL M. BROZEN was appointed to serve as a Trustee under the ESOP throughout the termination and windup of the ESOP;

and it is further

**RESOLVED,** that, effective June 5, 2017, the Trust Agreement with Neil M. Brozen was adopted to set forth the amended and restated ESOP trust agreement with Neil M. Brozen;

and it is further

**RESOLVED,** that the execution, delivery and performance by the Corporation of the terminating amendment to the ESOP in substantially the form annexed hereto as **Annex A** (the "**Terminating Amendment**") was approved, authorized and ratified in all respects;

and it is further

**RESOLVED,** that NICK BOURAS, Chief Financial Officer of the Corporation (the "**Authorized Representative**"), was and is hereby authorized, empowered, and directed to take all such actions and to execute and deliver the Terminating Amendment, any certifications and other documents as the Authorized Representative may deem necessary or desirable and in the Corporation's best interests and further, to execute any and all other instruments or amendments which are necessary to give effect to the termination of the ESOP, as amended and its approval by the Internal Revenue Service;

and it is further

**RESOLVED,** that all actions taken by the Authorized Representative prior to the date hereof with respect to the drafting, negotiation, finalization, delivery and execution of the ESOP and any Amendments, and the administrative policies which are within the authority conferred hereby be, and all such actions hereby are, approved, authorized and ratified;

and it is further

2

23-10832.247

**RESOLVED,** that this written consent may be executed by facsimile signatures and that such facsimile signatures shall have the same effect as original signatures;

and be it further

**RESOLVED,** that this written consent may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

*[Signatures on following page]*

3

23-10832.248

**IN WITNESS WHEREOF**, the undersigned being all of the Directors of the Corporation have executed this Consent as of the first date set forth above.

_____         _____
ROBERT PETERSON, Director               VASILIA PETERSON, Director


_____         _____
MIKE PAXTON, Director                   PAUL GENERALE, Director

4

23-10832.249

policies which are within the authority conferred hereby be, and all such actions hereby are, approved, authorized and ratified;

and it is further

**RESOLVED,** that this written consent may be executed by facsimile signatures and that such facsimile signatures shall have the same effect as original signatures;

and be it further

**RESOLVED,** that this written consent may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

*[Signatures on following page]*

**IN WITNESS WHEREOF,** the undersigned being all of the Directors of the Corporation have executed this Consent as of the first date set forth above.

_____
ROBERT PETERSON, Director

VASILIA PETERSON, Director

_____
MIKE PAXTON, Director

PAUL GENERALE, Director

3

23-10832.250

IN WITNESS WHEREOF, the undersigned being all of the Directors of the Corporation have executed this Consent as of the first date set forth above.

ROBERT PETERSON, Director

VASILIA PETERSON, Director

MIKE PAXTON, Director

PAUL GENERALE, Director

4

**Annex A**

**Terminating Amendment**

**TERMINATING AMENDMENT TO THE
RVNB HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN**

WHEREAS, RVNB HOLDINGS, INC., a Delaware corporation (the "Company"), executed a certain Employee Stock Ownership Plan effective October 1, 2012, which was thereafter amended and restated from time to time (the "Plan"), and

WHEREAS, it has been deemed desirable to permanently discontinue contributions to the Plan, and to terminate the same; and

WHEREAS, Section 14.2 of the Plan gives the Company the right to terminate the Plan and Section 14.2 of the Plan gives the Company the right to amend the Plan.

NOW, THEREFORE, it is agreed by the undersigned that the Plan is hereby terminated effective June 29, 2017 and amended in the following manner:

1.      **No Further Eligibility Upon Termination of Plan.** Section 3-1 of the Plan ("Eligibility for Participation") is amended by adding the following subsection to the end of the Section to read as follows:

"(c)    No other Employees shall be eligible to enter the Plan."

2.      **No Further Contributions Upon Termination of Plan.** Section 4-1 of the Plan ("Annual Sponsoring Employer Contributions") is amended by adding the following sentence to the end of the Section:

"The Employer shall not make any additional contributions to the Plan."

3.      **Vesting.** Section 9-4 of the Plan ("Vesting on Other Termination") is amended by adding the following subsection to the end of the Section to read as follows:

"(c)    All Participants shall have a 100% Vested Interest in their Company Stock and Other Investments Accounts."

4.      **Distributions Upon Termination of Plan.** Article X ("Distribution of Plan Benefits") is amended by adding the following Section to the end of the Article to read as follows:

"10-15.  Distributions made upon Termination of the Plan.  In coordination with Section 14-4 of the Plan, distributions made on account of termination of the Plan, will be made in accordance with this Section.

(a)    Distribution of all participant accounts shall commence as soon as practicable following the issuance of a favorable determination letter from the Internal Revenue Service ruling on the termination of the Plan and the Plan document.

*CHI 68320613v2*

(b)     All installment payments shall cease and any Participant or Beneficiary in pay status shall be eligible for the distribution window in subsection (c), above and the general termination distribution under subsection (a), above.

(c)     All distributions shall be made as a lump sum, paid in cash.

(d)     Notwithstanding the above, Participants shall be offered an opportunity to elect, on a form provided by the Administrator, to receive a distribution of up to 50% of their vested Accounts, valued as of the December 31, 2016 Valuation Date.  These distribution elections must be received by the date set forth by the Administrator in the distribution paperwork and shall be paid in cash and commence as soon as practicable thereafter. Participants who do not make an election during this window shall be eligible to receive their entire vested Accounts in accordance with subsection (a), above.

(e)     With respect to a Participant or Beneficiary who has not claimed any benefit to which such Participant or Beneficiary is entitled, and with respect to any Participant or Beneficiary who has not satisfied the administrative requirements for benefit payment, the Participant's or Beneficiary's vested Accounts may be transferred without the consent of the Participant or Beneficiary by the Trustee to another qualified defined contribution plan of the Sponsoring Employer if the Participant or Beneficiary does not consent to an immediate distribution from the terminating Plan.  In the event that the Sponsoring Employer does not maintain another qualified defined contribution plan at the time of distributions, the Administrator shall distribute the benefit of said Participant or Beneficiary pursuant to Department of Labor Regulation §2550.404a-3 in an automatic rollover to an individual retirement plan designated by the Administrator; such individual retirement plan, as defined in Code Section 7701(a)(37) that is an individual retirement account within the meaning of Code Section 408(a) or in the case of a distribution on behalf of a designated beneficiary (as defined by Code Section 401(a)(9)(E)) who is not the surviving spouse of the deceased Participant, to an inherited individual retirement plan (within the meaning of Code Section 402(c)(11)) established to receive the distribution on behalf of the nonspouse beneficiary."

     **5.**     In all other respects, except as hereinbefore modified, the Employee Stock Ownership Plan is hereby ratified and confirmed, the within amendment to be effective June 5, 2017.

*CHI 68320613v2*

2

23-10832.254

IN WITNESS WHEREOF, RVNB HOLDINGS, INC. has caused this Terminating Amendment to be duly executed and its seal to be hereunto affixed as of this 29th day of June, 2017.

**RVNB HOLDINGS, INC.**

BY: _____

Nick Bouras, Chief Financial Officer

23-10832.255

# Tab 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON COLEMAN and JESSICA CASEY, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | § § § § § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. 3:20-cv-01358-E |
| v. | § | |
| | § | |
| NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, MIKE PAXTON, NICK BOURAS, STERLING INVESTMENT PARTNERS III, L.P., NICOLE PETERSON 2012 IRREVOCABLE TRUST, and BROOKE PETERSON 2012 IRREVOCABLE TRUST, | § § § § § § § § § | |
| | § | |
| *Defendants*. | § | |

### DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND BRIEF IN SUPPORT

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), all Defendants jointly move for an order staying this case and compelling Plaintiffs to arbitrate their claims on an individual basis in accordance with the Mandatory and Binding Arbitration Procedure set forth in the RVNB Holdings, Inc. Employee Stock Ownership Plan (the "Plan").  In support of their Motion, Defendants state as follows:

## I        INTRODUCTION

Plaintiffs filed this putative class action asserting claims on their own behalf, on behalf of a class of Plan participants, and on behalf of the Plan pursuant to ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3).  Plaintiffs' Amended Complaint ("Complaint") alleges that the Plan's Trustee, Neil Brozen, and four RVNB officers and/or directors, Robert Peterson, Vasilia Peterson, Mike Paxton and Nick Bouras, violated their ERISA fiduciary duties and/or caused the Plan to engage in a prohibited transaction when RVNB redeemed the shares of RVNB stock held by the Plan in 2017.  (Compl. [ECF No. 33] at ¶¶ 1, 13-21, 80-89, 99-137.)  Plaintiffs also allege that non-fiduciaries Sterling Investment Partners III ("SIP III") and the Peterson Trusts knowingly participated in the prohibited transaction.  Plaintiffs seek to recover all losses allegedly suffered by the Plan and all Plan participants.  (*Id.* ¶¶ 3-5, 21, 24, 28-29 & pp. 31-33.)  Plaintiffs also seek to recover any Plan assets received by SIP III and/or the Peterson Trusts in connection with the alleged prohibited transaction.  (*Id.* ¶¶ 22-23.)[1]

---

[1]        Plaintiffs filed their Complaint in the United States District Court for the Eastern District of Texas on September 27, 2019.  Subsequently, Defendants filed a Motion to Transfer Venue to the Northern District of Texas Pursuant to a Valid Forum Selection Clause.  [ECF No. 27.]  On May 6, 2020, the Eastern District of Texas granted the Defendants' Motion, enforced the forum selection clause in the Plan, and transferred the case to this Court.  *See Coleman v. Brozen,* No. 4:19-cv-705 [ECF No. 49], 2020 U.S. Dist. LEXIS 79367 (E.D. Tex. May 6, 2020).

Plaintiffs' ERISA claims are derivative in nature and are necessarily made "on behalf of" the Plan. *Dorman v. Charles Schwab Corp.*, 780 Fed. Appx. 510, 513 (9th Cir. 2019) (hereinafter cited as "*Dorman III*") (recognizing that ERISA § 502(a) claims "belong to a plan—not an individual") (citing *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092 (9th Cir. 2018). Indeed, the Supreme Court has held that ERISA § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries" and that, in a case like this one, any remedy ultimately goes to the individual participant's plan account(s).[2] *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008). As Plaintiffs' own allegations make clear, the Plan is the true party in interest and any remedy awarded will be provided to the Plan and allocated to one or more individual participant's Plan account(s). (Compl. ¶¶ 3-4, 21, & pp. 31-33.)

The Plan, which is at the center of ERISA and which must be enforced according to its terms,[3] provides that Plaintiffs' claims "**shall be settled by binding arbitration** administered in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect." (App. 6, Ex. 1, R. Peterson Decl. at Ex. A, 2018 Plan Amendment, § A-2(a)) (emphasis added). Moreover, the Plan's Arbitration Procedure clearly and unmistakably delegates to the appointed arbitrators the exclusive authority to determine the gateway questions of arbitrability:

---

[2]    Although ERISA § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries," ERISA § 502(a)(2) claims, when brought in the context of a defined contribution plan like the one at issue here, can be asserted (and resolved) on an individual basis, with the claim being for plan losses to the participant's own individual plan account. *See LaRue*, 552 U.S. at 256; *Dorman III*, 780 Fed. Appx. at 514; *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (recognizing that a participant in a defined contribution plan may bring an ERISA § 502(a)(2) action for breach of fiduciary duty as to an individual account).

[3]    *See, e.g.*, *US Airways, Inc. v. McCutcheon*, 569 U.S. 88, 101 (2013) (recognizing that ERISA's statutory scheme "is built around reliance on the face of written plan documents"); 29 U.S.C. § 1132(a) (permitting enforcement only "under the terms of the plan").

> Except as to the applicability and enforceability of the foregoing Class
> Action Waiver, **the arbitrator(s) shall have *exclusive authority to resolve
> any dispute or issue of arbitrability* with respect to this Arbitration
> Procedure**, **including as to the jurisdiction of the arbitrator(s) or
> relating to the existence, scope, validity, enforceability, or
> performance of this Arbitration Procedure or any of its provisions.**

(*Id.* at § A-2(b)) (emphasis added).

In light of the Plan's arbitration provisions, the only issues for the Court to determine are:

(1) whether the Plan includes an arbitration provision;[4] (2) whether the delegation provision in

the Plan clearly and unmistakably delegates authority to the arbitrators to determine the gateway

issues of arbitrability; and (3) whether the Plan's Class Action Waiver provision is enforceable

under the FAA.  The answer to all three questions is an emphatic "yes" and the Court should

"rigorously enforce" the arbitration provision and compel Plaintiffs to individually arbitrate their

claims. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

## II     BACKGROUND

The Plan was adopted by RVNB Holdings, Inc.[5] in 2012 and RVNB expressly reserved

to itself the "right to amend the Plan at any time" and the right "to terminate the Plan at any time."

(App. 48, Ex. 2, Bouras Decl., Ex. A §§ 14-1, 14-2.)  Consistent with its authority, RVNB

amended the Plan several times, including in 2017 and 2018. (*See* App. 99-102,  Ex. 2, Bouras

Decl. ¶ 6, Ex. B; App. 4-12, Ex. 1, Peterson Decl. ¶ 5, Ex. A.)  The 2017 and 2018 Plan

---

[4]     As explained in more detail below, an ERISA plan is not a traditional bi-lateral contract.
As such, Plaintiffs' consent (or lack thereof) is irrelevant. *See infra* at 9-12.
[5]     RVNB Holdings, Inc. was merged into RVNB Holdings, LLC in December 2017 with
RVNB Holdings, LLC being the surviving entity.  (App. 2, Ex. 1, Peterson Decl. ¶ 3).  Defendants
use the term "RVNB" to refer to either RVNB Holdings, Inc. or RVNB Holdings, LLC depending
on the date at issue.  The Plan remained unchanged by the merger except that the surviving entity
(RVNB Holdings, LLC) became the Plan sponsor by operation of law.

Amendments were validly adopted by RVNB.  (App. 103-13, Ex. 2, Bouras Decl., Ex. C; App. 13-36, Ex. 1, Peterson Decl. ¶ 7, Ex. B.)

The 2017 Plan Amendment "terminated" the Plan, but the Plan remained in existence until 2019, when the IRS issued its favorable determination letter on the Plan and Plan documents. The 2017 Plan Amendment directed that participants would be entitled to receive a distribution of up to 50% of their vested Plan account balances, (App. 101, Ex. 2, Bouras Decl., Ex. B, 2017 Plan Amendment ¶ 4(d)), with the remainder to be distributed as soon as practicable after "the issuance of a favorable determination letter from the Internal Revenue Service ruling on the termination of the Plan and the Plan document." (*Id.* ¶ 4(a).)  The Plan received the Internal Revenue Service's favorable determination letter in May 2019.  (App. 116, Ex. 3, Peterson Decl. ¶ 6.)  The remaining Plan assets were distributed from the Plan during the second half of 2019. (*Id.*).

The 2018 Plan Amendment added to the Plan, among other things, an arbitration provision and class action waiver for all "Covered Claims."  (App. 6-12, Ex. 1, Peterson Decl., Ex. A, 2018 Plan Amendment.)  The 2018 Plan Amendment provides, in relevant part:

**Section A-2 – Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"):**

As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims.

(a)     **Covered Claims**. *Any claim by a Claimant[6] which arises out of, relates to, or concerns this Plan*, the Trust, or the Trust Fund, *including without limitation,* any claim for benefits under the Plan, Trust, or Trust Fund; any claim asserting a breach of, or failure to follow, the Plan or Trust; and *any claim asserting a breach of, or failure to follow, any provision of ERISA*

---

[6]     "Claimant" is defined to mean "an Employee, Participant, or Beneficiary."  (*Id.* § A-1.) Plaintiffs allege they are Participants. (*See* Compl. ¶¶ 3, 28-29.)

*or the Code, including without limitation claims for breach of fiduciary duty*, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims"), *shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect*.

\* \* \*

(j) **Application of Federal Arbitration Act.** This Arbitration Procedure, as set forth in all of this Section A-2 of the Plan, shall be governed by the Federal Arbitration Act, 9 U.S.C. 1, <u>et seq</u>. ("FAA"). Subject to the provisions of the FAA, the final award rendered by the arbitrator(s) shall be final and binding on the parties to the arbitration with respect to the Claimant's individual claims only.

\* \* \*

(k) **Covered Claims Includes Claims Against Fiduciaries and/or Non-Fiduciaries**. This Arbitration Procedure shall apply to all Covered Claims asserted by a Claimant, whether such Covered Claims (i) **are asserted against one or more of the Plan's fiduciaries or alleged fiduciaries,** including but not limited to the Plan Administrator and/or Trustee; and/or (ii) are asserted against the Employer or **any other nonfiduciary** (e.g., a Plan service provider).

(App. 6, 10, 2018 Plan Amendment § A-2(a), (j), & (k)) (emphasis added.)

The 2018 Plan Amendment also states that all "Covered Claims" must be brought solely in an individual capacity, and that the Claimant cannot seek relief on a group, class, or representative basis:

(b) **No Group, Class or Representative Arbitrations**. *All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis*. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose of effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant…. *Except as to the applicability and enforceability of the foregoing Class Action Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the*

> *existence, scope, validity, enforceability, or performance of this*
> *Arbitration Procedure or any of its provisions*.

(App. 7, 2018 Plan Amendment § A-2(b) (emphasis added.)[7]

As such, the 2018 Plan Amendment does three things relevant to this Motion: (1) it requires Plaintiffs to arbitrate their claims against Defendants; (2) it prohibits Plaintiffs from bringing their claims on a class, group, or representative basis; and (3) it delegates the exclusive authority to determine any issues of "scope, validity [or] enforceability" relating to the Mandatory Arbitration Procedure to the arbitrators. Accordingly, the Court should stay these proceedings and compel Plaintiffs to arbitrate their claims on an individual basis.

## III  ARGUMENT AND AUTHORITIES

Federal policy creates a strong presumption in favor of arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Italian Colors Rest.*, 570 U.S. at 233 ("courts must rigorously enforce arbitration agreements according to their terms"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (it is "beyond dispute that the FAA was designed to promote arbitration"). "This strong policy favoring arbitration 'holds true for claims that allege a violation of a federal statute,'" such as ERISA. *Hendricks v.*

---

[7]     Plaintiffs had notice of the 2018 Plan Amendment prior to commencing the instant litigation on September 27, 2019. They each submitted signed declarations in a separate case involving the same Plan in April 2019, in which they confirmed that they were aware of the 2018 Plan Amendment. *See* ECF No. 54-1, April 18, 2019 Declaration of Jessica Casey ¶ 7, *Casey, et al v. Reliance Trust Co.,* No. 4:18-cv-00424 (E.D. Tex.),; ECF No. 54-2, April 18, 2019 Declaration of Jason Coleman ¶ 7, *Casey, et al. v. Reliance Trust Co.,* No. 4:18-cv-00424 (E.D. Tex.). The Court may take judicial notice of these previously filed declarations. *See Blank v. Collin Cty.,* 710 Fed. Appx. 203, 204 (5th Cir. 2018); *Brown v. Lippard,* 350 Fed. Appx. 879, 883 (5th Cir. 2009).

*UBS Fin. Servs.*, 546 Fed. App'x 514, 518 (5th Cir. 2013) (quoting *Italian Colors Rest.*, 570 U.S. at 233).

Under the FAA, "[a] written provision . . . evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where, as here, there is an arbitration provision with which one party fails or refuses to comply, the other may petition a court for "an order directing that such arbitration proceed in the manner provided in such agreement." *Id.* § 4. If claims asserted in court are subject to arbitration, "the court shall make an order directing the parties to proceed to arbitration." *Id.*

Moreover, "[i]n an effort to limit meritless claims of invalidity, the Fifth Circuit has held that a party seeking to avoid arbitration must bear the initial burden of production in order to create a fact issue on the validity of an arbitration clause." *Gilliam v. Global Leak Detection U.S.A., Inc.,* 141 F. Supp. 2d 734, 737 (S.D. Tex. 2001) (citing *T&R Enters., Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1278 (5th Cir. 1980) and *Dillard v. Merrill Lynch,* 961 F.2d 1148, 1154-55 (5th Cir. 1992)); *see also Trammell v. AccentCare, Inc.,* 776 Fed. Appx. 208, 209-210 (5th Cir. 2019); *Am. Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 710 (5th Cir. 2002).

As shown below, the Plan contains an arbitration provision and class action waiver, and the Court should therefore order Plaintiffs to arbitrate their ERISA claims on an individual basis. *See, e.g.*, *Hendricks v. UBS Fin. Servs.*, 546 Fed. App'x 514, 521 (5th Cir. 2013) (reversing district court and remanding for entry of order compelling arbitration of ERISA claims where ERISA plan was amended to include an arbitration provision); *Kramer v. Smith Barney*, 80 F.3d 1080, 1086 (5th Cir. 1996) (directing district court to compel arbitration of plaintiff's ERISA

claims); *Dorman III,* 780 Fed. Appx. at 513-514 ("As every circuit to consider the question has

held, ERISA contains no congressional command against arbitration, therefore an agreement to

arbitrate ERISA claims is generally enforceable"; plaintiff required to arbitrate ERISA breach of

fiduciary duty claims on an individualized, and not class, basis) (citations omitted).[8]

**A.    The Delegation Provision In The Plan's Mandatory Arbitration Procedure Is Valid And Should Be Enforced By The Court**

The Supreme Court recently reaffirmed the principle that "parties may agree to have an

arbitrator decide not only the merits of a particular dispute, but also 'gateway' questions of

'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement

covers a particular controversy." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct.

524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010)). The

Court further held that "[w]hen the parties' contract delegates the arbitrability question to an

arbitrator, a court may not override the contract. In those circumstances, a court possesses no

power to decide the arbitrability issue." *Id.*  This "is true even if the court thinks that the argument

that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

***1.    The Delegation Clause Contained In Arbitration Procedure Properly Mandates All Gateway Questions On Arbitrability Be Submitted To The Arbitrators***

Here, the Plan's Mandatory Arbitration Procedure contains a provision that clearly and

unmistakably delegates to the arbitrator(s) the "exclusive authority to resolve any dispute or issue

of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the

---

[8]    *See also Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) (holding that "Congress did not intend to prohibit arbitration of ERISA claims"); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116 (2d Cir. 1991) (enforcing agreement to arbitrate statutory ERISA claims; *Pritzker v. Merrill Lynch*, 7 F.3d 1110, 1116 (3d Cir. 1993) (agreements to arbitrate statutory ERISA claims under the FAA are valid and enforceable); *Arnulfo P. Sulit Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 479 (8th Cir. 1988) (same).

arbitrator(s) or relating to the existence, scope, validity, enforceability, or performance of this Arbitration Procedure or any of its provisions." (App. 7, Ex. 1, Peterson Decl., Ex. A, 2018 Plan Amendment § A-2(b)). Under the FAA, this delegation provision, which is treated as "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce," is valid and enforceable. 9 U.S.C. § 2; *Rent–A–Center*, 561 U.S. at 50 (explaining that an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other"); *see also Torres v. Greystar Management Servs.*, L.P., Case No. SA-19-CA-510-FB (HJB), 2020 WL 1428462, at *1 (W.D. Tex. Jan. 23, 2020) (compelling plaintiff's ERISA breach of fiduciary duty claims into individual arbitration, and leaving for the arbitrator to decide whether any of plaintiff's claims are outside the scope of the arbitration provision). As shown below, any challenges to the delegation provision should be rejected.

**2.    *The Delegation Provision Is Valid And Enforceable*[9]**

**a.    The Plan Assented To Arbitration**

There can be no doubt that from the formation of the Plan in 2012 through at least 2019, when the Plan ceased to exist, RVNB expressly reserved to itself the "right to amend the Plan at

---

[9]    Plaintiffs will undoubtedly rely on the non-precedential Report and Recommendation (R&R) issued in *Casey v. Reliance Trust Co.*, Case No. 4:18-CV-424, 2019 WL 7403931 (E.D. Tex. Nov. 13, 2019), on Reliance's Motion to Compel Arbitration, to argue that the Plan's Arbitration Procedure is invalid or otherwise not enforceable. The R&R, however, should not be given any weight here because Judge Mazzant's order on the Defendants' Motion to Transfer Venue effectively overruled the R&R as it rejected the grounds for the ruling in the R&R. Indeed, the R&R failed to recognize that, under ERISA, the Plan's terms govern regardless of a participant's lack of knowledge or assent to any particular term. In addition, the R&R is distinguishable because Reliance did not argue that the gateway issues of arbitrability have been delegated to the arbitrators and it is for the arbitrators, and not the court, to address the validity and enforceability of the Arbitration Procedure itself.

any time" and the right "to terminate the Plan at any time."[10] (App. 93, Ex. 2, Bouras Decl., Ex. A §§ 14-1, 14-2.)  Plaintiffs participated in the Plan subject to these terms and the other terms of the Plan.

In 2018, prior to Plaintiffs' receipt of all of their vested Plan benefits, prior to their commencement of this litigation, and even prior to their filing of the *Reliance Trust* litigation, RVNB exercised its right to amend the Plan to include the Mandatory Arbitration Procedure, including the delegation provision.  (App. 4-36, Ex. 1, Peterson Decl. ¶¶ 5-7, Ex. A, 2018 Plan Amendment & Ex. B, 2018 RVNB Unanimous Consent.)  Because an ERISA plan is not a traditional bi-lateral contract, Plaintiffs' consent to the amendment was not required and is irrelevant.[11]  *See Conte v. Ascension Health*, No. 112074, 2011 U.S. Dist. LEXIS 111657, at *6 (E.D. Mich. Sep. 28, 2011) (explaining that an ERISA plan is not a traditional bi-lateral contract "negotiated between the plaintiff and defendant"); *Schoemann v. Excellus Health Plan*, 447 F.

---

[10]    Plan sponsors may generally amend employee benefit plans "for any reason at any time." *See Curtiss-Wright Corp.*, 514 U.S. at 78; *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014) (amending plan to add venue provision).  This includes the ability to amend employee benefit plans to add arbitration provisions. *See, e.g., Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (hereinafter "*Dorman II*") (enforcing arbitration provision added to ERISA plan after plaintiff's employment ended); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475 (8th Cir. 1988) (ERISA claims are properly arbitrable).  An amendment of a plan by a plan sponsor is not considered a fiduciary act; it is a settlor act which is generally not subject to challenge. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

[11]    Indeed, by opting to participate in a plan, each participant (1) agrees to be bound by the terms of the plan document, and (2) binds the employer to provide the substantive benefits described in the plan document. *See, e.g., Conley v. Pitney Bowes*, 34 F.3d 714, 717 (8th Cir. 1994) (holding that a plan document is a "bilateral contract (an agreement where promises of future performance are exchanged)"); *see also Kemmerer v. ICI Ams. Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) (characterizing pension plans as contracts that employees accept by participation in the plan); *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1211 (2d Cir. 2002) (same). For example, in *Conley*, the plan document required a participant to exhaust administrative remedies before suing for a denial of benefits. 34 F.3d at 716-717. The Eighth Circuit held as a matter of contract that, by participating in the plan, the participant agreed to exhaust administrative remedies before suing. *Id.* at 717.

Supp. 2d 1000, 1007 (D. Minn. 2006) (recognizing that "beneficiaries of employer-sponsored ERISA plans are generally not parties to the contract and play no role in negotiating [it.]").

Instead, the Plan sponsor assents to any valid amendments on behalf of the Plan. *See Smith*, 769 F.3d at 930-931 (recognizing that ERISA plans may be amended at any time, that the venue provision fell within the "large leeway" afforded employers when making such amendments, and that such provisions are presumed valid "even when [they are] not the product of an arms-length transaction"). Therefore, the Arbitration Procedure within the 2018 Plan Amendment is valid and enforceable because the Plan assented to the Arbitration Procedure when RVNB amended the Plan.

Judge Mazzant recognized these principles when he granted Defendants' Motion to Transfer and transferred this case to this Court pursuant to the forum selection clause included in the 2018 Plan Amendment. Specifically, Judge Mazzant rejected Plaintiffs' argument that they had not assented to the 2018 Plan Amendment or received consideration for the 2018 Plan Amendment. He held that:

> Not only do Plaintiffs fail to acknowledge that the Plan allows RVNB to amend or terminate it any time, but as a general rule, ERISA plan administrators, including employers or other plan sponsors, have the right at any time to freely adopt, modify, or terminate pension benefit plans . . . RVNB was therefore free to amend or modify the Plan at any time, and *it was not obligated to seek Plaintiffs' assent, negotiate with Plaintiffs, or furnish Plaintiffs consideration for the same.*

*Coleman v. Brozen,* No. 4:19-cv-705, 2020 U.S. Dist. LEXIS 79367, at *9 (E.D. Tex. May 6, 2020) (emphasis added).

Judge Mazzant's ruling on the Motion to Transfer is consistent with the Ninth Circuit's recent decision in *Dorman III*. In that case, the Ninth Circuit enforced an arbitration provision added to an ERISA plan after the plaintiff's employment ended. *See* 780 Fed. App'x, at 513. In reaching its decision, the court noted that the "relevant question is whether the Plan [and not the

individual participant] agreed to arbitrate the [ERISA] 502(a)(2) claims." *Id.* It then held that

the arbitration provision is valid and enforceable because "the Plan expressly agreed in the Plan

document that all ERISA claims should be arbitrated."[12] *Id.* Similarly here, the Plan agreed to

arbitrate any "***claim asserting a breach of, or failure to follow, any provision of ERISA.***" (App.

6, Ex. 1, Peterson Decl., Ex. A, 2018 Plan Amendment, at § A-2(a)). Thus, the Arbitration

Procedure in the 2018 Plan Amendment is valid and enforceable against Plaintiffs.

> **b.   The Arbitration Provision Is Valid And Enforceable Under The Doctrine of Direct Benefits Estoppel**

While Defendants do not need to show that Plaintiffs (as opposed to the Plan) assented to

the arbitration provision to compel arbitration, the arbitration provision would still be valid and

enforceable against Plaintiffs if Defendants had to make such a showing. The Supreme Court has

held that "traditional principles of state law allow a contract to be enforced by or against

nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation

by reference, third-party beneficiary theories, waiver, and estoppel." *Arthur Andersen LLP v.*

*Carlisle,* 556 U.S. 624, 631 (2009); *see also Hellenic Inv. Fund. Inc. v. Det Norske Veritas,* 464

F.3d 514, 517 (5th Cir. 2006). Under the doctrine of direct benefits estoppel, non-signatories are

estopped from objecting to an arbitration provision during litigation when, "during the life of the

---

[12]      In *Dorman*, a former Charles Schwab employee filed claims alleging that the defendants violated ERISA and their fiduciary duties to the ESOP at issue. Over a year after the plaintiff's employment and participation in the plan ended, an arbitration provision was added to the plan. The district court ruled that the plaintiff was not subject to the arbitration provision because he was no longer a plan participant when the arbitration provision was added. *See Dorman v. Charles Schwab & Co. Inc.*, No. 17-cv-00285, 2018 U.S. Dist. LEXIS 9107, at *9-10 (N.D. Cal. Jan. 18, 2018). The Ninth Circuit reversed and  ruled that (1) "the district court erroneously held that the arbitration provision in the Plan document was inapplicable because the provision was enacted after Dorman's participation in the Plan ended"; and (2) the plaintiff was bound by the arbitration provision and had to arbitrate his ERISA breach of fiduciary duty claims. 934 F.3d 1107, 1111-1112 (9th Cir. 2019).

**B.      Plaintiffs' Claims Are Within The Scope Of The Plan's Arbitration Procedure**

While the delegation clause places this issue before the arbitrators, and not this Court, it is indisputable that Plaintiffs' claims are covered by the scope of the Arbitration Procedure in the 2018 Plan Amendment. Courts should find that a claim is within the scope of an arbitration clause if the allegations underlying the claims "touch matters" covered by the arbitration clause. *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067-1068 (5th Cir. 1998). Indeed, "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.,* 981 F.2d 752, 755 (5th Cir. 1993) (quoting *Mar-Len of La., Inc. v. Parsons-Gilbane,* 773 F.2d 633, 635 (5th Cir. 1985)); *see also Elkjer v. Scheef & Stone, L.L.P.,* 8 F. Supp. 3d 845, 854 (N.D. Tex. 2014) (same).

A court should also construe an arbitration provision that uses language such as "arising out of," "relating to," and "every claim, controversy, or dispute" in the broadest possible manner. *See, e.g., Pennzoil,* 139 F.3d at 1067; *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 164-65 (5th Cir. 1998); *Elkjer,* 8 F. Supp. 3d at 855; *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.,* 306 Fed. Appx. 188, 192 (5th Cir. 2009) ("broad arbitration clauses are those where the language of the clause requires arbitration of any dispute that arises out of or relates to 'the agreement, or disputes that are in connection with the agreement'").

In this case, the 2018 Plan Amendment defines "Covered Claims" to include, among other things, "asserting a breach of, or failure to follow, any provision of ERISA . . . including . . . claims for breach of fiduciary duty." (App. 6, Ex. 1, Peterson Decl., Ex. A, 2018 Plan Amendment §§ A-1, A-2(a).) "Covered Claims" include ERISA claims asserted against fiduciaries, alleged fiduciaries, and non-fiduciaries. (*Id.* at Ex. A, § A-2(k).) Thus, Plaintiffs' claims clearly fall

within the scope of the Arbitration Procedure in the 2018 Plan Amendment because Plaintiffs are asserting claims against (a) Brozen, the Board Defendants, and Bouras (all of whom are alleged to be Plan fiduciaries) for violations of ERISA, and (b) SIP III and the Peterson Trusts for allegedly knowingly participating in the alleged violations of ERISA.  (*See* Compl.)  Indeed, there can be no dispute that Plaintiffs' claims "arise out of, relate to, or concern" the Plan as Plaintiffs are seeking to recover money on behalf of their Plan accounts and are requesting a declaration that certain portions of the Plan are void under ERISA.  (*See, e.g.*, Compl., pp. 31-33.)  Plaintiffs are also properly considered "Claimants" given their allegations that they are Plan participants and former employees of RVNB.  (*Id.* ¶¶ 3, 28-29.)  Thus, Plaintiffs' claims clearly fall within the scope of the Arbitration provision.

## C.  Arbitration Should Be Compelled On An Individual Basis Due To The Plan's Class Action Waiver

In considering whether claims should be submitted to arbitration on an individual or class-wide basis, the default rule is that claims are arbitrated on an individual basis.[17]  The Supreme Court has explained that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  *Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*, 559 U.S. 662, 684 (2010); *see also Epic Systems Corp. v. Lewis,* 138 S. Ct. 1612, 1623 (2018) (enforcing class action waiver because "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent"); *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1415-16 (2019) (same); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 952 F.

---

[17]     Even though questions of arbitrability are delegated to the arbitrator, the 2018 Plan Amendment is clear that this Court should decide the question of whether claims may be arbitrated on a classwide basis before the case is sent to arbitration.  (*See* App. 7, Ex. 1, Peterson Decl., Ex. A, 2018 Plan Amendment § A-2(b).)

Supp. 2d 713, 722 (N.D. Tex. 2013) (same); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553

(6th Cir. 2016) ("An agreement must expressly include the possibility of classwide arbitration for

us to conclude that the parties agreed to it.").

Here, there is no agreement to arbitrate on a class-wide, group, or representative basis.

To the contrary, the Arbitration Procedure expressly precludes group, class, and representative

arbitrations. (App. 7, Ex. 1, Peterson Decl., Ex. A, 2018 Plan Amendment, § A-2(b).)   For

instance, the Plan document's Arbitration Procedure states that "[*a]ll Covered Claims must be*

*brought solely in the Claimant's individual capacity and not in a representative capacity or on*

*a class, collective, or group basis*." (*Id*.) (emphasis added).   It goes on to explain that "[e]ach

arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not

seek or receive any remedy which has the purpose or effect of providing additional benefits or

monetary or other relief to any employee, participant or beneficiary other than the Claimant."

(*Id.*).   Since the provisions waiving class-wide or representative arbitration must be enforced

according to their terms, the arbitration must be conducted on an individualized basis.  *See, e.g.*,

*Epic Systems,* 138 S. Ct. at 1632 (recognizing that the FAA requires "federal courts to enforce

arbitration agreements according to their terms—including terms providing for individualized

proceedings"); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004).

Any argument that enforcing the Class Action Waiver would restrict Plaintiffs'

substantive rights and/or remedies should be rejected.   Indeed, "[t]he class action waiver itself is

not a restriction on Plaintiffs' substantive remedies; rather, a class action is merely a procedural

device; it does not create new substantive rights." *In re Online Travel Co.*, 952 F. Supp. 2d at

721 (citing *Frazar v. Gilbert*, 300 F.3d 530, 545 (5th Cir. 2002), *rev'd on other grounds*, *Frew*

*ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004) (internal quotations and alteration omitted); *Epic*

*Systems,* 138 S. Ct. at 1632 (rejecting argument that a class action waiver violated the National

Labor Relations Act and stating that "even a statute's express provision for collective legal actions

does not necessarily mean that it precludes "'individual attempts at conciliation'" through

arbitration") (citations omitted).

For these reasons, the Class Action Waiver should be enforced and Plaintiffs' claims

should be compelled into individual arbitration.  *See, e.g.*, *id.*; *see also Dorman III*, 780 Fed.

Appx. at 514 (finding that requiring arbitration of ERISA breach of fiduciary duty claims on an

individualized basis is consistent with *LaRue* and remanding with an order directing the district

court to compel plaintiffs to individually arbitrate their ERISA breach of fiduciary duty claims,

and not as part of a class); *Ducharme v. DST Sys., Inc.*, No. 4:17-CV-00022-BCW, 2017 WL

7795123, *1 (W.D. Mo. June 23, 2017) (dismissing ERISA § 502(a)(2) claims and enforcing

individual arbitration where plaintiff "waived his right to act in a representative capacity on behalf

of a class or collective action"); *Torres*, L.P., No. SA-19-CA-510-FB (HJB), 2020 WL 1428462,

at *1 (W.D. Tex. Jan. 23, 2020) (compelling plaintiff's ERISA breach of fiduciary duty claims

into individual arbitration).

## IV    CONCLUSION

For all the reasons set forth above, Defendants request that their Motion be granted and

Plaintiffs be directed to submit their claims to binding arbitration on an individual basis.

Defendants further request that the Court stay the judicial proceedings after compelling arbitration

until such time as the arbitration proceedings are complete.  *See* 9 U.S.C. § 3 (requiring court to

issue a stay upon compelling arbitration).

# Tab 10

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on October 10, 2023 on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Todd D. Wozniak
Todd D. Wozniak

Counsel for Defendants-Appellants Robert Peterson, Jr.; Vasilia Peterson; Mike Paxton; Sterling Investment Partners III, L.P.; Nick Bouras; Nicole Peterson 2012 Irrevocable Trust; Brooke Peterson 2012 Irrevocable Trust