No. 23-10832

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Jason Coleman, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated; Jessica Casey, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,

*Plaintiffs-Appellees*,

v.

Neil M. Brozen; Robert Peterson, Jr.; Vasilia Peterson; Mike Paxton; Sterling Investment Partners III, L.P.; Nick Bouras; Nicole Peterson 2012 Irrevocable Trust; Brooke Peterson 2012 Irrevocable Trust,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
(Hon. Ada Brown No. 3:20-cv-01358-E)

## APPELLEES' BRIEF

| | |
|---|---|
| Gregory Y. Porter | Peter K. Stris |
| Ryan T. Jenny | Rachana Pathak |
| BAILEY & GLASSER LLP | John Stokes |
| 1055 Thomas Jefferson St. NW, Ste. 540 | STRIS & MAHER LLP |
| Washington, DC 20007 | 777 S Figueroa St., Ste. 3850 |
| Telephone: (202) 463-2101 | Los Angeles, California 90017 |
| Facsimile: (202) 463-2103 | Telephone: (213) 995-6800 |
| gporter@baileyglasser.com | Facsimile: (213) 261-0299 |
| rjenny@baileyglasser.com | pstris@stris.com |

***Counsel for Plaintiffs-Appellees [additional counsel on inside cover]***

John Saul Edwards, Jr.
Ajamie LLP
711 Louisiana, Suite 2150
Houston, TX 77002
(713) 860-1600
jedwards@ajamie.com

Bridget C. Asay
STRIS & MAHER LLP
15 East State Street, Suite 2
Montpelier, VT 05602
(802) 858-4258

Colleen R. Smith
STRIS & MAHER LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
(202) 800-5749

# CERTIFICATE OF INTERESTED PERSONS

(1) No. 23-10832, *Coleman, et al. v. Brozen, et al*., USDC No. 3:20-cv-1358

(2) The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made, pursuant to Fifth Circuit Rule 28.2.1, in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:** Jason Coleman; Jessica Casey; participants and beneficiaries in the RVNB Holdings, Inc. Employee Stock Ownership Plan, and a class of all other persons similarly situated.

**Defendants-Appellants:** Neil M. Brozen; Robert Peterson, Jr.; Vasilia Peterson; Mike Paxton; Sterling Investment Partners III, L.P.; Nick Bouras; Nicole Peterson 2012 Irrevocable Trust; Brooke Peterson 2012 Irrevocable Trust.

**Counsel for Plaintiffs-Appellees:** Thomas R. Ajamie, John Saul Edwards, Jr., J. Douglas Uloth, Ajamie, L.L.P., Gregory Y. Porter, Ryan T. Jenny, Bailey & Glasser, LLP; Peter K. Stris, Rachana Pathak, John Stokes, Bridget Asay, Colleen R. Smith, Stris & Maher LLP.

**Counsel for Defendant-Appellant Neil M. Brozen:** J. Christian Nemeth, McDermott Will & Emery, LLP; Peter B. Allport, Levin Schreder & Carey, Ltd.

**Counsel for Defendants-Appellants Robert Peterson, Jr.; Vasilia Peterson; Mike Paxton; Sterling Investment Partners III, L.P.; Nick Bouras; Nicole Peterson 2012 Irrevocable Trust; Brooke Peterson 2012 Irrevocable Trust:** Todd D. Wozniak, Holland & Knight LLP; Lindsey R. Camp, Holland & Knight LLP; Melissa Davis Andrews, Holland & Knight LLP.

**Additional Interested Parties:** Hiscox Insurance Company; Sompo International; Allied World National Assurance Company; AXIS Insurance Company; ACE American Insurance Company (d/b/a Chubb); Arch Insurance Company; Indian Harbor Insurance Company (a member of the XL America Companies); Endurance Risk Solutions Assurance Co.; Starr Indemnity & Liability Company; QBE Insurance Corporation; RVNB Holdings, Inc. and its successor RVNB Holdings, LLC.

Respectfully submitted,

/s/John Stokes

John Stokes

Counsel for Plaintiffs-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs believe that oral argument is appropriate to address the important questions raised by Defendants' appeal. Defendants' position, if accepted, would substantially change existing law and endorse arbitration clauses that re-write federal statutes and sharply restrict the remedies available in arbitration.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS........................................................i

STATEMENT REGARDING ORAL ARGUMENT.............................................. iii

TABLE OF AUTHORITIES......................................................................... v

INTRODUCTION ..................................................................................1

ISSUES PRESENTED.............................................................................2

STATEMENT OF THE CASE....................................................................3

I.      Factual Background ..................................................................3

II.     Procedural History ...................................................................9

SUMMARY OF THE ARGUMENT ........................................................12

ARGUMENT .....................................................................................15

I.      Because the non-severable Arbitration Clause purports to eliminate
        statutory rights and remedies provided by ERISA, it is invalid...................15

        A.      The effective vindication doctrine invalidates arbitration clauses
                that purport to waive statutory rights and remedies. ...........................15

        B.      The Arbitration Clause purports to waive statutory rights and
                remedies and is therefore invalid under the effective vindication
                doctrine. ........................................................................18

        C.      The Arbitration Clause bars substantive, not procedural, rights.........28

II.     The Arbitration Clause is also invalid and unenforceable because it fails
        several basic precepts of contract formation. .................................41

        A.      Plaintiffs did not consent to arbitrate. .................................41

                1.      The Plan cannot assent on Plaintiffs' behalf. ...........................42

                2.      Direct benefits estoppel does not apply here. ...........................45

        B.      The Arbitration Clause fails for lack of consideration........................48

        C.      The Arbitration Clause is illusory and unenforceable.........................49

CONCLUSION ...................................................................................51

CERTIFICATE OF SERVICE .................................................................53

CERTIFICATE OF COMPLIANCE .........................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009)............................................................16

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)............................................................16

*Ali v. Smith*,
    554 S.W.3d 755 (Tex. App. 2018)...............................................46, 47

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)......................................................12, 16, 34

*Amalgamated Clothing & Textile Workers Union,*
    *AFL-CIO v. Murdock*,
    861 F.2d 1406 (9th Cir. 1988) .................................................22

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986).........................................................41

*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005)..................................................17

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
    345 F.3d 347 (5th Cir. 2003) .................................................45

*Browe v. CTC Corp.*,
    15 F.4th 175 (2d Cir. 2021) ..................................................30

*Brown v. Wilmington Tr., N.A.*,
    No. 3:17-cv-250, 2018 WL 3546186 (S.D. Ohio July 24, 2018)................45, 47

*Brundle v. Wilmington Tr., N.A.*,
    919 F.3d 763 (4th Cir. 2019) .................................................30

*Burnett v. Prudent Fiduciary Servs.*,
    No. 23-1527, 2023 WL 6374192 (3d Cir. Aug. 15, 2023)............................1, 28

*In re C&H News Co.*,
 133 S.W.3d 642 (Tex. App. 2003)........................................................49

*Canaday v. Anthem Cos.*,
 9 F.4th 392 (6th Cir. 2021) ...............................................................31

*Carey v. 24 Hour Fitness, USA, Inc.*,
 669 F.3d 202 (5th Cir. 2012) .............................................................49

*Casey v. Reliance Tr. Co.*,
 No. 4:18-CV-00424, 2018 WL 7138386 (E.D. Tex. Dec. 12, 2018)...............4, 9

*CIGNA Corp. v. Amara*,
 563 U.S. 421 (2011)..........................................................................22

*Coady v. Nationwide Motor Sales Corp.*,
 32 F.4th 288 (4th Cir. 2022) ..............................................................50

*Coan v. Kaufman*,
 457 F.3d 250 (2d Cir. 2006) .................................................34, 35, 36

*Comer v. Micor, Inc.*,
 436 F.3d 1098 (9th Cir. 2006) ........................................................43, 44

*Constantine v. Am. Airlines Pension Benefit Plan*,
 162 F. Supp. 2d 552 (N.D. Tex. 2001) ...........................................21, 32

*Cooper v. Ruane Cuniff & Goldfarb, Inc.*,
 990 F.3d 173 (2d Cir. 2021) ..............................................................36

*In re Dallas Peterbilt, Ltd.*,
 196 S.W.3d 161 (Tex. 2006) ..............................................................42

*Dorman v. Charles Schwab Corp.*,
 780 F. App'x 510 (9th Cir. 2019)....................................................39, 43

*Dorman v. Charles Schwab Corp.*,
 934 F.3d 1107 (9th Cir. 2019) ...........................................................39

*Druco Rests., Inc. v. Steak N Shake Enters., Inc.*,
 765 F.3d 776 (7th Cir. 2014) .............................................................50

*Ducharme v. DST Systems, Inc.*,
 No. 4:17-cv-22-BCW, 2017 WL 7795123
 (W.D. Mo. June 23, 2017) ...................................................................40

*Dumais v. Am. Golf Corp.*,
 299 F.3d 1216 (10th Cir. 2002) ..........................................................50

*Epic Sys. Corp. v. Lewis*,
 138 S. Ct. 1612 (2018)..........................................................................18

*Eurecat US, Inc. v. Marklund*,
 527 S.W.3d 367 (Tex. App. 2017)........................................................48

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995)..............................................................................41

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991).....................................................................16, 31, 32

*Gobeille v. Liberty Mut. Ins. Co.*,
 577 U.S. 312 (2016)..............................................................................28

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
 561 U.S. 287 (2010)..............................................................................41

*GSC Wholesale, LLC v. Young*,
 654 S.W.3d 558 (Tex. App. 2022)...................................................42, 43

*Hadnot v. Bay, Ltd.*,
 344 F.3d 474 (5th Cir. 2003) ..........................................................16, 17

*In re Halliburton Co.*,
 80 S.W.3d 566 (Tex. 2002)...................................................................50

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
 59 F.4th 1090 (10th Cir. 2023) ....................... 1, 11, 21, 22, 23, 28, 29

*Hays v. HCA Holdings, Inc.*,
 838 F.3d 605 (5th Cir. 2016) ...............................................................46

*Henry v. Wilmington Tr. NA*,
 72 F.4th 499 (3d Cir. 2023) ...........................................1, 2, 11, 23, 24, 28

*Holmes v. Baptist Health S. Fla., Inc.*,
    2022 WL 180638 (S.D. Fla. Jan. 20, 2022) ........................................................40

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ............................................................17

*Jody James Farms, JV v. Altman Grp., Inc.*,
    547 S.W.3d 624 (Tex. 2018) ........................................................46, 47

*Kemmerer v. ICI Americas Inc.*,
    70 F.3d 281 (3d Cir. 1995) ................................................................43

*Kramer v. Smith Barney*,
    80 F.3d 1080 (5th Cir. 1996) ..............................................................27

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006) ................................................................17

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ...................................................................2, 14

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ........................................................19, 36

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ..................................................24, 37, 38, 40

*Lewis v. Knutson*,
    699 F.2d 230 (5th Cir. 1983) ........................................................33, 34

*Lizalde v. Vista Quality Markets*,
    746 F.3d 222 (5th Cir. 2014) ..............................................................50

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ..............................................12, 20, 24, 40

*Miner, Ltd. v. Anguiano*,
    383 F. Supp. 3d 682 (W.D. Tex. 2019) ............................................48

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ........................................................16, 21

*Morrison v. Amway Corp.*,
517 F.3d 248 (5th Cir. 2008) ..........................................................49, 50

*Nelson v. Watch House Int'l, LLC*,
815 F.3d 190 (5th Cir. 2016) ................................................................48

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..............................................................46

*Nichols v. Alcatel USA, Inc.*,
532 F.3d 364 (5th Cir. 2008) ................................................................20

*Noble Drilling Servs., Inc. v. Certex USA, Inc.*,
620 F.3d 469 (5th Cir. 2010) ................................................................45

*Ortiz v. Am. Airlines, Inc.*,
5 F.4th 622 (5th Cir. 2021) ..............................................................20, 31

*Paladino v. Avnet Computer Techs., Inc.*,
134 F.3d 1054 (11th Cir. 1998) .......................................................17, 40

*Pegram v. Herdrich*,
530 U.S. 211 (2000)...............................................................................44

*Perez v. Bruister*,
54 F. Supp. 3d 629 (S.D. Miss. 2014) ...................................................35

*Perez v. Bruister*,
823 F.3d 250 (5th Cir. 2016) ..........................................................22, 30

*Pilger v. Sweeney*,
725 F.3d 922 (8th Cir. 2013) ................................................................20

*Rachal v. Reitz*,
403 S.W.3d 840 (Tex. 2013) ...........................................................47, 48

*Robertson v. Argent Trust Co.*,
2022 WL 2967710 (D. Ariz. July 27, 2022)..........................................39

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .................................................................38

*Sec'y U.S. Dep't of Labor v. Koresko,*
    646 F. App'x 230 (3d Cir. 2016) ........................................................26

*Shearson/Am. Exp., Inc. v. McMahon,*
    482 U.S. 220 (1987).........................................................................16

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.,*
    13 F.4th 613 (7th Cir. 2021) .....................................1, 2, 11, 17, 23, 28

*Smith v. Greatbanc Tr. Co.,*
    No. 20-C-2350, 2020 WL 4926560 (N.D. Ill. Aug. 21, 2020).........23, 39, 40, 45

*Spinetti v. Serv. Corp. Int'l,*
    324 F.3d 212 (3d Cir. 2003) ............................................................17

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010).........................................................................41

*Thole v. U.S. Bank N.A.,*
    140 S. Ct. 1615 (2020).................................................................32, 33

*Tullis v. UMB Bank, N.A.,*
    515 F.3d 673 (6th Cir. 2008) ...........................................................31

*Vanegas v. Am. Energy Servs.,*
    302 S.W.3d 299 (Tex. 2009) ...........................................................42

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996).........................................................................20

*Viking River Cruises, Inc. v. Moriana,*
    142 S. Ct. 1906 (2022)........................... 12, 13, 15, 16, 17, 18, 29, 30, 33, 34, 35

*Volt Inform. Scis., Inc. v. Bd of Tr. of Leland Stanford Jr. Univ.,*
    489 U.S. 468 (1989).........................................................................41

*Vonkeisler v. Unigate Restaurants, Inc.,*
    20 F.3d 468 (5th Cir. 1994) .............................................................20

*Wegner v. Tetra Pak, Inc.,*
    643 F. Supp. 3d 659 (E.D. Tex. 2022).............................................21

*Williams v. Medley Opportunity Fund II, LP*,
    965 F.3d 229 (3d Cir. 2020) ................................................................17

*Xerox Corp. v. Genmoora Corp.*,
    888 F.2d 345 (5th Cir. 1989) ...............................................................33

**Statutes**

29 U.S.C. § 1109 ...........................................................................*passim*

29 U.S.C. § 1110 ........................................................................26, 27

29 U.S.C. § 1132(a)(2) .....................................................................*passim*

29 U.S.C. § 1132(a)(3) ...................................................................12, 28

29 U.S.C. § 1132(d) ............................................................................19

**Other Authorities**

29 C.F.R. § 2560.503-1 ......................................................................27

Br. of Sec'y of Labor, *Cedeno v. Argent Tr. Co.*,
    No. 21-2891 (2d Cir. June 10, 2022) .............................................1, 38

Br. of Sec'y of Labor, *Harrison v. Envision Mgmt. Holding, Inc.
    Bd. of Dirs.*, No. 22-1098 (10th Cir. Sept. 7, 2022) ............................1

Fed. R. Civ. P. 23 .........................................................................35, 36

Fed. R. Civ. P. 23(b)(2) ....................................................................36

Fed. R. Civ. P. 23.1 ......................................................................34, 35

## INTRODUCTION

The exact arbitration clause here has been held unenforceable by four federal courts of appeals, in cases involving materially identical claims to this one. Facing a bevy of arguments that Defendants largely rehash here, each court has come to the same answer: because the "expressly nonseverable" arbitration clause "purports to prohibit statutorily authorized remedies," it is invalid. *Henry v. Wilmington Tr. NA*, 72 F.4th 499, 506-08 (3d Cir. 2023), *cert. denied* 2023 WL 6797729 (Oct. 16, 2023); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090 (10th Cir. 2023), *cert. denied* 2023 WL 6558426 (Oct. 10, 2023); *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021); *Burnett v. Prudent Fiduciary Servs.*, No. 23-1527, ECF 41, 2023 WL 6374192 (3d Cir. Aug. 15, 2023) (summary affirmance). The U.S. Department of Labor has likewise explained that this exact clause is invalid because it "precludes Plaintiff[s] from obtaining the very relief that ERISA expressly allows [them] to seek." Br. of Sec'y of Labor at 6, *Harrison*, No. 22-1098 (10th Cir. Sept. 7, 2022); Br. of Sec'y of Labor at 7-8, *Cedeno v. Argent Tr. Co.*, No. 21-2891 (2d Cir. June 10, 2022). This Court should reach the same conclusion.

The federal policy favoring arbitration does not give defendants license to bulldoze statutory rights. Quite the opposite. As this Court, the Supreme Court, and many other courts have recognized, an arbitration clause cannot curtail the substantive rights and remedies that a plaintiff could seek in court. Yet that is exactly

what the arbitration clause here does. Whereas ERISA allows plaintiffs to sue on behalf of their plan and seek remedies like fiduciary removal or restoration of plan losses, *e.g.*, *Henry*, 72 F.4th at 506-07, this arbitration clause expressly bars those remedies in arbitration. "[W]hat the statute permits, the plan precludes." *Smith*, 13 F.4th at 621. The clause is therefore invalid.

That is reason enough for this Court to affirm. But affirmance is also warranted because Plaintiffs did not consent to the arbitration clause. "The first principle that underscores all of [the Supreme Court's] arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (cleaned up). Here, however, Defendants added the clause to the Plan after it was terminated, most of its assets were disbursed, and, according to Defendants' government filings, there were zero active participants. Plaintiffs never even received notice of the clause's existence. They cannot possibly have consented to an arbitration clause they knew nothing about and, given it was added after they ceased employment and the Plan was terminated, had no means of rejecting. Because the clause fails this most foundational of requirements, among other blackletter rules of contract formation, affirmance is also warranted on this ground.

## ISSUES PRESENTED

1. Whether the Arbitration Clause is invalid because it would operate as a prospective waiver of Plaintiffs' rights under ERISA to pursue claims in a

representative capacity on behalf of the Plan and to seek plan-wide remedies that ERISA permits.

2. Whether the Arbitration Clause is unenforceable against Plaintiffs because (a) they received no notice of it and did not assent to it, (b) it fails for lack of consideration, or (c) it is illusory.

## STATEMENT OF THE CASE

### I.    Factual Background

Plaintiffs Jason Coleman and Jessica Casey were, at all relevant times, RVNB employees and vested participants in the RVNB ESOP. ROA.308 [¶¶ 28-29]. Plaintiffs generally allege that Defendants violated ERISA when they terminated the RVNB ESOP, caused the ESOP to sell its RVNB stock back to RVNB at below market value, and then caused RVNB to flip the stock to third-party buyers at a much higher price. The Defendants, some of whom were fiduciaries of the ESOP, benefited from this scheme at the expense of the ESOP and its participants. When Plaintiffs sued, Defendants moved to compel arbitration pursuant to an arbitration clause that purported to bar Plaintiffs from bringing any claims in a representative capacity and from seeking plan-wide relief, and that was added to the Plan by a new Plan sponsor nearly a year after the Plan's termination without providing any notice to Plaintiffs. ROA.588, 595-615. The district court denied Defendants' request to arbitrate, ROA.1687-1718, and Defendants appealed, ROA.1728.

**A.** This story begins when Defendants Robert Peterson, Jr. and his wife Vasilia Peterson founded All My Sons Moving & Storage in 1993. ROA.310 [¶¶ 38-39]. All My Sons is a moving and storage services company that eventually grew to have franchise locations throughout the United States. ROA.310 [¶¶ 38-39]. In 2012, RVNB Holdings, Inc. ("RVNB" or "Company")—a shell corporation—was formed and purchased 100% of the stockholders' ownership interests in the various All My Sons franchise locations. ROA.310-11 [¶¶ 40, 44]. Later that year, RVNB formed the RVNB ESOP. ROA.311 [¶ 47]. RVNB was the sponsor and administrator of the ESOP. ROA.311-12 [¶¶ 52-53, 55]. The ESOP's only asset was RVNB stock. ROA.311 [¶ 50]. RVNB employees who met certain requirements became participants in the ESOP and thus part owners of the Company.[1] ROA.311 [¶ 54]. Even though the Petersons had sold the Company to the employees, they retained control of it by continuing to serve as officers and directors of the Company. ROA.312 [¶ 60].

Plaintiff Casey became a Plan participant in 2013. ROA.790. She became 100% vested in the RVNB shares in her ESOP account in 2015. ROA.313 [¶ 68]. She left RVNB in May 2016, and when she did she received nothing of value from RVNB, including stock or cash from her Plan account. ROA.787-88 [¶¶ 4-5].

---

[1] The 2012 ESOP Transaction was the subject of a separate suit (now settled) asserting ERISA prohibited transaction and fiduciary breach claims. *See Casey v. Reliance Tr. Co.*, No. 4:18-CV-00424, 2018 WL 7138386 (E.D. Tex. Dec. 12, 2018).

Plaintiff Coleman became a Plan participant in 2014. ROA.799. He became 100% vested in the RVNB shares in his ESOP account in 2016. ROA.313 [¶ 68]. He left RVNB in April 2017. ROA.796 [¶ 4]. Like Casey, Coleman received nothing of value from his Plan account when his employment ended. ROA.796-97 [¶ 5].

In early 2017, less than five years after the ESOP was formed, the RVNB Board of Directors (consisting of the Petersons and an individual named Mike Paxton) and RVNB officers began planning to terminate the ESOP and sell its assets to two third parties: (1) a yet-to-be-formed entity called Residential Logistics Solutions, LLC ("RLS"), and (2) Sterling Investment Partners III, L.P. ("SIP III"), a private equity firm. ROA.304 [¶¶ 11-13]. But the ESOP's existing trustee, Argent Trust Company, refused to bless the proposed termination and sale because it was not in the best interest of the participants. ROA.315 [¶ 77]. So on June 29, 2017, the Board replaced Argent Trust Company with Defendant Neil M. Brozen and made his appointment retroactive to June 5, 2017. ROA.313 [¶ 69]. That same day, the Board voted to terminate the ESOP. ROA.313 [¶ 66]. As trustee, Brozen was responsible for representing the ESOP and its participants in terminating and winding up the ESOP. ROA.313 [¶ 70]. Thus, Brozen was responsible for selling the ESOP's assets during the wind-up period—and doing so in the best interests of all Plan participants. ROA.313 [¶ 70].

Just six days later, on July 5, 2017, the officers of RVNB worked with members of Sterling Investment Partners Advisers, LLC ("Sterling") to form and incorporate RLS. ROA.314 [¶ 71]. Significantly, all of the involved entities were interconnected; Sterling established, offered for investment, and managed the private equity firm SIP III. ROA.304 [¶ 11].

One month later, on August 7, 2017, Brozen caused the ESOP to sell its RVNB stock back to RVNB. ROA.304, 305 [¶¶ 13, 17]. The redemption price was significantly below market value. ROA.305 [¶ 17]. The ESOP participants were not allowed to vote on the sale or take any part in determining the sale price. ROA.305 [¶ 16]. Four days later, on August 11, 2017, RVNB—as planned—agreed to sell substantially all of its assets to RLS and SIP III for *five times* what RVNB had just paid the ESOP for its stock. ROA.301, 304 [¶ 14]. The transaction closed on September 29, 2017. (The stock redemption and subsequent sale are collectively referred to as "the Stock Sale."). ROA.304 [¶ 14].

In carrying out this series of events, Brozen and the other Defendants usurped the ESOP's opportunity to realize five times more gain from the sale of its only asset. ROA.305 [¶¶ 17-18]. By forcing the ESOP to sell its RVNB stock for a pittance, RVNB, its Board, and its officers received the entire upside of the sale of the Company to RLS and SIP III at the expense of the ESOP and its 1,400 participants.

ROA.305 [¶¶ 17-18]. The ESOP's meager assets were partially distributed to the participants in 2017 and then fully distributed in 2019. ROA.181, 253-54, 598.

**B.** Once RVNB sold all its assets to RLS and SIP III, it became a shell company. ROA.318 [¶ 96]. The Petersons then merged the Company into RVNB Holdings, LLC—an existing entity that they controlled along with two family trusts: the Nicole Peterson 2012 Irrevocable Trust and the Brook Peterson 2012 Irrevocable Trust (collectively, "Peterson Trusts"). ROA.318 [¶¶ 96-97]. Although the Plan had already been terminated, this LLC became the new Plan sponsor. ROA.318 [¶ 96]. The LLC was also, for all intents and purposes, a shell company. ROA.318 [¶ 96]. The LLC did not employ Plaintiffs or any other Plan participant. ROA.318 [¶ 96]. In fact, at all relevant times the LLC had no employees. ROA.318 [¶ 96]. In its Forms 5500 filed with the Department of Labor, the LLC reported that the Plan had no active participants at the end of the 2017 and 2018 Plan years. ROA.318 [¶ 96].

Nevertheless, the members of the LLC purported to amend the Plan on May 18, 2018, and made that amendment retroactive to January 1, 2018. ROA.318 [¶ 98], 171, 178. The amendment added a new "Supplement A" to the Plan, entitled "Claims, Arbitration Procedure and Legal Action" (hereinafter "Arbitration Clause"). ROA.171-78. This Supplement contained a "Mandatory and Binding Arbitration Procedure" purporting to require "any Employee, Participant, or

Beneficiary," to "settle[]" any "Covered Claims" in "binding arbitration." ROA.172-76 [§ A-2].

The Arbitration Clause applied only to claims asserted by an "Employee, Participant, or Beneficiary." ROA.172-76 [§ A-2]. It did not apply, for example, to any claim asserted by the Plan sponsor, administrator, or trustee. ROA.172-76 [§ A-2]. The Arbitration Clause also purported to make Plan participants agree to resolve any Covered Claim in arbitration as a condition precedent to "receiving any contributions to [a] Plan account," or "any benefit under th[e] Plan," even though no further contributions were forthcoming, the LLC had no employees, and Plaintiffs were fully vested in their shares. ROA.172-76 [§ A-2]. "Covered Claims" include "[a]ny claim by a Claimant which arises out of, relates to, or concerns this Plan, . . . including without limitation, any claim for benefits under the Plan . . . ; any claim asserting a breach of, or failure to follow, the Plan . . . ; and any claim asserting a breach of, or failure to follow, any provision of ERISA . . . ." ROA.172 [§ A-2(a)]. Plaintiffs do not dispute that their claims are "Covered Claims."

The Arbitration Clause also barred "any Employee, Participant, or Beneficiary" from bringing any Covered Claim on behalf of a class or in a representative capacity. ROA.173 [§ A-2(b)]. Specifically it provided:

> **(b) No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's

Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any employee, participant or beneficiary other than the Claimant. . . . In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section A-6, then the entire Arbitration Procedure (i.e., all of this Section A-2) shall be rendered null and void in all respects.

ROA.173 [§ A-2(b)].

Plaintiffs did not receive notice of the Arbitration Clause until RVNB produced it during discovery in the related case, *Casey v. Reliance Trust*, 2018 WL 7138386. ROA.788 [¶ 7], 797 [¶ 7].

## II.    Procedural History

Plaintiffs Coleman and Casey, acting on behalf of the Plan, filed this suit on September 27, 2019. ROA.9. They amended their complaint once, on April 3, 2020. ROA.12, 300-33. In that Amended Complaint, Plaintiffs assert a claim against Brozen under ERISA § 406(a)-(b) (29 U.S.C. § 1106(a)-(b)), for causing the ESOP

to engage in the Stock Sale, which was a transaction with parties in interest strictly prohibited by ERISA. ROA.319-20 [¶¶ 99-111]. Plaintiffs also bring claims against the RVNB Board members and officers, SIP III, and the Peterson Trusts for participating in and benefiting from that prohibited transaction. ROA.323-26 [¶¶ 126-46]. In addition, Plaintiffs assert breach of fiduciary duty claims against Brozen and the RVNB Board members and officers alleging that, in permitting and causing the Stock Sale, these Defendants breached the fiduciary duties they owed to the ESOP. ROA.321-23 [¶¶ 112-125]. Plaintiffs seek relief for this breach under ERISA § 409 (29 U.S.C. § 1109) via ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)). ROA.321-23 [¶¶ 112-125]. Plaintiffs also seek injunctive and equitable relief under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)). ROA.326-27 [¶¶ 147-148]. Finally, Plaintiffs seek to certify the ESOP participants as a class. ROA.327-30 [¶¶ 153-59].

Plaintiffs seek declaratory, monetary, and injunctive remedies. ROA.330-32. In particular, Plaintiffs seek declarations finding that Defendants violated ERISA and breached their fiduciary duties to the Plan and its participants. ROA.330. They also seek orders requiring the Plan fiduciaries to "make good to the Plan . . . the losses resulting from their breaches of ERISA and [to] restore any profits they have made through use of assets of the Plan." ROA.331. Plaintiffs further seek rescission of the Stock Sale and "other appropriate equitable relief to the Plan and its participants and beneficiaries, including surcharge, providing an accounting for

10

profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by these Defendants[.]" ROA.331.

Defendants moved to compel arbitration based on the Arbitration Clause in the 2018 Plan Amendment. ROA.588, 595-615. Plaintiffs opposed the motion on several grounds. ROA.749-82. First, Plaintiffs argued that the Arbitration Clause is unenforceable because they never agreed to it and because it fails for lack of consideration. ROA.763-69. Second, Plaintiffs argued the non-severable Arbitration Clause is invalid because it attempts to preclude substantive statutory rights and remedies. ROA.769-80.

The district court denied the motion. Relying on *Harrison v. Envision Management Holding, Inc. Board of Directors*, 59 F.4th 1090 (10th Cir. 2023), *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613 (7th Cir. 2021), and *Henry v. Wilmington Trust NA*, 72 F.4th 499 (3d Cir. 2023), the district court concluded that the Arbitration Clause was invalid under the effective vindication doctrine because it improperly "prevents Plaintiffs from seeking the Plan-wide relief they are statutorily entitled to pursue under [ERISA] §§ 502(a)(2) and 409(a)." ROA.1717; *see also* ROA.1706-17. Because the court found the arbitration clause invalid, the court did not address whether Plaintiffs had consented to it. ROA.1718.

## SUMMARY OF THE ARGUMENT

**I.** The district court correctly denied Defendants' motion to compel under the effective vindication doctrine. An arbitration provision is invalid if it acts as a "'prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (emphasis in original); *see also Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) (a valid arbitration clause "does not alter or abridge substantive rights; it merely changes how those rights will be processed"). The arbitration provision here is a textbook example of a clause that impermissibly restricts remedies and abridges substantive rights. It explicitly forbids Plaintiffs (1) from asserting claims in a representative capacity and (2) from pursuing any Plan-wide remedies.

These provisions are an unabashed attempt to re-write ERISA's substantive remedial scheme. Claims under 29 U.S.C. § 1132(a)(2) can *only* be brought in a representative capacity. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). And ERISA expressly authorizes plan-wide relief, such as the recovery of "any" plan-wide losses and the removal and replacement of plan fiduciaries. 29 U.S.C. §§ 1132(a)(2), (a)(3), 1109. Indeed, plan-wide remedies are the core purpose of claims under § 1132(a)(2). *Russell*, 473 U.S. at 142 (explaining Congress was "primarily concerned . . . with remedies that would protect the entire plan"). The

Arbitration Clause goes far beyond designating an arbitral forum; it impermissibly eliminates these claims and remedies that are imperative to ERISA's remedial purpose. Accordingly, the non-severable clause is invalid under the effective vindication doctrine.

None of Defendants' arguments warrant a different result. Although Plaintiffs seek to certify a class, they don't need to. Instead, Plaintiffs assert their § 1132(a)(2) claims, as required, in a representative capacity on behalf of the Plan. This suit challenges a single transaction, not a conglomeration of similar but related claims. Plaintiffs' claims thus are not a form of "claim joinder"; they are representative claims in which a single agent (the Plaintiffs) acts on behalf of a single principle (the Plan). Yet the Arbitration Clause prohibits all representative claims. As the Supreme Court's recent *Viking River* decision confirms, the FAA does not mandate the "enforcement of waivers of standing to assert claims on behalf of absent principals," 142 S. Ct. at 1912, and "does not require courts to enforce contractual waivers of substantive rights and remedies," *id.* at 1919. Here, the Arbitration Clause's prohibition on representative claims and plan-wide remedies functions as a prospective waiver of "substantive," not simply procedural, "rights and remedies" and is thus invalid under the effective vindication doctrine.

Every circuit court to consider a substantively identical arbitration clause has agreed that it is invalid because it purports to waive plan-wide remedies specifically

permitted by ERISA, such as removal of a plan fiduciary or recovery of plan-wide losses. There is no reason to reach a different outcome here.

**II.** The district court's order may also be affirmed on alternate grounds: Plaintiffs did not agree to arbitrate; the Arbitration Clause fails for lack of consideration; and it is illusory.

It is a fundamental principle of the FAA that arbitration cannot be imposed unilaterally; both parties must consent to arbitrate. *E.g.*, *Lamps Plus*, 139 S. Ct. at 1415. Plaintiffs were not given notice of the arbitration provision until it was produced in December 2018 during discovery in another lawsuit. Plaintiffs could not possibly have agreed to an arbitration clause that they knew nothing about, and that was unilaterally added to the Plan after Plaintiffs had left the company and after Defendants had terminated the Plan.

Because Defendants have no credible basis to argue that *Plaintiffs* agreed to the Arbitration Clause, Defendants instead argue that the Plan consented on Plaintiffs' behalf or that Plaintiffs should be estopped from contesting the Arbitration Clause. Neither argument finds support in Fifth Circuit or Texas case law.

The Arbitration Clause also fails for lack of consideration. The Clause binds employees, Plan participants, and beneficiaries. But it does not bind Defendants. This one-way agreement, added after Plaintiffs had fully performed their obligations and were 100% vested in their stock, is unenforceable under blackletter law, which

requires two-way consideration for a contract to be binding. Finally, the Plan

sponsor's unilateral power to change or terminate the Arbitration Clause at will

renders the Clause illusory and unenforceable.

## ARGUMENT

### I.    Because the non-severable Arbitration Clause purports to eliminate statutory rights and remedies provided by ERISA, it is invalid.

The district court correctly invalidated the Arbitration Clause because it bars

Plan participants from exercising their substantive rights under ERISA to seek plan-

wide remedies. The clause expressly bars any equitable or injunctive relief that binds

the Plan administrator or trustee with respect to anyone other than the individual

Plaintiffs. It also precludes *any* relief, monetary or otherwise, that benefits the ESOP

as a whole. As the Third, Seventh, and Tenth Circuits have recognized, an arbitration

clause that eliminates plan-wide statutory remedies is invalid. And because this

provision is expressly non-severable—it was more important for Defendants to

curtail their exposure than to arbitrate—the entire Arbitration Clause is void.

### A.    The effective vindication doctrine invalidates arbitration clauses that purport to waive statutory rights and remedies.

"The FAA's mandate is to enforce '*arbitration agreements.*'" *Viking River*

*Cruises*, 142 S. Ct. at 1919. An "arbitration agreement" is, at bottom, "a specialized

kind of forum-selection clause" through which the parties can agree to "the situs of

suit" and "the procedure to be used in resolving the dispute." *Id.* While an arbitration

clause can alter the forum and procedures, it cannot "alter or abridge substantive

rights." *Id.* Any arbitration agreement that "alter[s] or abridge[s] substantive rights" is invalid under the effective vindication exception to the FAA. *Id.*

The effective vindication doctrine is entrenched in the Supreme Court's FAA jurisprudence. *Viking River Cruises* both recognized and enforced limits on arbitration clauses that purport to waive substantive rights. 142 S. Ct. at 1922-25. And the Court has repeatedly, for decades, acknowledged the doctrine's validity. *Am. Exp. Co.*, 570 U.S. at 235 (2013) (Scalia, J.); *14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 273-274 (2009) (Thomas, J.); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28 (1991); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 240 (1987); *Mitsubishi Motors,* 473 U.S. at 637 n.19; *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974).

Under this rule, "a provision in an arbitration agreement [that] forbid[s] the assertion of certain statutory rights" is invalid. *Am. Express*, 570 U.S. at 236. Consistent with "public policy" considerations, the doctrine ensures each party can pursue the rights Congress specifically granted to them, even if they agree to resolve the dispute in an arbitral forum. *Id.* The doctrine thereby prevents parties from escaping statutory liability through the guise of an arbitration clause.

Every federal appellate court to address the issue, including this one, has held that arbitration agreements are unenforceable if they eliminate statutory rights or the ability to pursue statutory remedies. *E.g.*, *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478

n.14 (5th Cir. 2003) (arbitration clause that eliminated punitive damages provided for under Title VII was unenforceable);[2] *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238-43 (3d Cir. 2020) (arbitration clause impermissibly forbade RICO claim); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) (impermissible waiver of attorney's fees); *Smith*, 13 F.4th at 618-23; *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (arbitration provision could not eliminate treble damages authorized by antitrust statute); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts, J.) (impermissible waiver of punitive damages); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1178 (9th Cir. 2003) (holding "unenforceable" an arbitration agreement that "'fail[ed] to provide for all the types of relief that would otherwise be available in court'" (citation omitted)); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (impermissible prohibition on damages and equitable relief under Title VII).

Defendants' suggestion that Plaintiffs were required to show "a clearly expressed congressional intention" for ERISA to "displace" the FAA mis-frames the

---

[2] Defendants' oft-repeated representation that this Court has never applied the effective vindication doctrine to invalidate an arbitration agreement (Br. at 5, 20, 22, 30, 45) is wrong; this Court *did* apply the doctrine in *Hadnot* to invalidate the offending terms of an arbitration agreement. The *Hadnot* agreement was severable and thus survived as modified. That outcome, however, is not possible here, because the Arbitration Clause is non-severable. ROA.173. The Supreme Court in *Viking River Cruises* also partially invalidated an arbitration clause; that clause, like the one in *Hadnot*, was severable. 142 S. Ct at 1924-25.

issue. Br. at 28. Plaintiffs do not argue that ERISA precludes arbitration or otherwise "suggest that two statutes"—ERISA and the FAA—"cannot be harmonized." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). The same rule applies here as in any case: an arbitration clause cannot eliminate statutory remedies. This Arbitration Clause is not invalid because of any conflict between ERISA and the FAA, but because Defendants substantially overreached and drafted a non-severable Arbitration Clause that purports to cut out key portions of ERISA's remedial scheme. It is settled law that an arbitration clause may "not alter or abridge substantive rights" in this manner. *Viking River Cruises*, 142 S. Ct. at 1919.

**B.    The Arbitration Clause purports to waive statutory rights and remedies and is therefore invalid under the effective vindication doctrine.**

As Defendants effectively concede, the Arbitration Clause says Plan participants may not assert claims or seek remedies ERISA explicitly authorizes. Specifically, the Arbitration Clause prohibits claims brought "in a representative capacity," meaning participants cannot bring any claim on behalf of the Plan. ROA.173. The Arbitration Clause then singles out ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)) and § 409 (29 U.S.C. § 1109) and limits the relief available to the participant thereunder to (i) "the alleged losses to the Claimant's *individual* Plan account," (ii) "a pro-rated portion of any profits allegedly made by a fiduciary," or (iii) other appropriate "remedial or equitable relief," but only if it does not benefit

anyone other than the individual claimant and does not bind "the Plan Administrator or Trustee with respect to" anyone other than the individual claimant. ROA.173. By (1) forbidding participants from bringing claims in a representative capacity on behalf of the Plan, and (2) limiting the remedies available to participants, the Arbitration Clause prevents Plaintiffs from "effectively vindicating" their statutory rights under ERISA.

**1.** ERISA is a unique federal statute, at the center of which is the employee benefit "plan." The "plan" is a distinct legal entity with the power to sue or be sued. 29 U.S.C. § 1132(d). ERISA is crafted around protection of the plan, its assets, and its participants. *Id.* § 1103(a), 1104(a), 1106. As this Court has recognized, ERISA's carefully crafted remedial scheme specifically "authorizes any plan participant or beneficiary to sue" a plan fiduciary "on behalf of the plan" for breach of fiduciary duties and to seek the "plan-wide relief" provided for in § 1109. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 307 (5th Cir. 2007) (citing 29 U.S.C. § 1132(a)(2)). Section 1109(a), in turn, makes clear that the relief provided for therein goes to the plan. It provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses *to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan* by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added).

The Supreme Court and this Court have time and again held that § 1132(a)(2) claims are "brought in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9; *Varity Corp. v. Howe*, 516 U.S. 489, 516 (1996) (noting ERISA's fiduciary duties "must" be enforced "in a representative capacity") (Thomas, J., dissenting); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 376 (5th Cir. 2008) ("Based on *Russell*, many courts have held that claims for breach of fiduciary duty under § 502(a)(2) [(§ 1132(a)(2))] must be brought in a representative capacity on behalf of the plan as a whole, with the goal of protecting the financial integrity of the plan."); *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 n.7 (5th Cir. 2021) ("A § 1132(a)(2) plaintiff acts 'in a representative capacity on behalf of the plan as a whole,' because § 1109 is designed to 'protect the entire plan[.]'" (quoting *Pilger v. Sweeney*, 725 F.3d 922, 926 (8th Cir. 2013)); *Vonkeisler v. Unigate Restaurants, Inc.*, 20 F.3d 468, at *1 (5th Cir. 1994) (per curiam) (Section 1109 "does not permit an individual beneficiary to recover for breach of fiduciary duties. Actions for breach of fiduciary duty may be brought only in a representative capacity on behalf of the plan as a whole.") (citation omitted).

The ability to bring a breach of fiduciary duty claim at all is, indisputably, a substantive right granted by ERISA. Because the case law makes clear that such claims can only be brought "in a representative capacity on behalf of the plan," an

arbitration clause that eliminates the ability to bring a representative claim effectively eliminates the entire substantive right to bring a fiduciary breach claim under § 1132(a)(2). *See Wegner v. Tetra Pak, Inc.*, 643 F. Supp. 3d 659, 673-74 (E.D. Tex. 2022) (dismissing ERISA fiduciary breach claim because plaintiff "may not sue in her individual capacity for personal damages under Section 502(a)(2), as the only remedy under Section 409 is to the Plan"); *Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 557 (N.D. Tex. 2001) (finding plaintiff "failed to state a claim for breach of fiduciary duty under § 1132(a)(2)" where she sought only individual, not plan, losses). As a result, this is a textbook case for applying the effective vindication doctrine. *Mitsubishi Motors*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute[.]"); *cf. Harrison*, 59 F.4th at 1106 (suggesting, but not deciding, that arbitration clause's "prohibition on a claimant proceeding in a representative capacity is inconsistent with, and prevents a claimant from effectively vindicating the remedies afforded by, § 1132(a)(2)").

**2.** The Arbitration Clause further prevents Plaintiffs from "effectively vindicating" their statutory rights provided by ERISA by limiting the remedies available to participants.

**a.** First, the Arbitration Clause prevents Plaintiffs from seeking many equitable remedies available under ERISA. For example, it precludes an arbitrator

from ordering rescission of the Stock Sale, imposing a constructive trust or equitable lien on funds wrongfully held by Defendants, or ordering plan-wide equitable surcharge—all of which are equitable remedies available under ERISA, and all of which Plaintiffs seek here. *See* ROA.330-31 (seeking, among other remedies, the imposition of a constructive trust, rescission, and surcharge); *CIGNA Corp. v. Amara*, 563 U.S. 421, 440-442 (2011) (approving plan reformation, surcharge, and other equitable relief as ERISA remedies); *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) ("[T]he imposition of a constructive trust on a fiduciary's ill-gotten profits in favor of all plan participants and beneficiaries is an important, appropriate, and available form of relief under ERISA §409(a), particularly when it is the only means of denying a fiduciary ill-gotten profits that flow from the breach of his duty of loyalty to the entire ERISA plan."); *Perez v. Bruister*, 823 F.3d 250, 266, 275-76 (5th Cir. 2016) (discussing plan-wide equitable remedies including rescission and "fiduciary bar").

Any relief of this kind would necessarily bind the plan administrator beyond an individual claimant and provide "relief" that extends to both the claimant and other plan participants. Defendants do not dispute this reading or offer any contrary interpretation. These limitations are fatal because they "foreclose a number of remedies that were specifically authorized by Congress in . . . ERISA." *Harrison*,

59 F.4th at 1107. For that reason, they "prevent [Plaintiffs] from vindicating in the required arbitral forum the statutory causes of action listed in [their] complaint." *Id.*

The Arbitration Clause likewise precludes removal of a fiduciary, even though § 1109(a) expressly allows a plan participant to seek such relief. 29 U.S.C. § 1109(a) (providing that breaching fiduciary "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary"). Removal of the fiduciary is not permitted under the Arbitration Clause because that relief "would go beyond just [the claimant] and extend to the entire plan." *Smith*, 13 F.4th at 621. Thus, "what the statute permits, the plan precludes." *Id.* As the Seventh Circuit in *Smith* recognized, such a clause "acts as a 'prospective waiver of a party's right to pursue statutory remedies,' so the 'effective vindication' exception applies." *Id.* (citations omitted).[3]

Defendants wrongly suggest that the clauses here and in *Smith* are different and that fiduciary removal is available here. Br. 44 & n.5. But their argument is an after-the-fact effort to escape the plain meaning of the non-severable clause they drafted. This clause includes the same language as in *Smith*—which Defendants conspicuously elide from their quotations of the clause (*e.g.*, Br. at 16)—prohibiting

---

[3] As in *Henry*, the "complaint does not explicitly request [fiduciary] removal," but does ask the court to "order appropriate equitable relief," and "ERISA explicitly identifies 'removal of the fiduciary' as a form of inherently plan-wide relief that 'a court may deem appropriate.'" 72 F.4th at 507 (cleaned up).

*any* relief "binding on the Plan Administrator or Trustee" beyond the individual plaintiff. ROA.173. "[I]t is impossible for a court or arbitrator to order a plan's fiduciary removed *only* for the litigant, while leaving the plan's fiduciary in place for all other participants." *Henry*, 72 F.4th at 507. The clause here unquestionably bars fiduciary removal. Defendants cannot re-write it through attorney argument.[4]

**b.** Second, by limiting arbitration to an individual participant's "pro-rated" share of any monetary recovery, ROA.173, the Arbitration Clause also improperly forecloses plan-wide monetary relief. Again, ERISA expressly permits an individual plan participant to seek recovery of "*any* losses *to the plan*" and disgorgement of "*any* profits . . . made through use of assets *of the plan*." 29 U.S.C. § 1109(a) (emphasis added). As this statutory language reflects, this recovery "inures to the benefit of the plan *as a whole*." *Russell*, 473 U.S. at 140 (emphasis added); *see also id.* at 142 n.9; *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 261 (2008) ("On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach.") (Thomas, J., concurring). Consistent with the plain language of § 1109, courts routinely allow individual plan participants—like Plaintiffs—to sue to restore *all* plan losses and disgorge *all* profits arising from the fiduciary

---

[4] Defendants' effort to re-write the clause to permit what they call "non-monetary" relief further confirms that they do not understand ERISA or § 1132(a)(2). The statute does not distinguish between monetary and non-monetary equitable relief and some remedies, like rescission, contain both aspects. Defendants are trying to re-write not just the remedial scheme but also specific equitable remedies.

breach. *See infra* at 30-31 (citing cases allowing individuals to recover all plan losses or proceed alone on behalf of plan).

Consistent with § 1109, Plaintiffs seek monetary relief that would inure to the Plan as a whole. They ask the fiduciary Defendants to "make good to the Plan" the losses resulting from their breaches of fiduciary duties. ROA.331. They also seek disgorgement of any profits these Defendants have made using Plan assets. ROA.331. And Plaintiffs ask the non-fiduciary Defendants to "restore to the Plan" all money they "have received in connection with their violations of ERISA." ROA.331. What Plaintiffs seek, and what they are entitled to under ERISA, cannot be squared with the Arbitration Clause.

Moreover, given the nature of Defendants' misconduct, Plaintiffs' individual shares of the ESOP's losses and Defendants' ill-gotten gains cannot even be calculated without first determining the Plan's total losses and the Defendants' total profits. Plaintiffs allege Defendants stole the Plan's opportunity to sell its assets for a significant profit by forcing the Plan to redeem its RVNB stock, its only asset, for significantly below fair market value. *See supra* at 5-6. Because the Plan as a whole was harmed by this forced sale, the arbitrator would have to calculate all of the Plan's losses and all the profits Defendants have made off of the Plan's assets. If the Arbitration Clause's artificial, "individualized" remedy were enforced, the arbitrator

would then use those Plan-wide calculations to determine the tiny fractional shares to award to each Plaintiff's individual account.

That result is contrary to § 1109(a) and § 1132(a)(2), because Defendants would keep all of their ill-gotten gains except for the tiny fraction awarded to any individual Plaintiff. That fractional award is not a remedy for a breach of duty *to the plan.* And allowing breaching fiduciaries to retain most of their ill-gotten gains cannot be squared with § 1109(a), which mandates that a fiduciary who has been found to have breached their fiduciary duties "*shall* be personally liable to make good to [the] plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a) (emphasis added). It also mandates that the fiduciary "*shall* . . . restore to [the] plan any profits" the fiduciary made "through use of" plan assets. *Id.* (emphasis added). Yet under the Arbitration Clause, breaching fiduciaries need not make the Plan whole or return all ill-gotten profits. By limiting disgorgement to the individual plaintiff's pro-rated share, the Arbitration Clause impermissibly curtails this important statutory remedy. *See Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230, 245 (3d Cir. 2016) ("The purpose of disgorgement of profits is deterrence, which is undermined if the fiduciary is able to retain proceeds from his own wrongdoing.").

The Arbitration Clause also violates 29 U.S.C. § 1110(a) (ERISA § 410), which forbids "any provision in an agreement . . . which purports to relieve a

fiduciary from . . . liability for any . . . obligation . . . under" 29 U.S.C. § 1109. As this Court has recognized, § 1110 prohibits enforcement of any contractual provision—even if contained in an agreement to arbitrate—that attempts to allow a fiduciary to escape its statutory obligations. *Kramer v. Smith Barney*, 80 F.3d 1080, 1085 (5th Cir. 1996) ("To the extent the [arbitration agreement] renders ineligible for arbitration ERISA claims more than six years old which could otherwise be enforced on proof of fraud or concealment, it 'relieve[s] a fiduciary from . . . liability.'").

Under that rule, the Arbitration Clause here is void. Whereas ERISA (in § 1109) obligates breaching fiduciaries to return *all* losses and profits to the plan, the Arbitration Clause mandates nearly the opposite: participants may seek only a fraction of the losses and profits that rightfully belong to the plan; breaching fiduciaries are allowed to keep the rest. That is a paradigmatic limitation on liability that 29 U.S.C. § 1110 prohibits.

In the same vein, the Arbitration Clause acts as a prospective waiver of plan participants' right to be treated the same as other plan participants. *See, e.g.*, 29 C.F.R. § 2560.503-1 (requiring "consistent[]" application of plan provisions to "similarly situated" claimants). If an arbitrator cannot award plan-wide relief, and each participant must arbitrate individually, then some may receive financial compensation while others receive nothing at all, and the amount awarded could

vary by arbitrator. A single plan transaction could be "rescinded" for some plan members but not others. That web of conflicting outcomes bears no resemblance to ERISA's intent to assure "uniform" plan administration. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 321 (2016).

Every circuit to consider whether the effective vindication doctrine invalidates an arbitration clause that prevents plan participants from obtaining plan-wide relief has answered that question in the affirmative. *See Harrison*, 59 F.4th at 1109 (arbitration clause's "prohibition of any form of relief that would benefit anyone other than Harrison . . . directly conflicts with the statutory remedies available under 29 U.S.C. §§ 1109 and 1132(a)(2), (a)(3)" and is thus invalid); *Henry*, 72 F.4th 499; *Smith*, 13 F.4th at 621-22; *Burnett*, 2023 WL 6374192 (summary affirmance). The district court properly followed this precedent and held the Arbitration Clause invalid because its prohibition on plan-wide remedies prevents Plan participants from effectively vindicating their statutory rights under ERISA.

### C.    The Arbitration Clause bars substantive, not procedural, rights.

Defendants try to salvage the Arbitration Clause by casting it as merely a class-action waiver, which they argue is the waiver of a procedural rather than a substantive right. Br. at 30-31. The defendants in every case addressing this arbitration clause have tried this gambit. But as every circuit court has recognized, the problem is *not* the class-action waiver; it is that the Arbitration Clause prevents

Plan participants (even those proceeding on a single-plaintiff, representative basis) from exercising their rights to bring a claim on behalf of the Plan and to obtain Plan-wide remedies. *E.g.*, *Harrison*, 59 F.4th at 1109 ("It is not [the] prohibition on class actions that is problematic. Rather, it is [the] prohibition of any form of relief that would benefit anyone other than Harrison that directly conflicts with the statutory remedies available under [ERISA]."). As explained above, these are substantive rights embedded in the very fabric of ERISA; they cannot be prospectively waived. None of Defendants' arguments warrant a different conclusion.

**1.** Although Plaintiffs seek to certify a class of Plan participants, Plaintiffs do not argue that they have a substantive right to bring a class action or that certifying a class is even necessary for their claims. Rather, Plaintiffs have a substantive right to (1) bring an ERISA fiduciary breach claim in a representative capacity on behalf of the Plan and (2) seek Plan-wide remedies. And Plaintiffs may proceed with their claims and obtain Plan-wide remedies without moving for class certification. Plaintiffs' § 1132(a)(2) claims, therefore, are not a form of "claim joinder," as Defendants argue.

Indeed, there are no other claims to join in an ESOP case like this one. Unlike a "claim joinder" lawsuit, this suit involves a single dispute "arising out of a particular transaction or common nucleus of facts." *Viking River*, 142 S. Ct. at 1924 (cleaned up). The "loss to the plan" here is the amount the ESOP lost when it was

forced to sell its RVNB stock for below market value. Thus, there is one transaction at issue, not "a massive number of [individual] claims [combined] in a single-package suit." *Id.* Further, "the losses suffered by the participants in the ESOP are coterminous with those of the plan." *Perez*, 823 F.3d at 258 ("the 'loss [ ] to the plan' [wa]s the amount that the ESOP overpaid for BAI stock"). Thus, any individual participant's harm cannot be determined without first determining the harm to the Plan as a whole. *Id.*; *see also supra* at 25-26.

The cases in which courts have awarded plan-wide relief to individual plaintiffs confirm the critical point that 29 U.S.C. § 1109 is not a mere procedural mechanism for combining multiple individual claims into one action. Rather, a single plaintiff can obtain full plan-wide relief proceeding alone because the plaintiff is acting on behalf of the plan itself. *See Browe v. CTC Corp.*, 15 F.4th 175, 191 & n.6, 199, 206-07 (2d Cir. 2021) (affirming, in relevant part, award to plaintiffs proceeding in representative capacity on behalf of plan without certifying class; remanding with direction to "district court to recalculate [damages] in order to capture [all plan] losses through the date of judgment" and to craft appropriate scheme to distribute damages to plan participants); *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 781-82, 784, 788 (4th Cir. 2019), *as amended* (Mar. 22, 2019) (affirming $30 million damages award to plaintiff proceeding on behalf of ESOP under 29 U.S.C. § 1132(a)(2) after denying motion for class certification); *Perez*,

823 F.3d at 258 (allowing plaintiff to proceed, with Secretary of Labor, on § 1132(a)(2) claim without certifying class); *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 & n.7 (5th Cir. 2021) (district court "permitted plaintiffs to proceed as representatives of the Plan" under § 1132 after denying motion for class certification); *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 679-80 (6th Cir. 2008) (rejecting district court decision that would have required plaintiffs to obtain class certification to seek plan losses).

In contrast, class or collective actions are procedural mechanisms to streamline large numbers of similar claims held by different individuals. *See, e.g.*, *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021) (explaining that class actions and collective actions "both streamline aggregate litigation by permitting large numbers of individuals to litigate similar claims"). Here, Plaintiffs do not seek to combine and streamline a conglomeration of individual suits based on different transactions and different facts. Rather, Plaintiffs challenge one transaction and seek to remedy a single, unitary injury suffered by the Plan.

For this same reason, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), is inapposite. In *Gilmer*, the ADEA gave plaintiffs the ability to aggregate numerous individual claims by different individuals into a collective action. This procedural option to aggregate, the Court held, could be waived in an arbitration clause. *Id.* at 27-28. Here, by contrast, Plaintiffs are suing on behalf of the Plan to

31

remedy the Plan's injury. And waiving the right to sue on behalf of the Plan means *eliminating the § 1132(a)(2) cause of action altogether. See supra* at 20-21. Unlike here, moreover, the *Gilmer* arbitration clause did "not restrict the types of relief an arbitrator may award." 500 U.S. at 32. As the Court itself recognized in *Gilmer*, an arbitration clause cannot eliminate these kinds of substantive rights. *Id.* at 26.

**2.** *Thole* does not require a different result. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020). That *Thole* requires participants to establish individual standing to bring a § 1132(a)(2) claim does not mean that such claims are not brought in a representative capacity on behalf of the plan. Indeed, Defendants cite no case law interpreting *Thole* to mean as much. They instead stretch logic to bridge this obvious gap.[5] In doing so, Defendants first give no credence to what is explained at length above, that the language Congress used in § 1109(a) and the case law interpreting that language make clear that the available remedies all flow to the plan. Second, Defendants ignore that in other areas of the law individual Article III standing is required even though the claim is a representative claim.

---

[5] *Thole* is also factually distinguishable. As the district court explained, "in *Thole*, the plaintiffs were participants in a defined *benefit* plan—not a defined *contribution* plan." ROA.1713 (citing *Thole*, 140 S. Ct. at 1618). Although the defendant in *Thole* had mismanaged plan assets, the individual plaintiffs had continued to receive their contractually defined benefits. In contrast, here, each Plaintiff's individual account suffered a concrete loss when Defendants caused the Stock Sale. Thus, for Plaintiffs to have had representative standing, they had to show they suffered an injury in fact. ROA.1714. Plaintiffs here have done just that.

As the Court explained in *Viking River Cruises*, "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of substantive law. Familiar examples include shareholder-derivative suits, wrongful-death actions, trustee actions, and suits on behalf of infants or incompetent persons." 142 S. Ct. at 1922. For some of these representative actions, like a shareholder derivative suit, personal Article III standing is required for the "single agent" asserting the claim. *See, e.g.*, *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989) (assessing whether Article III standing was satisfied in shareholder derivative suit); *Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) (in shareholder derivative suit, plaintiffs must satisfy Article III and prudential standing requirements). For others, the cause of action has "been legally or contractually appointed" to an agent without standing. *Thole*, 140 S. Ct. at 1620. Whether the plaintiff must establish personal Article III standing or not, the claim is still representative—and part of the non-waivable fabric of substantive law.

In this regard, shareholder derivative actions are the closest analog. "When an officer, director, or controlling shareholder breaches a fiduciary duty to the corporation, the shareholder has 'no standing to bring [a] civil action at law against faithless directors and managers,' because the corporation and not the shareholder suffers the injury." *Lewis*, 699 F.2d at 237-38. Nevertheless, the law "allow[s] [a shareholder] to step into the corporation's shoes and to seek in its right the restitution

33

he could not demand on his own." *Id* at 238. But the shareholder is not relieved of his obligation to satisfy Article III standing, and must "satisfy the [prudential] standing requirements of Rule 23.1." *Id.* at 238. Just as a plaintiff must be a plan participant or beneficiary to bring suit under § 1132(a)(2), a plaintiff must be a stockholder to sue under Rule 23.1. *Id.* at 238.

Here, it is undisputed that Plaintiffs have standing to pursue their claims. But that does not affect whether Plaintiffs were acting as "a single agent litigat[ing] on behalf of a single principal"—a non-waivable "part of the basic architecture of much of substantive law." *Viking River Cruises*, 142 S. Ct. at 1922.

**3.** *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), also does not require a different result. In *Coan,* the Second Circuit neither addressed the enforceability of an arbitration clause nor declared that all § 1132(a)(2) claims were "a form of procedural 'claim joinder,'" as Defendants argue.[6] Br. at 40. Rather, *Coan* simply held that a plan participant suing under § 1132(a)(2) must "take adequate steps under

---

[6] Defendants' relentless focus on whether Plaintiffs' § 1132(a)(2) claims are purely "representative" or a form of "claim joinder" ignores Plaintiffs' other key argument: the Arbitration Clause is invalid under the effective vindication doctrine because it prohibits plan-wide remedies. Whether Plaintiffs' claims are representative or not, the non-severable Arbitration Clause is invalid because it acts "'as a prospective waiver of a party's *right to pursue* statutory *remedies*.'" *Am. Express*, 570 U.S. at 236 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19) (second emphasis added); *see also Viking River Cruises*, 142 S. Ct. at 1919 ("[T]he FAA does not require courts to enforce contractual waivers of substantive rights and remedies.").

the circumstances properly to act in a 'representative capacity on behalf of the plan.'" 457 F.3d at 261 (quoting *Russell*, 473 U.S. at 142 n.9). Again, this is not unlike the "shareholder-derivative suits" that the Supreme Court described as "[n]on-class representative actions" in *Viking River Cruises.* 142 S. Ct. at 1922. Those cases need not proceed on a class basis as long as the plaintiff will "fairly and adequately represent the interests" of similarly situated shareholders or members. Fed. R. Civ. P. 23.1.

Similarly, in *Coan*, although the Second Circuit suggested that representational adequacy *could* be established by proceeding under Rule 23, it did not transform § 1132(a)(2) cases into mandatory class actions.[7] To the contrary, the *Coan* court recognized that Congress "deliberately declined to adopt any general rule as to whether class actions are mandatory." 457 F.3d at 260. The court thus held that "plan participants need not always comply with Rule 23." *Id.* at 261. Instead, "the requirement is only that the plaintiff take adequate steps under the

---

[7] Requiring class procedures would have plainly contradicted ERISA, which contains no such requirement. *See, e.g.*, *Perez v. Bruister*, 54 F. Supp. 3d 629, 650 (S.D. Miss. 2014), *aff'd as modified*, 823 F.3d 250 (5th Cir. 2016) (finding no textual basis for *Coan* holding and explaining ERISA's only requirements to bring a § 1132(a)(2) claim are that the plaintiff is "a Plan participant, and he is seeking to recover for the Plan as a whole" (citation omitted)).

circumstances properly to act in a 'representative capacity on behalf of the plan.'"

*Id.* (quoting *Russell*, 473 U.S. at 142 n. 9).[8]

The Fifth Circuit precedent Defendants rely on reaches a similar conclusion: "ERISA's civil enforcement rules allow a single plaintiff to sue for plan-wide relief." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 325 (5th Cir. 2007) (Reavley, J., dissenting). Nevertheless, "much of today's ERISA litigation is maintained on a class action basis" because of practical and other concerns. *Id.* Although the *Langbecker* court vacated the district court's decision certifying a class under Rule 23(b)(2) because the plaintiffs failed to satisfy all of Rule 23's requirements, it did not conclude—as Defendants seem to argue—that class certification was required for plaintiffs to bring their claims. *Id.* at 318. The other cases Defendants cite (at 40-41) are equally inapposite. Simply put, the denial of a motion for class certification for failing to meet Rule 23 requirements, or the requirement that ERISA plaintiffs

---

[8] Moreover, after *Coan*, the Second Circuit rejected an employer's argument that an arbitration clause in an individual employment agreement covered claims under § 1132(a)(2). In so doing, the court noted that the employer's interpretation of the clause foreclosed proceeding in a representative capacity and thus "appear[ed] to make it impossible to bring an ERISA fiduciary action that satisfies both the Agreement and the *Coan* representative adequacy requirement." *See Cooper v. Ruane Cuniff & Goldfarb, Inc.*, 990 F.3d 173, 184 (2d Cir. 2021). Barring the plaintiff from proceeding in any kind of representative capacity on behalf of the plan "cast [the clause's] enforceability into doubt." *Id.* at 185 (cleaned up). Thus, *Coan* and subsequent Second Circuit cases support Plaintiffs' position.

take steps to notify or protect other plan participants does not transform § 1132(a)(2) claims into a form of "claim joinder."

**4.** *LaRue* also does not require a different result. 552 U.S. at 250-51. Defendants suggest that *LaRue* limited the substantive rights of a participant in a defined contribution plan to sue a plan fiduciary. After *LaRue*, they argue, such a participant may assert an "ERISA § 502(a)(2) claim on behalf of her individual plan account only." Br. at 36. They argue that "[w]hether that participant can sue on behalf of other allegedly harmed accounts," "by seeking to have a class action certified," "is a separate procedural question." *Id.*

*LaRue* in no way limits participants' substantive rights. *See Cedeno*, 2021 WL 5087898, at *3 ("The defendants . . . argue that *LaRue* stands for the proposition that an individual participant in a defined contribution plan can seek relief only for that individual's personal losses, to that person's individual account. That is an incorrect reading of *LaRue*."). *LaRue* involved allegations that plan fiduciaries failed to obey the plaintiff's directions about how to invest his account. 552 U.S. at 250-51. Even though that fiduciary breach affected only the plaintiff's account, the Supreme Court held that the plaintiff could recover under § 1109. The Court explained that "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § [1109]." *LaRue*, 552 U.S. at 256.

37

Either way—whether the loss impacts the entire plan or only one plan account—the loss is an injury *to the plan* and is recoverable under § 1109 as a *loss to the plan*. *Id.* After all, the assets in an individual plan account are plan assets, albeit assets in which the individual participant has a legally cognizable interest. *Id.* ("[A]lthough [§ 1132(a)(2)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.").

Thus, as subsequent cases have explained, the Court's holding in *LaRue* "broadens, rather than limits, the relief available under" ERISA. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009); *see LaRue*, 552 U.S. at 261 (Thomas, J., concurring) (Sections 1109(a) and 1132(a)(2) "permit recovery of *all* plan losses caused by a fiduciary breach."); Br. of Sec'y of Labor, *Cedeno*, No. 21-2891, ECF 100 at 10 (2d Cir. June 10, 2022) (*LaRue* "simply clarified that a claim under section 502(a)(2) does not lose its plan-based character merely because the fiduciary breach diminishes only some (but not all) participant accounts, as was the case in *LaRue*. In that way, *LaRue* broadens, rather than limits, the relief available under § [1132(a)(2)].") (citation omitted).

**5.** Finally, the case law Defendants cite (Br. at 31, 43-46) to argue that some courts have required the individual arbitration of § 1132(a)(2) claims does not require a different result. This case law is distinguishable, non-binding, and

unpersuasive. First, Defendants' reliance on the Ninth Circuit's unpublished opinion in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) (unpublished) ("*Dorman II*") is misplaced. The arbitration clause in that case required individualized arbitration, but nothing in *Dorman II* suggests that the clause prohibited claims asserted in a representative capacity or barred remedies available under ERISA. The unpublished disposition[9] does not discuss or approve an arbitration clause like the one at issue here that expressly forecloses statutory remedies. As the Seventh Circuit explained in *Smith*, there is "no conflict with *Dorman II*" because "[t]he arbitration provision in that case . . . lacked the problematic language present here." 14 F.4th at 623.

    *Robertson v. Argent Trust Co.*, 2022 WL 2967710 (D. Ariz. July 27, 2022), an unpublished district court decision, is distinguishable for similar reasons. That arbitration clause said "nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary even if such injunctive relief has an incidental impact on other Employees, Participants, or Beneficiaries." *Id.* at *2. No such caveat is included in the arbitration clause here.

---

[9] Notably, the Ninth Circuit made its opinion in *Dorman II* non-precedential, severing this unpublished memorandum decision from its published opinion in the same case on the same day. *See Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) ("*Dorman I*"). *Dorman I* simply stands for the proposition that ERISA claims, like other claims, are generally arbitrable.

Similarly, in *Holmes v. Baptist Health S. Fla., Inc.*, 2022 WL 180638, at *3 (S.D. Fla. Jan. 20, 2022), another unpublished district court decision, the court found that the clause did not bar "the ability to seek removal and appointment of the Plan's fiduciaries." Although distinguishable on that basis alone, *Holmes* also missed the mark in several respects. It rejected the Seventh Circuit's reasoning in *Smith* with little explanation. *See* 2022 WL 180638, at *3. It also wrongly lumped "representative" and "class actions" together as a single concept. *Id.* While the court acknowledged that § 1132(a)(2) claims "must be brought in a representative capacity," *id.* at *3-4, it failed to consider that barring representative claims functioned as a waiver of § 1132(a)(2) claims altogether. It then concluded that the waiver of plan-wide monetary relief was permissible because generally parties can waive "the right to bring a class action in arbitration." *Id.* That cursory reasoning misunderstands *LaRue* and ignores both *Russell* (which the district court did not cite on this point) and § 1109's text.[10] Section 1109's plan-wide remedies are different in nature than a procedural class-action mechanism.[11]

---

[10] *Holmes* committed several other errors. The court thought that the Eleventh Circuit had never invoked the "effective vindication" doctrine (2022 WL 180638, at *2), but a published Eleventh Circuit decision did exactly that. *See Paladino*, 134 F.3d at 1062. The district court also misunderstood the arbitration clause itself.

[11] Finally, Defendants cite *Ducharme v. DST Systems, Inc.*, No. 4:17-cv-22-BCW, 2017 WL 7795123 (W.D. Mo. June 23, 2017), another unpublished, out-of-circuit decision. *Ducharme* did not consider any of the arguments raised here, and it is not clear whether the arbitration clause at issue barred plan-wide remedies.

**II.    The Arbitration Clause is also invalid and unenforceable because it fails several basic precepts of contract formation.**

The Arbitration Clause's elimination of statutory remedies is enough for this Court to affirm. But affirmance is also warranted because the clause fails multiple blackletter requirements of contract formation.

**A.    Plaintiffs did not consent to arbitrate.**

"[T]he first principle that underscores all . . . arbitration decisions" is that "[a]rbitration is strictly 'a matter of consent.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (quoting *Volt Inform. Scis., Inc. v. Bd of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)). Thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted). This foundational principle means Defendants cannot force Plaintiffs to arbitrate when they did not agree to arbitrate.

Supreme Court precedent is unequivocal on this point: "[T]he FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citation omitted). To the extent that state law also informs questions of contract formation under the FAA, *see, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), Texas law applies here and is equally

clear.[12] Like all other states, Texas requires "mutual assent" to the terms of a contract for the contract "to be enforceable." *GSC Wholesale, LLC v. Young*, 654 S.W.3d 558, 563 (Tex. App. 2022) (citation omitted). A party need not sign a contract to assent to it, but must "manifest its assent . . . by its acts, conduct, or acquiescence in the terms of the agreement." *Id.* A party cannot assent to an arbitration agreement if they receive no notice of it. *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006).

Defendants do not contend that Plaintiffs received notice of the Arbitration Clause or personally consented to it. Instead, Defendants argue that either (1) the Plan consented to the Arbitration Clause or (2) Plaintiffs should be estopped from invalidating the Arbitration Clause. Neither theory is persuasive.

### 1.    The Plan cannot assent on Plaintiffs' behalf.

Defendants argue Plaintiffs' consent to the Arbitration Clause was not required because the Plan assented on their behalf. ROA.603-04. This argument fails on multiple fronts.

First, this theory is contrary to both the FAA and Texas contract law, which both require each party to consent before a contract is binding. Under Texas law, the Plan document is a unilateral contract. *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (noting "'unilateral contract analysis is applicable to [an] employer's promise to pay a . . . pension'" (citation omitted)). "[T]he plan constitutes

---

[12] Defendants appear to agree that Texas law governs. ROA.606 (arguing Texas law).

an offer that the employee, by participating in the plan, . . . accepts by performance." *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995). Thus, normally, plan participants consent to the terms of a plan document by choosing to participate in the plan after receiving notice of its terms. Plans themselves do not continually provide the necessary assent on behalf of all plan participants each time a plan is unilaterally amended, as Defendants argue. The plan participants do so through their own actions. Defendants cite no Texas case law to the contrary.

Here, Defendants cannot plausibly argue that Plaintiffs consented by continuing to participate in the Plan after the 2018 Amendment. When the Arbitration Clause was adopted, the Plan had been terminated, and Plaintiffs were no longer employed by RVNB, were no longer active Plan participants, and were unable to take any Plan distributions, ROA.242 [¶ 4(a)]. Plaintiffs took no steps that could possibly demonstrate assent through their "acts, conduct, or acquiescence." *GSC Wholesale*, 654 S.W.3d at 563.

Second, Defendants' argument rests on the questionable reasoning in *Dorman II*. This unpublished Ninth Circuit summary disposition stated in cursory fashion that participant consent is irrelevant because a claim under § 1132(a)(2) "belong[s] to a plan—not an individual." 780 F. App'x at 513. The court did not elaborate, nor attempt to square its holding with the myriad published decisions requiring participant consent to arbitrate. In particular, the court did not address *Comer v.*

*Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006). This published Ninth Circuit decision explains that although the participant sues on behalf of the plan, she maintains a personal stake in an § 1132(a)(2) claim—and thus she cannot be forced to arbitrate that claim unless she personally agreed to do so. *Id.* (explaining "claimant *also* sues in a non-derivative capacity" and that "the cause of action belong[s] to the individual plaintiff"). Following *Comer*, a plan cannot consent to arbitrate a § 1132(a)(2) claim on a plan participant's behalf in light of the participant's personal interest in the claim.

Even if *Dorman II* were correct that § 1132(a)(2) claims belong to the plan and thus plan consent suffices, that does not end the inquiry. Plaintiffs assert more than just § 1132(a)(2) claims. ROA.319-20, 323-27. Even under *Dorman II* the Plan cannot agree to arbitrate those additional claims on Plaintiffs' behalf because those claims undisputedly do not belong to the Plan.

Finally, substituting "plan" consent for participant consent does not suffice to protect the interests of either the plan or participants. ERISA fiduciaries—who typically control plan provisions—"may have financial interests adverse to beneficiaries." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Although a "fiduciary" may sue under §§ 1132(a)(2) or (a)(3), a plan will often be unable to protect itself through a fiduciary suit because—as here—the culpable party *is* the fiduciary or an insider who controls the fiduciary. In these circumstances, to allow a

44

plan "fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty would, in a sense, be allowing the fox to guard the henhouse.'" *Smith v. Greatbanc Tr. Co.*, No. 20-C-2350, 2020 WL 4926560, at *3 (N.D. Ill. Aug. 21, 2020), *aff'd*, 13 F.4th 613 (citation omitted). Plans thus cannot unilaterally "bind individuals like Plaintiff, who have ceased all participation in the plan and whose cause of action accrued prior to the modification." *Brown v. Wilmington Tr., N.A.*, No. 3:17-cv-250, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018).

### 2. Direct benefits estoppel does not apply here.

In the district court, Defendants also invoked the doctrine of direct benefits estoppel to try to save their Arbitration Clause. ROA.606. But that doctrine has no relevance here.

"Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (citation omitted). It is a potential theory for holding a third-party bound by the contracting parties' agreement to arbitrate. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355-56 (5th Cir. 2003) (explaining that, where "there is some written agreement to arbitrate, a third party may be bound to submit to arbitration" in certain circumstances, including under doctrine of equitable estoppel). Plaintiffs are "not

the type of non-signatory contemplated" by the doctrine, which "typically applies to third parties who benefit from an agreement made between two primary parties." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). Here, there is simply no agreement to arbitrate between Defendants and *anyone*. Defendants cannot use estoppel to justify their unilateral, post-termination addition of an arbitration clause to the Plan.

Defendants' theory fails for a second reason: direct benefits estoppel does not apply "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, . . . even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence." *Ali v. Smith*, 554 S.W.3d 755, 760 (Tex. App. 2018) (quoting *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018)); *see also Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 (5th Cir. 2016) (same). Instead, direct benefits estoppel applies when liability can only "be determined by reference to" the contract—like when the claimant asserts a breach of contract claim. *Jody James*, 547 S.W.3d at 638 (direct benefits estoppel did not apply to fiduciary breach case against insurance agent where the legal duties at issue "ar[o]se from the relationship of the parties" and from state statute, "*not* from the [insurance] contract").

46

Likewise here, the legal duties—and Plaintiffs' claims—arise from a federal statute, not from the Plan document. Plaintiffs thus seek to enforce federal law, not the terms of any contract. That makes this case unlike *Rachal v. Reitz*, 403 S.W.3d 840, 847 (Tex. 2013), the primary case Defendants relied on below, where the plaintiff alleged violations of the trust's terms, filed "sui[t] to enforce its terms," and then sought to avoid one of the trust terms—the arbitration clause. Here, in contrast, Plaintiffs are not trying to "have [their] contract and defeat it too." *Jody James*, 547 S.W.3d at 637-38; *see also Ali*, 554 S.W.3d at 762 (distinguishing *Rachal* and explaining plaintiff alleged that executor of will violated "fiduciary duty," a duty that "is derived from the statutes and common law," not from the will itself; therefore, direct benefits estoppel did not apply); *Brown*, 2018 WL 3546186, at *6 (declining to apply direct benefits estoppel where plaintiff was "not seeking any direct benefit from the Plan itself, and her claims do not arise from the Plan document. Instead, her claims are wholly *statutory* in nature, brought under ERISA to remedy alleged breaches of fiduciary duty by the Trustee, which resulted in losses to the Plan.").

*Rachal*, moreover, was premised on the idea that the plaintiff had "the opportunity to opt out of the arrangement proposed by the settlor"—including the arbitration clause. 403 S.W.3d at 847. Here, Plaintiffs had no such opportunity; the

Arbitration Clause was an after-the-fact addition to the Plan that Plaintiffs knew nothing about and had no ability to reject. *See supra* at 43.[13]

## B.    The Arbitration Clause fails for lack of consideration.

"To be valid and enforceable, a contract must include consideration, that is, a mutuality of obligation." *Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 696 (W.D. Tex. 2019) (citation omitted). And contract amendments "must be supported by new consideration." *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 387 (Tex. App. 2017) (employer's promise of continued employment to at-will employees in exchange for amendment to employment contract did not constitute consideration). In other words, "a stand-alone promise" from one party without "any new [promise] from" the opposing party fails for lack of consideration. *Miner*, 383 F. Supp. 3d at 696 (citation omitted). This applies to arbitration agreements. "Under Texas law, an arbitration agreement, like other contracts, must be supported by consideration." *Nelson v. Watch House Int'l, LLC*, 815 F.3d 190, 193 (5th Cir. 2016) (cleaned up).

Here, there was no consideration. The Plan sponsor did not agree to arbitrate its claims when it added the Arbitration Clause to the Plan. Nor does the Arbitration Clause apply to, for example, the Plan administrator, Trustee, or any of the

---

[13] *Rachal* is further distinguishable because the Texas court construed the Texas Arbitration Act to cover a trust document, 403 S.W.3d at 845-47, a decision that does not control whether the unilateral Plan amendment here is a contract enforceable under the FAA.

Defendants. The Arbitration Clause instead applies only to a "Claimant," meaning "an Employee, Participant, or Beneficiary." ROA.172 [§§ A-1, A-2] ("[S]uch *Employee, Participant, or Beneficiary shall be bound*, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims." (emphasis added)). This was a one-sided obligation.

Defendants cannot plausibly argue, as movants in other cases have, that Plaintiffs agreed to arbitrate in exchange for continued employment or continued participation in the Plan. Again, when the Arbitration Clause was adopted, Plaintiffs were no longer employees, were no longer active Plan participants, accrued no further benefits, were 100% vested, and the Plan had been terminated. Their performance of their contractual obligations was complete. Defendants cannot tack on additional contractual obligations and limitations after performance is complete, in exchange for nothing, and expect them to be enforceable.

## C.     The Arbitration Clause is illusory and unenforceable.

Even if the Arbitration Clause also applied to the Plan sponsor or any of the Defendants, it would still be unenforceable as an illusory promise. Under Texas law, an arbitration clause is "'illusory'" and therefore "'unenforceable'" if one party can unilaterally alter or terminate it at will. *Morrison v. Amway Corp.*, 517 F.3d 248, 256 (5th Cir. 2008) (quoting *In re C&H News Co.*, 133 S.W.3d 642 (Tex. App. 2003));

*Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 207 (5th Cir. 2012) (similar).[14]

That unilateral authority is also present here. Under section 14-1 of the Plan document, the Plan sponsor retains "the right to amend the Plan at any time by action of its Board of Directors or of a person designated by resolution of its Board of Directors." ROA.235.

*Morrison* found significant that the agreements at issue contained no "savings clauses" that limited the employer's ability to terminate the arbitration agreement or that "preclude application of [the arbitration clause] to disputes which arose . . . before the amendment." 517 F.3d at 257. These savings clauses are crucial. When a party retains the power to unilaterally alter or terminate an arbitration clause, that clause is illusory unless "that power 1) extends only to prospective claims, 2) applies equally to both the employer's and employee's claims, and 3) so long as advance notice to the employee is required before termination is effective." *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 226 (5th Cir. 2014) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002)).

---

[14] Other circuits agree. *See Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 292-93 (4th Cir. 2022) (finding arbitration clause was "illusory" because the company reserved the right to make unilateral changes); *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 782-83 (7th Cir. 2014) (holding that where one party "retain[s] the sole, unilateral discretion" to impose or modify an arbitration provision, the provision is "illusory" and therefore invalid); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (joining "other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory").

None of these three conditions is satisfied here. First, nothing in the Plan or Arbitration Clause limits the Arbitration Clause to prospective claims. In this very case Defendants seek to apply the Arbitration Clause to claims arising out of events that occurred in 2017, before the purported addition of the Arbitration Clause in 2018. Second, as explained previously, the Arbitration Clause applies only to claims by an "Employee, Participant, or Beneficiary," not to claims by the Plan sponsor, administrator, or trustee. Third, neither the Plan nor the Arbitration Clause requires the Plan sponsor to give participants any advance notice before it terminates or alters the Arbitration Clause. The Plan requires the Plan sponsor to give only "the Trustee" notice "of any proposed amendment to the Plan at least seven days prior to its adoption." ROA.235. Here, the Plan sponsor provided no notice, much less advanced notice, to Plaintiffs before purporting to add the Arbitration Clause to the Plan.

In short, the Plan sponsor's unfettered power to change or terminate the Arbitration Clause at any time renders the Clause illusory and unenforceable.

## CONCLUSION

This Court should affirm the district court's decision.

Dated: November 9, 2023

Respectfully submitted,

**STRIS & MAHER LLP**

/s/John Stokes
John Stokes

Gregory Y. Porter
Ryan T. Jenny
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. NW, Ste. 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

John Saul Edwards, Jr.
Ajamie LLP
711 Louisiana, Suite 2150
Houston, TX 77002
(713) 860-1600
jedwards@ajamie.com

Peter K. Stris
Rachana Pathak
John Stokes
STRIS & MAHER LLP
777 S Figueroa St., Ste. 3850
Los Angeles, California 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299
pstris@stris.com

Bridget C. Asay
STRIS & MAHER LLP
15 East State Street, Suite 2
Montpelier, VT 05602
(802) 858-4258

Colleen R. Smith
STRIS & MAHER LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
(202) 800-5749

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I certify that on November 9, 2023, a true and correct copy of the foregoing Appellees' Brief was filed electronically through the CM/ECF system of the United States Court of Appeals for the Fifth Circuit. Under Fifth Circuit Rule 25.2.5, the Court's Notice of Docket Activity constitutes service on all Filing Users, including counsel of record for all parties to this appeal.

/s/ John Stokes
John Stokes

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE

1.    I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,764 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2019.

3.    I further certify that (a) required privacy redactions have been made, 5TH CIR. R. 25.2.13; (b) the electronic submission is an exact copy of the paper document, 5TH CIR. R. 25.2.1; and (c) the document has been scanned for viruses with the most recent version of a commercial virus-scanning program and is free of viruses, 5TH CIR. ECF Filing Standards, § A(6).

Dated: November 9, 2023          /s/ John Stokes_____
                                 John Stokes

                                 Counsel for Plaintiffs-Appellees