No. 23-10832

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

JASON COLEMAN, *et al.*,

Plaintiffs-Appellees,

v.

NEIL M. BROZEN, *et al.*,

Defendants-Appellants.

———————————

On Appeal from the United States District Court for the
Northern District of Texas
Case No. 3:20-cv-01358-E
The Honorable Judge Ada Brown

———————————

**BRIEF FOR THE U.S. SECRETARY OF LABOR AS AMICUS CURIAE
SUPPORTING PLAINTIFFS-APPELLEES**

SEEMA NANDA
Solicitor of Labor

WAYNE R. BERRY
Associate Solicitor
 for Plan Benefits Security

JEFFREY M. HAHN
Counsel for Appellate and Special
 Litigation

Brendan Ballard
Senior Trial Attorney

U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Ave. NW, N4611
Washington, DC 20210
202.693.5600 (t) | 202.693.5610 (f)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... ii

QUESTION PRESENTED ...................................................................1

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE ......1

STATEMENT OF THE CASE .................................................................2

    A.  Factual Background.................................................................2

    B.  Proceedings Below..................................................................4

SUMMARY OF THE ARGUMENT.........................................................6

ARGUMENT.........................................................................................8

  I.     ERISA Sections 502(a)(2) And 409(a) Authorize Plan Participants To Seek Plan-wide Relief For Fiduciary Breach Claims .........................................8

  II.    The Arbitration Procedure's Prohibition On Plan Wide Relief Is Unenforceable Because It Prospectively Waives Remedies Authorized By ERISA .................................................................................12

  III.  The District Court Correctly Rejected Defendants' Arguments ...............18

    A.  The District Court's holding did not contravene either the FAA or ERISA...............................................................................18

    B.  The Supreme Court's recent decision in *Viking River* supports invalidating the Remedy Limitation.............................................20

    C.  The Remedy Limitation is distinct from the waivers of procedural class actions upheld by the Supreme Court.........................................24

CONCLUSION ...................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

Federal Cases:

*Am. Exp. Co. v. Italian Colors Rest.*,
　570 U.S. 228 (2013) .................................................................. 13, 14

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011) ...........................................................................14

*Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
　919 F.3d 763 (4th Cir. 2019) .............................................................11

*Burnett v. Prudent Fiduciary Servs. LLC*,
　No. 22-cv-270, 2023 WL 387586 (D. Del. Jan. 25, 2023)...................22

*Burnett v. Prudent Fiduciary Servs. LLC*,
　No. 23-1527, 2023 WL 6374192 (3d Cir. Aug. 15, 2023).......................... 22 n. 5

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006)...................................................................26

*Coleman v. Brozen*,
　No. 3:20-CV-01358-E, 2023 WL 4498506 (N.D. Tex. Jul. 12, 2023) ........ passim

*Dorman v. Charles Schwab Corp.*,
　780 F. App'x 510 (9th Cir. 2019).............................................. 11 n. 2

*Epic Sys. Corp. v. Lewis*,
　138 S. Ct. 1612 (2018) ......................................................................14

*Esden v. Bank of Boston*,
　229 F.3d 154 (2d Cir. 2000) .............................................................20

*Gilmer v. Interstate/Johnson Lane Corp.*,
　500 U.S. 20 (1991) ...................................................................... 14, 24

Federal Cases (continued):

*Gollust v. Mendell*,
  501 U.S. 115 (1991) ...................................................................................23

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*,
  59 F.4th 1090 (10th Cir. 2023)............................................................ 6, 17

*Henry v. Wilmington Tr. NA*,
  72 F.4th 499 (3d Cir. 2023) ................................................................. 6, 16

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ...................................................................................23

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ......................................................................10

*Kramer v. Smith Barney*,
  80 F.3d 1080 (5th Cir. 1996) .....................................................................13

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*,
  710 F.3d 57 (2d Cir. 2013) ........................................................................12

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008) ........................................................................... passim

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ........................................................................... passim

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .............................................................. 12, 13, 14

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ...................................................................................13

*Munro v. Univ. of S. Cal.*,
  896 F.3d 1088 (9th Cir. 2018) ...................................................................11

Federal Cases (continued):

*Perez v. Bruister*,
823 F.3d 250 (5th Cir. 2016) ................................................... 6, 11, 24

*Preston v. Ferrer*,
552 U.S. 346 (2008) ...................................................................21

*Sec'y of Labor v. Fitzsimmons*,
805 F.2d 682 (7th Cir. 1986) ........................................................1

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ...................................................................13

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
13 F.4th 613 (7th Cir. 2021) ................................................. passim

*Spano v. The Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) .......................................................12

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) ........................................................ 20, 23

*Viking River Cruises, Inc. v. Moriana*,
142 S. Ct. 1906 (2022) ......................................................... passim

Federal Statutes:

9 U.S.C. § 2 ............................................................................ 12, 19

Employee Retirement Income Security Act of 1974,
as amended, 29 U.S.C. § 1001 et seq.,

Section 2, 29 U.S.C. § 1001 ..........................................................1

Section 2(b), 29 U.S.C. § 1001(b) .................................................1

Section 204(g)(1), 29 U.S.C. § 1054(g)(1) ....................................5

Federal Statutes (continued):

Section 404(a), 29 U.S.C. § 1104(a)......................................................................4, 5

Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ...................................................19

Section 406(a), 29 U.S.C. § 1106(a)........................................................................4

Section 409, 29 U.S.C. § 1109...........................................................................3, 4

Section 409(a), 29 U.S.C. § 1109(a)..................................................... 5, 8, 15, 17

Section 410, 29 U.S.C. § 1110..............................................................................5

Section 502(a)(2), 29 U.S.C. § 1132(a)(2) ..................................................... passim

Section 502(g), 29 U.S.C. § 1132(g) ......................................................................5

Section 514(d), 29 U.S.C. § 1144(d) ....................................................................18

Miscellaneous:

Fed.R.App.P. 29(a)(2).........................................................................................2

Fed.R.Civ.P. 23.1 ............................................................................................26

Other Authorities:

Cal. Lab. Code § 2698 (West 2004) .....................................................................20

## QUESTION PRESENTED

Whether a provision in an arbitration agreement limiting ERISA plan participants to obtaining only individualized relief is an unenforceable prospective waiver of the right to obtain plan-wide relief under section 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

The Acting Secretary of Labor ("Secretary") has the primary authority to interpret and enforce Title I of ERISA and is responsible for "assur[ing] the . . . uniformity of enforcement of the law under the ERISA statutes." *See Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 691–93 (7th Cir. 1986) (en banc). To that end, the Secretary has an interest in effectuating ERISA's express purpose of "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans" and "providing for appropriate remedies . . . and ready access to the Federal courts." *See* 29 U.S.C. § 1001(b).

In this case, the district court correctly held that arbitration agreements cannot prospectively waive participants' statutory right to pursue plan-wide relief for claims under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2). The Secretary has a substantial interest in ensuring that participants are not forced to arbitrate under agreements that prohibit the plan-wide remedies that ERISA provides.

1

The Secretary files this brief as amicus curiae pursuant to Federal Rule of

Appellate Procedure 29(a)(2).[1]

## STATEMENT OF THE CASE

### A.    Factual Background

Plaintiffs Jason Coleman and Jessica Casey were employees of All My Sons

Moving and Storage, which was acquired by RVNB Holdings, Inc. ("RVNB" or

"Company") in March 2012. They were also participants in the RVNB Employee

Stock Ownership Plan ("Plan")—a defined contribution plan designed to invest in

employer stock. *Coleman v. Brozen*, No. 3:20-CV-01358-E, 2023 WL 4498506, at

*1 (N.D. Tex. Jul. 12, 2023). In December 2012, the Plan purchased 100% of

RVNB's stock for $85 million. *Id.* Plaintiffs allege that the owners of RVNB

formed the Plan solely as a vehicle to reap tax benefits from an eventual sale of

RVNB to a private equity group. *Id.* at *2. To that end, Plaintiffs allege that the

Board of Directors appointed a compliant trustee, Neil Brozen, to rubberstamp the

termination of the Plan in 2017 and to sell the Plan's RVNB shares back to the

Company for far less than fair market value, so the Company could then

---

[1] The stock sale transaction at issue in this case is the subject of a parallel ERISA
action brought by the Acting Secretary of Labor against some of the same
defendants named in this case. *See Su v. Peterson, et al.*, No. 3:22-cv-01869-E
(N.D. Tex.). Because the Secretary is not bound by the Plan's arbitration provision,
the enforceability of the arbitration provision is not at issue in the Secretary's case.

turnaround and sell its stock to a private equity group, allowing the Company's executives to reap all the profits. *Id.*

The Plan is governed by a Plan document. On May 18, 2018, the Plan sponsor amended the Plan to add an "Arbitration Procedure" to resolve all "Covered Claims." *Id.* at *2–3. The Arbitration Procedure limits participants to obtaining individualized relief and precludes relief that inures to the benefit of any other Plan participant or beneficiary ("Remedy Limitation"):

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that **Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) [29 U.S.C. § 1132(a)(2)] to seek appropriate relief under ERISA § 409 [29 U.S.C. § 1109], the Claimant's remedy, if any, shall be limited** to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant.

*Id.* at *3 (emphasis added, except for "individual" emphasis in original).

Additionally, the Arbitration Procedure provides that the Remedy Limitation is a non-severable term of the Arbitration Procedure and that "in the event that [its]

requirements . . . were to be found unenforceable or invalid," then the entire

Arbitration Procedure "shall be rendered null and void in all respects." *Id.*

### B.    Proceedings Below

Plaintiffs filed a class action complaint in the United States District Court

for the Northern District of Texas alleging, in relevant part, that Defendants—

Brozen and the RVNB Board of Directors—breached their fiduciary duties to the

Plan under ERISA section 404(a), 29 U.S.C. § 1104(a), and/or caused the Plan to

engage in a non-exempt prohibited transaction under ERISA section 406(a), 29

U.S.C. § 1106(a), resulting in losses to the Plan. *Coleman,* 2023 WL 4498506, at

*1–2; ROA 298–306. Plaintiffs, who brought these claims under ERISA section

502(a)(2), 29 U.S.C. § 1132(a)(2), seek relief from the Court requiring Defendants:

(1) "to make good to the Plan and/or any successor trust(s) the losses resulting

from their breach of ERISA and restore any profits they have made through the use

of assets of the Plan;" and (2) "'provide other appropriate equitable relief to the

Plan and its participants and beneficiaries,' including surcharge, an accounting of

profits, the imposition of a constructive trust, and an equitable lien on any funds

wrongfully held by the defendants." *Id.* at *8 (quoting ROA 309–311).

Defendants moved to compel arbitration of Plaintiffs' claims pursuant to the

Arbitration Procedure in the Plan document. *Coleman*, 2023 WL 4498506, at *4.

Plaintiffs opposed the motion on several grounds, namely that the Arbitration

Procedure is invalid because it conflicts with certain substantive rights, remedies, and standards under ERISA. *Id.* Specifically, Plaintiffs assert that the Remedy Limitation: (1) violates ERISA's anti-cutback rule embodied in ERISA section 204(g), 29 U.S.C. § 1054(g)(1); (2) operates as an unlawful exculpatory provision under ERISA section 410(a), 29 U.S.C. § 1110; (3) prevents the effective vindication of their right to seek plan-wide relief under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), and section 409(a), 29 U.S.C. § 1109(a); (4) alters the standard of review applicable to fiduciary actions in arbitration, in violation of ERISA section 404(a), 29 U.S.C. 1104(a); and (5) improperly shifts attorneys' fees in violation of ERISA section 502(g), 29 U.S.C. § 1132(g). *Id.*

The district court denied the Defendants' motion to compel arbitration, concluding that the Remedy Limitation prevents the effective vindication of Plaintiffs' statutory right to seek plan-wide relief under ERISA sections 502(a)(2) and 409(a). 2023 WL 4498506, at *6. The district court cited the portion of the Remedy Limitation that prevents claimants from seeking or receiving "any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant." *Id.* at *17. Consistent with the Third, Seventh, and Tenth Circuits, the district court stated that this language would prevent Plaintiffs from obtaining at least some forms of relief authorized by ERISA section 409(a), particularly an order requiring

Plan fiduciaries to "make good to the Plan and/or any successor trust(s) the losses resulting from their breaches of ERISA and restore any profits they have made through the use of plan assets." *Id.* (citing *Henry v. Wilmington Tr. NA*, 72 F.4th 499, 507 (3d Cir. 2023); *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 621–23 (7th Cir. 2021); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1108–09 (10th Cir. 2023)). And because the district court found that the Remedy Limitation is not severable from the overall Arbitration Procedure, the court concluded that the Arbitration Procedure itself is unenforceable. *Coleman*, 2023 WL 4498506, at *17–18.

## SUMMARY OF THE ARGUMENT

The district court correctly refused to compel arbitration because the Arbitration Procedure's Remedy Limitation precludes Plaintiffs from obtaining the very relief that ERISA expressly allows them to seek.

ERISA sections 502(a)(2) and 409(a) authorize participants to bring an action to recover, among other things, "any losses to the plan" resulting from a fiduciary breach. 29 U.S.C. §§ 1132(a)(2), 1109(a). As the Supreme Court and this Court have recognized, claims under these sections are "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016). This is true even in the context of defined contribution plans comprising individual

participant accounts. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). In short, a participant bringing a claim under section 502(a)(2) does so on the plan's behalf and thus may recover, for the plan's benefit, all losses sustained by the plan (among other forms of redress) stemming from the fiduciary breach.

Plaintiffs here sought precisely the remedies authorized by section 502(a)(2) to redress the underpayment they allege Defendants caused the Plan, including restoration of all Plan losses. Yet, Defendants sought to force Plaintiffs to abandon these statutory remedies by moving to compel arbitration under an agreement that restricts them to obtaining only individualized relief. The Supreme Court has made clear, though, that arbitration provisions that prospectively waive a party's right to pursue statutory remedies are unenforceable. Because the Remedy Limitation in the Arbitration Procedure here precludes participants from seeking the very plan-wide relief that ERISA explicitly authorizes in sections 502(a)(2) and 409(a), the district court correctly determined that the Remedy Limitation was invalid. And because the Remedy Limitation is not severable from the Arbitration Procedure as a whole, the district court also correctly denied the motion to compel arbitration. This Court should affirm.

# ARGUMENT

## I.    ERISA Sections 502(a)(2) And 409(a) Authorize Plan Participants To Seek Plan-wide Relief For Fiduciary Breach Claims

The district court correctly recognized that ERISA authorizes plan participants, including participants in defined contribution plans, to seek plan-wide relief for fiduciary breach claims brought on behalf of the plan. *Coleman*, 2023 WL 4498506, at *6, *11–17. ERISA section 502(a)(2) provides that participants, just like the Secretary of Labor or a plan fiduciary, can bring an action "for appropriate relief" under section 409. 29 U.S.C. § 1132(a)(2). ERISA section 409(a), in turn, provides that a fiduciary who breaches their duties "shall be personally liable to make good to such *plan* any losses to *the plan* resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a) (emphasis added).

Because of its focus on the plan, the Supreme Court has explained that section 409(a) "provid[es] relief singularly to the plan" as opposed to an "individual beneficiary." *Russell*, 473 U.S. at 142. Thus, the recovery obtained under section 502(a)(2) for fiduciary breaches, whether brought by a participant, the Secretary, or a fiduciary, "inures to the benefit of the plan as a whole." *Id.* at 140. And given their plan-based character, claims under section 502(a)(2) are

"brought in a representative capacity on behalf of the plan as a whole." *Id.* at 142 n.9.

These principles apply even in the context of defined contribution plans made up of individual participant accounts. In *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008), the Supreme Court held that, although defined contribution plans, unlike defined benefit plans, comprise individual accounts, losses to those accounts still qualify as plan losses. The plaintiff there alleged that his employer failed to implement the changes he requested to his individual account, and in so doing, caused his account to decline in value. *LaRue*, 552 U.S. at 251. The breach, and the resulting harm, was thus localized to the plaintiff's account and did not affect any other participant accounts. *Id.* As the Court explained, "fiduciary misconduct need not threaten the solvency of the entire plan" to cause plan losses implicating section 409(a). *Id.* at 255. Indeed, a plan may experience losses redressable under section 409(a) "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts." *Id.* at 256.

In Defendants' telling, *LaRue* means that Plaintiffs can fully vindicate their statutory rights in individualized proceedings that limit their recovery to their individual accounts. *See* Appellants' Br. at 34–36. But *LaRue* suggests no such thing. The Court simply clarified that the participant may maintain a claim under

section 502(a)(2) even though the fiduciary breach diminished only his account and not those of other participants. It nowhere suggested that every participant in a defined contribution plan is limited to recovering losses only to their individual accounts under section 502(a)(2), even where a breach affects the entire plan. *LaRue* thus "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009).

Nor does Defendants' proposition logically follow from *LaRue*'s holding. Indeed, the Court reiterated in *LaRue* that *all claims* under section 502(a)(2)— including those pertaining to a breach that harms a single participant's account— are not individual actions, but instead are "actions *on behalf of a plan* to recover for violations of the obligations defined in § 409(a)." *LaRue*, 552 U.S. at 253 (emphasis added). Because participants pressing section 502(a)(2) claims act on the plan's behalf even in the context of defined contribution plans, it follows that they should be permitted to recover (for the plan's benefit) *all* plan losses, not just those that pertain or may be passed through to their particular individual account (unless, as in *LaRue*, the *only* plan loss was to that participant's account).[2] The

---

[2] In an unpublished decision, the Ninth Circuit enforced an arbitration provision requiring arbitration on an individual rather than collective basis. Similarly misconstruing *LaRue*, the court reasoned that individualized arbitration of a section

district court here reached the same conclusion. Citing to *Perez v. Bruister*, 823

F.3d 250 (5th Cir. 2016), the district court noted that individual participants in

defined contribution plans have an ERISA-recognized interest in plan assets as a

whole "because the losses suffered by individual plan participants are

'coterminous' with the loss to the entire plan." *Coleman*, 2023 WL 4498506, at

*10. As the district court concluded, Defendants' argument that these

representative actions under ERISA may be fully vindicated by recovering a

fraction of the plan's losses to an individual's plan account is antithetical to *LaRue*.

*Id.* at *8–11, *15.

　　Not surprisingly then, circuit courts post-*LaRue* have continued to allow

participants in defined contribution plans to recover on the plan's behalf all losses

to the plan resulting from a fiduciary breach no different than before the *LaRue*

decision. *Cf., e.g., Brundle on behalf of Constellis Emp. Stock Ownership Plan v.*

*Wilmington Tr., N.A.*, 919 F.3d 763, 782 (4th Cir. 2019) (ESOP participants

entitled "to compensation for the loss from the overpayment" for ESOP assets);

*Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1094 (9th Cir. 2018) (participants in

---

502(a)(2) claim was appropriate because participants in a defined contribution plan
can only bring a claim for the losses in their own individual account. *Dorman v.
Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) ("*Dorman II*").
However, the arbitration provision at issue in that case apparently precluded only
collective arbitration and did not prohibit plan-wide relief. Thus, *Dorman II* is
inapposite to the issue on appeal here and Defendants' heavy reliance on the case
is misplaced.

defined contribution plans entitled to "seek financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries"); *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013) (in claims involving a defined contribution plan, "recoupment of losses to the Plan" was an appropriate remedy "for the benefit of the Plan as a whole"); *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (recognizing the possibility of "plan losses in a defined-contribution setting" resulting from alleged fiduciary breaches involving excessive fees and selection of investment options).

Accordingly, the district court correctly determined that ERISA sections 502(a)(2) and 409(a) authorize Plaintiff to seek plan-wide relief to redress Defendants' alleged breaches.

## II. The Arbitration Procedure's Prohibition On Plan Wide Relief Is Unenforceable Because It Prospectively Waives Remedies Authorized By ERISA

The Federal Arbitration Act ("FAA") expresses the general policy that arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Although the Supreme Court has not addressed the arbitrability of ERISA claims, it has upheld arbitration agreements involving claims under other federal remedial statutes. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

*Inc.*, 473 U.S. 614 (1985) (enforcing arbitration agreement for claims under the Sherman Act); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987) (enforcing arbitration agreement for claims under the Securities Exchange Act of 1934 and RICO Act). The circuit courts that have considered the arbitrability of ERISA claims, including this Court, are in agreement that ERISA claims are generally arbitrable. *See Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) ("Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act"); *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) (collecting cases holding that ERISA claims are generally arbitrable).

But a unanimous Supreme Court recently clarified that the effect of the FAA's "policy favoring arbitration" should not be overstated: this "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). In that regard, the Supreme Court has recognized an "effective vindication" doctrine, which serves to prevent the "prospective waiver of a party's right to pursue statutory remedies" in an arbitration agreement. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013) (quoting *Mitsubishi*, 473 U.S. at 637 n.19). As the Court explained in *Mitsubishi,* a party that agrees to arbitration "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an

arbitral, rather than a judicial, forum." 473 U.S. at 628. Although the Supreme

Court ultimately did not hold that the arbitration provisions in *Italian Colors Rest.*

or *Mitsubishi* were invalid under the effective vindication doctrine, the Court wrote

in *Italian Colors Rest.* that the doctrine "would certainly cover a provision in an

arbitration agreement forbidding the assertion of certain statutory rights." 570 U.S.

at 236.

      In contrast, provisions that do not limit a statutory remedy but merely affect

the *manner* of arbitration will generally stand. For example, courts will typically

enforce arbitration agreements containing waivers of class or collective actions,

even if the statute giving rise to the claim expressly permits such actions. *See Epic*

*Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Italian Colors Rest.*, 570 U.S. at

236–39; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011); *Gilmer*

*v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27–32 (1991). Class-arbitration

waivers that leave the party with the right to pursue their statutory remedies

through an individual action generally do not provide a basis for courts to

invalidate these provisions. *See Italian Colors Rest.*, 570 U.S. at 236.

      The district court correctly held that the Remedy Limitation precludes the

"effective vindication" of statutory remedies promised under ERISA and is invalid.

As explained above, ERISA sections 502(a)(2) and 409(a) expressly allow

participants complaining of fiduciary breaches to recover for the plan "any losses

to the plan resulting from" the fiduciary's breach. *See* 29 U.S.C. § 1109(a); 29 U.S.C. § 1132(a)(2) (authorizing participants to seek "appropriate relief under [section 409]"). The Supreme Court has repeatedly made clear that claims under section 502(a)(2) are representative actions brought "on behalf of the plan as a whole" and that the relief authorized by the statute inures to the plan. *Russell*, 473 U.S. at 142 n.9; *LaRue*, 552 U.S. at 253. Yet the Remedy Limitation cuts off those statutory remedies by making clear that participants may not arbitrate ERISA claims "in a representative capacity" and "may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant."[3] *Coleman*, 2023 WL 4498506 at *3. Instead, the Remedy Limitation limits participants to recovering "the alleged losses to the Claimant's individual Plan

---

[3] For purposes of the motion to compel arbitration, Defendants ignore this provision and focus instead on a different provision in the Remedy Limitation, which does not explicitly mention "other relief." *See* Appellants' Br. at 44 n.5 (citing last sentence in Remedy Limitation, providing the Claimant's remedy, if any, shall be limited to . . . (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the *provision of additional benefits or monetary relief* to any employee, participant or beneficiary other than the Claimant") (emphasis added). Defendants are attempting to construe the Remedy Limitation at issue in this case as less restrictive than the provisions the Third, Seventh, and Tenth circuits found unenforceable in *Henry*, *Smith*, and *Harrison*, respectively (discussed *infra*). But, in reality, the Remedy Limitation in this case contains the exact same "other relief" language as the provisions in those cases, just in a different sentence than the one Defendants rely upon.

account resulting from the alleged breach of fiduciary duty." *Id.* The district court thus correctly concluded that the Remedy Limitation "is unenforceable because it prevents Plaintiffs from effectively vindicating their statutory right to seek plan-wide relief under ERISA §§ 502(a)(2) and 409(a)." *Id.* at *11.

The district court's decision aligns with decisions reached by multiple appellate courts. For example, in *Henry v. Wilmington Tr. NA*, the Third Circuit recently held that an arbitration provision in an ERISA plan materially identical to the Remedy Limitation (i.e., one that also precluded plan-wide relief) was unenforceable under the effective vindication doctrine because it required the plaintiff to prospectively waive statutory remedies. 72 F.4th 499, 507 (3d Cir. 2023) (citing *Smith*, 13 F.4th 613 at 621) ("[W]hat the statute permits, the plan precludes."). The Third Circuit explained that the arbitration provision's requirement that participants seek only individualized relief is at odds with the remedies authorized by ERISA section 409(a), because such remedies necessarily have plan-wide effect. *Id.* For example, section 409(a)'s allowance for "[r]estitution of 'all plan losses' would necessarily result in monetary relief to non-party plan participants." *Id.* (quoting *LaRue*, 552 U.S. at 261 (Thomas, J., concurring)). Because the non-severable provision requiring individual arbitration would act as a prospective waiver of the right to pursue a statutory remedy, the arbitration agreement could not be enforced. *Id.*

The Tenth and Seventh Circuits have reached the same conclusion in cases involving materially identical arbitration provisions in ERISA plans limiting participants to individualized relief. In *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, the Tenth Circuit held that the provision was unenforceable under the effective vindication doctrine because it "purports to foreclose a number of remedies that were specifically authorized by Congress." 59 F.4th 1090, 1107 (10th Cir. 2023). The court noted that the plaintiff's "claims are brought under § 1132(a)(2) and seek forms of relief," including plan-wide monetary relief, "that would benefit the Plan as a whole, rather than [plaintiff] individually," but the arbitration provision would "foreclose any such plan-wide relief." *Id.* Similarly, in *Smith v. Bd. of Dirs. of Triad Mfg., Inc.,* the Seventh Circuit held that the provision limiting participants to individualized relief could not be reconciled with "the plain text of § 1109(a)," which provides for equitable or remedial relief that would extend to the entire plan and thus be forbidden under the arbitration provision. 13 F.4th 613, 621 (7th Cir. 2021). Because the provision would act as a prospective waiver of the right to pursue a statutory remedy, the provision could not be enforced under the effective vindication doctrine. *Id.*[4]

---

[4] Defendants cite *Smith* as one of "numerous" appellate and district courts decisions that have "held that ERISA § 502(a)(2) claims can be arbitrated on an individual basis." Appellants' Br. at 43. This is plainly false. As set forth above, the Seventh Circuit applied the effective vindication doctrine to *invalidate* the provision requiring individualized arbitration in *Smith*. To the extent that *Smith* can

### III.    The District Court Correctly Rejected Defendants' Arguments

#### A.    The District Court's holding did not contravene either the FAA or ERISA

Defendants contend that the district court "implicitly determined that ERISA displaced the FAA," which they say is especially inappropriate given ERISA's federal-law savings clause, which provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede" another federal law. Appellants' Br. at 27–29 (citing 29 U.S.C. § 1144(d)). But, as the district court noted, there is no conflict between ERISA and the FAA (or its policy favoring enforcement of arbitration agreements) in need of harmonization. *Coleman*, 2023 WL 4498506 at *15. Rather, the conflict is between ERISA and a single provision in the Arbitration Procedure—the Remedy Limitation—that precludes the plan-wide remedies that ERISA section 502(a)(2) and 409(a) expressly permit. *Id.* (citation omitted). This merely means that the *Remedy Limitation* is unenforceable, not the Arbitration Procedure more broadly. The district court denied the motion to compel arbitration not because of ERISA, but rather because of a non-severability provision in the Arbitration Procedure (rendering it void if the Remedy Limitation were invalidated).

---

be read as implying in dicta that, if the plaintiff had only sought monetary relief and not also removal of the fiduciary, his claims may have been properly subject to individual arbitration, *see* 13 F.4th at 622, the court was mistaken. That was not, however, the issue before the court.

Indeed, the Supreme Court recently clarified that the effective vindication doctrine is consistent with the text of the FAA itself. As the Court explained, the FAA "requires only the enforcement of 'provision[s]' to settle a controversy 'by arbitration,' [] and not any provision that happens to appear in a contract that features an arbitration clause." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 n.5 (2022) (quoting 9 U.S.C. § 2). In other words, while the FAA requires enforcing an agreement to submit a dispute to arbitration, it does not require enforcing every provision in such an agreement, such as the Remedy Limitation in this case.

Defendants also argue that ERISA requires the Plan, which contains the Arbitration Procedure and its Remedy Limitation, to be enforced as written. Appellants' Br. at 27. While Defendants do not cite to a particular ERISA provision, they presumably mean to rely on ERISA section 404(a)(1)(D), which requires fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan *insofar* as such documents and instruments are consistent with the provisions of [Title I of ERISA]." 29 U.S.C. § 1104(a)(1)(D) (emphasis added). But, as is plain from the text, ERISA requires fiduciaries to enforce Plan terms as written *only* "insofar" as they comport with ERISA. Here, enforcing the Plan as written, including the Remedy Limitation, would be inconsistent with ERISA sections 502(a)(2) and 409(a)'s right to pursue plan-wide

relief. *See Esden v. Bank of Boston*, 229 F.3d 154, 173 (2d Cir. 2000) ("The Plan cannot contract around the statute.").

### B. The Supreme Court's recent decision in *Viking River* supports invalidating the Remedy Limitation

Defendants additionally argue that the district court's decision is at odds with the Supreme Court's recent decisions in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022) and *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020). To the contrary, the district court correctly held that neither case supports Defendants' position.

*Viking River* concerned the FAA's effect on California precedent invalidating waivers of an employee's right to bring representative claims under the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq*. PAGA allows California workers to bring two species of representative actions. First, an aggrieved employee, as a representative of the state, may bring a PAGA action against a former employer for civil penalties for violations of the employee's rights under California labor law. 142 S. Ct. at 1914–17. Second, aside from representing the state, employees may also represent other individuals by joining additional claims of employees "other than the PAGA litigant," which may be predicated on different facts and statutory violations. *Id.* at 1915.

The Supreme Court held that the FAA does not conflict with California precedent invalidating contractual waivers of the first type of PAGA action (an individual representative action on behalf of the state). In support, the Court reiterated that "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Id.* at 1919 ("[W]e have said that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum.'" (quoting *Preston v. Ferrer,* 552 U.S. 346, 359 (2008))). And the Court distinguished this type of representative PAGA action—a single agent, single principal action—from class actions, waivers of which it has generally held to be permissible. *Id.* at 1919–22. In contrast to the procedural device of a class action, "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of *substantive law*." *Id.* at 1922 (emphasis added). Thus, California's rule prohibiting waivers of this type of representative action, the Court held, does not run afoul of the FAA. *Id.* at 1923.

The right PAGA gives to employees to bring suit on behalf of California is broadly analogous to the right ERISA sections 502(a)(2) and 409(a) give to participants and beneficiaries to bring an action on behalf of a plan. They are both "representative actions . . . on behalf of a single principal." *Id.* at 1922; *Russell,* 473 U.S. at 142, n.9 (section 502(a)(2) claims are "brought in a representative

capacity on behalf of the plan as a whole"). Accordingly, the logic underlying the first part of the Court's holding in *Viking River* supports Plaintiffs' position in this case that the FAA does not require enforcing a prospective waiver of a participant's right to seek plan-wide relief. Indeed, a district court considering a motion to compel arbitration under an agreement similar to the one here recently applied *Viking River* to distinguish substantive remedies from procedural rules, and stated that, "while the FAA requires courts to respect parties' contractual agreements regarding the *procedures* under which they will arbitrate, 'the FAA does not require courts to enforce contractual waivers of *substantive* rights and remedies.'" *Burnett v. Prudent Fiduciary Servs. LLC*, No. 22-cv-270, 2023 WL 387586, at *4 (D. Del. Jan. 25, 2023) (quoting *Viking River*, 142 S. Ct. at 1919).[5] As mentioned above, the FAA requires only the enforcement of "provision[s]" to settle a controversy "by arbitration," and not any provision that happens to appear in a contract that features an arbitration clause. 142 S. Ct. at 1919 n.5.

---

[5] After the *Burnett* defendants appealed the district court's denial of their motion to compel arbitration, the plaintiffs moved for summary affirmance on the ground that defendants' appeal was directly resolved by the Third Circuit's subsequent decision in *Henry*. The Third Circuit granted plaintiffs' motion and summarily affirmed the district court's decision. *See Burnett v. Prudent Fiduciary Servs. LLC*, No. 23-1527, 2023 WL 6374192 (3d Cir. Aug. 15, 2023).

The Supreme Court's *Thole* decision also fails to support Defendants' position. Defendants argue that an ERISA section 502(a)(2) claim is not analogous to *Viking River*'s "agent or proxy" type of representative PAGA action because *Thole* makes clear that participants bringing such claims must have suffered a personal injury, which Defendants contend would not be true if participants brought such claims as an "agent or proxy" of the plan. Appellants' Br. at 38. In fact, *Thole* states just the opposite: for plaintiffs to have representative standing, they must show they suffered an injury in fact. *Thole* stated that "*in order to claim 'the interests of others*, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" *Thole,* 140 S. Ct. at 1620 (emphasis added) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)); *see also Gollust v. Mendell*, 501 U.S. 115, 125–26 (1991) (suggesting that shareholder must "maintain some continuing financial stake in the litigation" to have Article III standing to bring an insider trading suit on behalf of the corporation). The *Thole* plaintiffs did not suffer an injury in fact because they continued to receive their contractually fixed benefits under their defined benefit plan. *Thole,* 140 S. Ct. at 1620. As the district court here noted, this case involves a defined-contribution employee stock ownership plan, and unlike the *Thole* plaintiffs, Plaintiffs here have a concrete interest in the outcome because "Plaintiffs' individual stake in their claims seeking Plan-wide relief are

'proportional to the claims and losses of fellow participants.'" *Coleman*, 2023 WL

4498506, at *16 (quoting *Perez*, 823 F.3d at 258).

### C.    The Remedy Limitation is distinct from the waivers of procedural class actions upheld by the Supreme Court

The district court also properly rejected Defendants' attempt to conflate the

Remedy Limitation with the type of class-arbitration waiver that the Supreme

Court has determined to be enforceable, such as in *Gilmer v. Interstate/Johnson*

*Lane Corp.*, 500 U.S. 20, 27–32 (1991). *See* Appellants' Br. at 26–27, 33. As

Defendants acknowledge (*id.* at 33), *Gilmer* involved an agreement allowing

employees to bring a collective action, i.e., to sue on behalf of themselves and

other employees similarly situated; not one that prohibited statutory remedies. *See*

*Gilmer*, 500 U.S. at 32. But the district court here rested its decision not on the

Arbitration Procedure's failure to allow collective or class arbitration *procedures*,

but on its preclusion of a *substantive* statutory remedy guaranteed under ERISA.

*Coleman*, 2023 WL 4498506, at *3. Thus, the district court correctly found that the

Remedy Limitation restricts the *remedies* available to participants rather than

simply the *manner* of arbitration, as in *Gilmer*. The Remedy Limitation provision

itself could not be clearer on this point: "[W]ith respect to any claim brought under

ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, *the Claimant's*

*remedy*, if any, shall be limited . . . ." ROA.173 [§A-2(b)] (emphasis added). Thus,

far from a *procedural* class action waiver, Defendants have attempted to re-write ERISA's *substantive* remedial scheme through an arbitration agreement.

Defendants argue that the ability to seek a plan-wide remedy is not a "substantive" right under ERISA. Appellants' Br. at 30–31. Defendants contend that "the right to represent the entire plan and all of its plan accounts is a procedural right which can be waived" and the only substantive right participants have "is the right to assert claims relating to their own individual plan accounts." Appellants' Br. at 31. But representative actions and class actions are hardly one and the same. As the Supreme Court recently noted in *Viking River*, in contrast to the procedural device of a class action, "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of *substantive law*." 142 S. Ct. at 1922 (emphasis added). Specifically, the court stated that, "familiar examples [of non-class representative actions] include shareholder-derivative suits, wrongful-death actions, trustee actions, and suits on behalf of infants or incompetent persons." *Id.* Here, a plan participant bringing an action on behalf of a plan for plan-wide relief is akin to the non-class representative actions that the Supreme Court stated were part of the substantive law. *See id.*

Defendants similarly argue that a representative action under ERISA section 502(a)(2) is a form of claim joinder, like the second species of PAGA actions at

issue in *Viking River*. Appellants' Br. at 40. To support their position, Defendants point to *Coan v. Kaufman*, where the Second Circuit affirmed the dismissal of an ERISA section 502(a)(2) claim because the plaintiff failed to "employ procedures to protect effectively the interests" of other plan participants. 457 F.3d 250, 259 (2d Cir. 2006). But substantive rights may often require procedural safeguards. The need for the latter in no way means the right in question is not a "substantive" one and is instead akin to "claim joinder" (a term the Second Circuit nowhere used). For instance, the right to bring a shareholder-derivative action, which *Viking River* specifically referenced as substantive, is also accompanied by Federal Rule of Civil Procedure 23.1's procedural safeguards. *See* Fed. R. Civ. P. 23.1 ("The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.").

Accordingly, none of Defendants' arguments undermine the district court's sound decision that the Arbitration Procedure is unenforceable because its non-severable Remedy Limitation prospectively waives Plaintiff's ERISA-conferred right to bring an action on behalf of the Plan for plan-wide relief.

## CONCLUSION

The Secretary respectfully requests that this Court affirm the district court's denial of Defendants' motion to compel arbitration.

Respectfully submitted,

Date: November 16, 2023

SEEMA NANDA
Solicitor of Labor

WAYNE R. BERRY
Associate Solicitor
 for Plan Benefits Security

JEFFREY M. HAHN
Counsel for Appellate and Special
 Litigation

/s/ Brendan Ballard
Brendan Ballard
Senior Trial Attorney

U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Ave. NW, N4611
Washington, DC 20210
202.693.5600 (t) | 202.693.5610 (f)

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a)(5), 32(a)(5)–(6), and 32(a)(7)(B), I certify that this amicus brief uses a 14-point proportionally spaced typeface font (Times New Roman) and contains 6358 words.

/s/ Brendan Ballard
Brendan Ballard
Senior Trial Attorney

Date: November 16, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this day, November 16, 2023, I electronically filed the foregoing amicus brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Brendan Ballard
Brendan Ballard
Senior Trial Attorney

Date: November 16, 2023