No. 23-10832

# In the United States Court of Appeals for the Fifth Circuit

---

JASON COLEMAN, ON BEHALF OF THE RVNB HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, AND ON BEHALF OF A CLASS OF ALL OTHER PERSONS SIMILARLY SITUATED; JESSICA CASEY, ON BEHALF OF THE RVNB HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, AND ON BEHALF OF A CLASS OF ALL OTHER PERSONS SIMILARLY SITUATED,

*Plaintiffs-Appellees*,

v.

NEIL M. BROZEN; ROBERT PETERSON, JR.; VASILIA PETERSON; MIKE PAXTON; STERLING INVESTMENT PARTNERS III, L.P.; NICK BOURAS; NICOLE PETERSON 2012 IRREVOCABLE TRUST; BROOKE PETERSON 2012 IRREVOCABLE TRUST,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

---

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

---

Todd D. Wozniak
**HOLLAND & KNIGHT LLP**
1180 West Peachtree Street NW,
Suite 1800
Atlanta, GA 30309
404-817-8431
todd.wozniak@hklaw.com

J. Christian Nemeth
**MCDERMOTT WILL & EMERY, LLP**
333 SE 2nd Ave., Suite 4500
Miami, FL 33131
305-358-3500
jcnemeth@mwe.com

Lindsey R. Camp
**HOLLAND & KNIGHT LLP**
West Tower, 777 S. Flagler Dr.,
Suite 1900
West Palm Beach, FL 33401
404-817-8439
lindsey.camp@hklaw.com

Melissa Davis Andrews
**HOLLAND & KNIGHT LLP**
98 San Jacinto Blvd., Suite 1900
Austin, TX 78701
512-469-6100
melissa.davis@hklaw.com


Counsel for Defendants-Appellants
Robert Peterson, Jr.; Vasilia Peterson;
Mike Paxton; Sterling Investment
Partners III, L.P.; Nick Bouras; Nicole
Peterson 2012 Irrevocable Trust;
Brooke Peterson 2012 Irrevocable
Trust

Peter B. Allport
**LEVIN SCHREDER & CAREY, LTD.**
120 N. LaSalle St., Floor 38
Chicago, IL 60602
312-895-6359
pallport@lsclaw.com

Counsel for Defendant-Appellant Neil
M. Brozen

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION AND SUMMARY ................................................................1

    A.   The right to bring representative claims under Section 502(a)(2)
         is waivable ...................................................................................3

        1.   ERISA permits individual capacity suits under Section
             502(a)(2) to vindicate Section 409 ......................................4

        2.   The right to bring a representative-capacity suit on behalf of
             the Plan is a procedural right, not a substantive one .........8

    B.   The arbitration procedure in this case does not otherwise foreclose
         any substantive rights conferred by ERISA .............................15

        1.   All of the equitable remedies sought in the Complaint would
             be available in individual arbitration................................16

        2.   Removal of a trustee—which is no longer possible and was
             not sought—would have been available in arbitration if there
             were a trustee left to remove............................................20

    C.   The Court should remand to the district court to determine the
         validity of the 2018 Plan amendment in the first instance.......................21

CONCLUSION .........................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chamber of Commerce v. U.S. Department of Labor*,
  885 F.3d 360 (5th Cir. 2018) ............................................................. 22-23

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) .......................................................................... 19

*Cinerama, Inc. v. Technicolor, Inc.*,
  663 A.2d 1134 (Del. Ch. 1994),
  *aff'd*, 663 A.2d 1156 (Del. 1995) ........................................................ 18

*Coan v. Kaufman*,
  457 F.3d 250 (2d Cir. 2006) ............................................................... 12

*Coleman v. Brozen*,
  No. 4:19-cv-705, 2020 WL 2200220 (E.D. Tex. May 6, 2020) ........ 23, 24

*Conley v. Pitney Bowes*,
  34 F.3d 714 (8th Cir. 1994) ............................................................... 23

*D.R. Horton, Inc. v. N.L.R.B.*,
  737 F.3d 344 (5th Cir. 2013) ........................................................... 2, 9

*Deposit Guaranty National Bank v. Roper*,
  445 U.S. 326, 332 (1980) ................................................................... 2

*Dorman v. Charles Schwab Corp.*,
  934 F.3d 1107 (9th Cir. 2019) ........................................................... 23

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ...................................................................... 13

*Geiger v. United States*,
  707 F.2d 157 (5th Cir. 1983) ............................................................. 17

*Guaranty Trust Co. v. York*,
  326 U.S. 99 (1945) ........................................................................... 13

*In re Currency Conversion Fee Antitrust Litigation*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...................................................... 21

*In re Orchard Enterprises, Inc. Stockholder Litigation*,
    88 A.3d 1 (Del. Ch. 2014) .............................................................. 17-18

*In re RONFIN Series C Bonds Security Interest Litigation*,
    182 F.3d 366 (5th Cir. 1999) ........................................................... 18, 19

*In re Schering Plough Corp. ERISA Litigation*,
    589 F.3d 585 (3d Cir. 2009) ...................................................................... 7

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
    552 U.S. 248 (2008)............................................................................ *passim*

*Lewis v. Knutson*,
    699 F.2d 230 (5th Cir. 1983) .................................................................. 11

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .................................................................. 12

*Massachusetts Mutual Life Insurance Co. v. Russell*,
    473 U.S. 134 (1985)....................................................................... 4, 5, 7

*Mississippi Publishing Corp. v. Murphree*,
    326 U.S. 438 (1946)...................................................................... 13, 14

*Nichols v. Alcatel USA, Inc.*,
    532 F.3d 364 (5th Cir. 2008) .................................................................... 6

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) .................................................................. 17

*Rachal v. Reitz*,
    403 S.W.3d 840 (Tex. 2013) .................................................................. 24

*Randall v. Loftsgaarden*,
    478 U.S. 647 (1986)............................................................................... 18

*Smith v. Aegon Companies Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) .................................................................. 23

*Smith v. Board of Directors of Triad Manufacturing, Inc.*,
   13 F.4th 613 (7th Cir. 2021) ............................................................ 5, 8, 15

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ...................................................................... 10, 11

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ................................................................................. 6

*Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) ............................................................................... 10

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ................................................................... *passim*

*Vonkeisler v. Unigate Restaurants, Inc.*,
   20 F.3d 468 (5th Cir. 1994) .................................................................... 6

*Ward v. Santa Fe Independent School District*,
   393 F.3d 599 (5th Cir. 2004) ................................................................ 10

*Zapata v. Melson*,
   750 F.3d 481 (5th Cir. 2014) ................................................................ 22

## Statutes and Rules

29 U.S.C. § 1109(a) ............................................................................. 13, 17

29 U.S.C. § 1132(a)(2) ........................................................................ 15, 17

Fed. R. Civ. P. 23 ...................................................................................... 12

Fed. R. Civ. P. 23.1 ................................................................................... 12

## INTRODUCTION AND SUMMARY

There is no doubt after *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), that individual plan participants in defined contribution plans may pursue individual claims under ERISA Section 502(a)(2) to obtain individual relief for alleged violations of ERISA Section 409. *See* 552 U.S. at 255-56. If an individual plan participant in such a case prevails on the merits, she is entitled to all the personal relief that ERISA makes available, including damages and whatever equitable relief deemed appropriate and necessary to prevent irremediable harm to the participant's account. Plaintiffs' arguments focus on the remedies that are supposedly available under ERISA and on the claim that the Plan's arbitration procedure eliminates those remedies in violation of the law. Plaintiffs are wrong. The Plan's arbitration procedure allows individual Plan participants to pursue the same substantive remedies available to them under ERISA, to the extent those remedies relate to the participant's individual account. The Plan's arbitration procedure preserves all the remedial or equitable relief necessary to restore any "losses to the Claimant's individual Plan account" and cure the alleged breach of fiduciary duty. ROA.173 [§ A-2(b)].

The only thing that a claimant is barred from doing is seeking "additional benefits or monetary relief" on behalf of absent third parties by pursuing a class or representative action. ROA.173 [§ A-2(b)]. Both Plaintiffs and the Department of

1

Labor (the "DOL") say that the effective vindication doctrine prohibits this limitation. But it is well settled that only *substantive* rights are nonwaivable, whereas *procedural* rights maybe be contracted away. This puts Plaintiffs and the DOL in the uncomfortable position of arguing that the two named Plaintiffs in this case enjoy a *personal substantive right* under ERISA to obtain monetary relief, not just for themselves personally, but also for absent third-party Plan participants. That is hard to square with the Supreme Court's repeated conclusion that any right to seek relief for absent third parties is procedural and thus waivable.

Plaintiffs insist that bringing a Section 502(a)(2) claim on a plan-wide basis is substantive because it implicates a "unitary" injury to the Plan. The nature of the asserted injury, however, has *no* bearing on whether the right to proceed on a representative basis is procedural right or substantive. Under controlling precedent, this right is procedural—it is "ancillary to the litigation of substantive claims" themselves. *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 357 (5th Cir. 2013) (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980)).

Plaintiffs and the DOL say that the arbitration procedure violates the effective vindication doctrine because, apart from its waiver of representative-capacity claims, it forecloses equitable remedies that are available in court. Plaintiffs seek recission, an equitable lien, and surcharge. But these remedies would be available only if monetary relief is inadequate to make Plaintiffs whole. In any event, the effect

2

of these remedies is to make Plaintiffs whole for losses allegedly suffered to their Plan accounts. The arbitration procedure expressly allows that relief, on an individual Plan account basis. The only other remedy that Plaintiffs invoke—removal of a trustee—had not been sought and is unavailable given that the trust was terminated years ago. At bottom, the arbitration procedure in this case does not waive any substantive rights. For those reasons, the reasons given in the Opening Brief, and the additional reasons furnished below, the order of the district court should be reversed.

## A.    The right to bring representative claims under Section 502(a)(2) is waivable

The Parties disagree whether the right to proceed on a representative basis under ERISA is waivable by contract or not. The Plan's arbitration procedure requires that any action for losses under the Plan be brought solely in an individual capacity. Plaintiffs argue that this arbitration procedure is invalid because ERISA Section 409 gives them a substantive right to bring a claim, as a representative of the plan, seeking plan-wide remedies. Plaintiffs are incorrect. The right to proceed on a representative basis under ERISA is procedural. As this Court's and the Supreme Court's cases make clear, this right is waivable.

### 1. ERISA permits individual capacity suits under Section 502(a)(2) to vindicate Section 409

The starting point is the question of whether ERISA permits individual capacity suits to vindicate Section 409. As Defendants demonstrated in the Opening Brief (at 34-36), it does.

*LaRue* makes this clear. There, the Supreme Court held that participants in a defined contribution plan, like the two named Plaintiffs here, may pursue individual claims under Section 502(a)(2) for violations of Section 409, seeking to recover only the plan losses attributable to their personal accounts. 552 U.S. at 256. In reaching that conclusion, the Court expressly rejected the Fourth Circuit's holding that "[Section] 502(a)(2) provides remedies only for entire plans, not for individuals." *Id*. at 250. The Court explained that its language in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), suggesting that ERISA provides only "remedies that would protect the entire plan," applies only to defined benefit plans and "does not apply to defined contribution plans" involving individual participant accounts. *LaRue*, 552 U.S. at 254, 256.

Thus, although an injury to a single participant's account is technically not "distinct from [a] plan injur[y]" given that an individual account is a part of the plan, ERISA nonetheless "does authorize recovery" by an individual plan participant "for fiduciary breaches that impair the value of plan assets in [the] participant's

4

individual account." *LaRue*, 552 U.S. at 256. The Court thus allowed the individual plaintiff's claim challenging an injury to his individual account to proceed. *Id*.

The Seventh Circuit acknowledged this in *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613 (7th Cir. 2021). There, the Seventh Circuit held that when a Section 502(a)(2) case involves "a defined contribution plan," it is "*LaRue*, and not *Russell*, [that] governs." *Id*. at 622. And because Section 502(a)(2) claims by individual participants are permissible in such cases, it follows that "individualized arbitration [is not] inherently incompatible with ERISA." *Id*.

Ignoring *LaRue*, Plaintiffs argue that Section 502(a)(2) claims "can *only* be brought in a representative capacity" seeking benefits for the entire plan (Pls.' Br. at 12 (emphasis in original)) and never individually to recover damages to an individual account (*id*. at 20). As support for this position, Plaintiffs rely on *Russell*, asserting that the "Supreme Court and this Court have time and again held that [Section 502(a)(2)] claims are 'brought in a representative capacity on behalf of the plan as a whole.'" *Id*. (quoting *Russell*, 473 U.S. at 142 n.9).

That is a bewildering position given that *LaRue* held that *Russell*'s reasoning "does not apply to defined contribution plans." 552 U.S. at 256. It would be a challenge to miss *LaRue*'s rejection of *Russell* for defined-contribution cases like this one—all the more so because Defendants quoted the relevant passage from *LaRue* on page 35 of the Opening Brief.

Plaintiffs' citation to *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364 (5th Cir. 2008), involves an even more stunning disregard for *LaRue*. They quote this Court's decision in that case as stating that, "[b]ased on *Russell*, many courts have held that claims for breach of fiduciary duty under § 502(a)(2) . . . must be brought in a representative capacity on behalf of the plan as a whole, with the goal of protecting the financial integrity of the plan." Pls.' Br. at 20 (quoting *Nichols*, 532 F.3d at 376). But Plaintiffs omit the very next sentence: "However, in its recent decision in *LaRue*, the Supreme Court narrowed the holding of *Russell* and held that § 502(a)(2) 'does authorize recovery for fiduciary breaches that impair the value of plan assets in a participants' individual account.'" 532 F.3d at 376 (quoting *LaRue*, 552 U.S. at 256). Plaintiffs' omission of this key sentence gives the misleading impression that *Nichols* stands for the exact opposite of what it actually says.

It is also difficult to understand Plaintiffs' citation to opinions like *Vonkeisler v. Unigate Restaurants, Inc.*, 20 F.3d 468 (5th Cir. 1994) (per curiam), and *Varity Corp. v. Howe*, 516 U.S. 489 (1996) (Thomas, J., dissenting), which—aside from being facially nonbinding—were abrogated by the subsequent decision in *LaRue.*

Plaintiffs do finally address *LaRue* near the end of their brief, but not in a way that helps them. First, they assert that "*LaRue* in no way limits participants' substantive rights." Pls.' Br. at 37. Of course, that is Defendants' point—*LaRue*'s recognition that individual plan participants may sue for individual damages to their

personal accounts without seeking to recover for all plan participants is a holding about procedure and not the substantive rights afforded by ERISA. Second, Plaintiffs say that "*LaRue* 'broadens, rather than limits, the relief available under' ERISA." Pls.' Br. at 38 (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009)). While *LaRue* is clear that individual defined contribution plan participants can sue to recover their own losses, it does not hold that such participants have a substantive right to sue for other participants' alleged losses.

The DOL's position on *LaRue* is similar to Plaintiffs' position and is similarly unpersuasive. Like Plaintiffs, the DOL focuses on *Russell*, citing it for the proposition that ERISA "provides relief singularly to the plan as opposed to an individual beneficiary" and can only provide relief that "inures to the benefit of the plan as a whole." DOL Br. at 8 (cleaned up) (quoting *Russell*, 473 U.S. at 140, 142). But, again, *Russell* was a defined-benefit case, and *LaRue* held that its reasoning "does not apply to defined contribution plans" like the one here. 552 U.S. at 256. Plaintiffs' and the DOL's decision to ignore *LaRue*'s holding is inexplicable.

Beyond that, the DOL asserts that "participants pressing section 502(a)(2) claims act on the plan's behalf even in the context of defined contribution plans" and even when they are seeking damages for their individual accounts. DOL Br. at 10. "[I]t follows," the DOL insists, "that they should be permitted to recover (for the plan's benefit) *all* plan losses." *Id.* (emphasis in original). Here, again, Defendants

7

do not disagree—plan participants, including participants in a defined contribution plan, assuredly *are* permitted by ERISA to seek recovery in a representative capacity for the entire plan, provided that appropriate procedural rules (such as Rule 23 or 19) are met. But that is not the question. The question, instead, is whether the right to do so is a procedural right that may be waived by contract, or whether it is a substantive right that may not. As Defendants have demonstrated, it is procedural. Nothing in Plaintiffs' or the DOL's briefs show that the right to sue collectively is a substantive right.

### 2. The right to bring a representative-capacity suit on behalf of the entire Plan is a procedural right, not a substantive one

After *LaRue*, there is no doubt that ERISA permits participants in defined-contribution plans to bring claims *either* individually *or* on a representative basis for all participants in the plan. In addition to requiring arbitration of such claims, however, the arbitration procedure waives the ability to seek relief on behalf of absent third-party Plan participants. That waiver is enforceable.

Plaintiffs make two important concessions. First, they admit that arbitration provisions are generally enforceable under ERISA. Pls.' Br. at 18. As the Seventh Circuit explained in *Smith*, there is "no contrary congressional command precluding arbitration" in ERISA cases. 13 F.4th at 620 (citation and internal quotation marks omitted). Second, Plaintiffs concede that procedural rights may be waived through

arbitration procedures. In fact, Plaintiffs acknowledge that "class or collective actions are procedural mechanisms" that may be waived. *See* Pls.' Br. at 31; *see also D.R. Horton*, 737 F.3d at 357 (holding that "[t]he use of class action procedures . . . is not a substantive right" but rather "a procedural device" that may be waived).

The question in this appeal, therefore, is whether any right to bring ERISA claims on a representative basis is a waivable procedural right like the right to proceed on a class-action basis, or whether it is instead among the non-waivable substantive rights established by ERISA.

As Defendants explained in the Opening Brief (at 37-43), the right under ERISA to bring an action in a representative capacity is procedural only. There is only one sense in which a statute conferring a right to bring representative-capacity actions can be understood as granting a *substantive* right. That is when it confers a distinct right of "representative standing" to bring lawsuits "as representatives—that is, as agents or proxies—of" some principal, like *qui tam* standing under the False Claims Act. *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1916-17 (2022). In such a case, to foreclose representative-capacity suits is to foreclose an entire statutorily-conferred cause of action. But that is *not* how Section 502(a)(2) works.

It is well settled that Section 502(a)(2) claimants—even when proceeding in a representative capacity—must have individual Article III standing. *See* Opening Br. at 38-40; *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020). That matters

9

because individual injury-in-fact would not be necessary if representative-capacity claimants under Section 502(a)(2) came to court as agents of the plan, asserting only injuries to the plan. A plaintiff bringing a principal-agent claim does not assert injuries of her own; she sues only for the principal's injuries. *See, e.g.*, *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 774, 778 (2000) ("a *qui tam* relator under the FCA has Article III standing" because "the United States' injury in fact suffices to confer standing" on her by assignment); *see also Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir. 2004) (parties who "do not have standing *individually*" may still have "standing to sue as next friends" of an absent party whose interests they represent). If individual standing were unnecessary and the right conferred by Section 502(a)(2) to sue in a representative capacity for remedies under Section 409 were in fact a substantive right, then *Thole* would have turned out differently.

Because the Supreme Court has said that ERISA claimants must always have Article III standing in their own right to proceed under Sections 502(a)(2) and 409 to remedy their own injuries, it stands to reason that Sections 502(a)(2) and 409 do not confer a statutory right of action to bring purely principal-agent representational claims. As Defendants showed in the Opening Brief (at 39-41), the more accurate way to characterize representational claims in defined-contribution cases is as authorizing claimants "to unite multiple claims against an opposing party in a single

action," meaning simple "claim joinder." *Viking River Cruises*, 142 S. Ct. at 1915. And a right to claim joinder is procedural and waivable. *Id*.

Plaintiffs effectively concede this very point in their brief when they assert that "a plan cannot consent to arbitrate a § 1132(a)(2) [ERISA Section 502(a)(2)] claim on a plan participant's behalf in light of the participant's personal interest in the claim." Pls.' Br. at 44. They claim this is because "although the participant sues on behalf of the plan, she maintains a personal stake in an § 1132(a)(2) claim." *Id*. That is precisely Defendants' point, and it is why representative-capacity suits in defined contribution cases are, in fact, claim-joinder devices.

This is what distinguishes Sections 502(a)(2) representative claims from *qui tam* actions, where the relator has no independent injury and asserts only an injury to the United States. And it is likewise what distinguishes shareholder derivative actions, where likewise "the shareholder has no standing to bring a civil action at law against faithless directors and managers, because the corporation and not the shareholder suffers the injury," and the shareholder accordingly must "step into the corporation's shoes" as its agent. *Lewis v. Knutson*, 699 F.2d 230, 237-38 (5th Cir. 1983) (cleaned up); *accord* Pls.' Br. at 33. That does not describe ERISA Section 502(a)(2) claims, as to which personal, individual injury is prerequisite. *See Thole*, 140 S. Ct. at 1620.

Consistent with this conclusion, other courts have recognized that a Section 502(a)(2) representative-capacity suit entails pressing the claims, but of "other interested parties" participating in the plan, necessitating "procedures" closely resembling those of Rule 23. *Coan v. Kaufman*, 457 F.3d 250, 259 (2d Cir. 2006). Again, this would not be necessary if ERISA established a substantive right to pursue purely representative-capacity suits for the plan as principal. Rule 23.1, applicable to shareholder derivative actions, does not suggest otherwise—it merely codifies the basic requirements of due process that apply in any such case. *See, e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 453 (5th Cir. 1983). Rule 23, raised in *Coan*, goes further. Insofar as ERISA contemplates representational litigation, it must be understood, therefore, as authorizing claimants "to unite multiple claims against an opposing party in a single action." *Viking River Cruises*, 142 S. Ct. at 1915.

None of the cases cited at pages 30-31 of Plaintiffs' brief suggests anything different. In each of those cases, the courts simply allowed representative-capacity claims to proceed without class certification, and some ordered awards of plan-wide damages. There is nothing inconsistent with their outcomes and characterizing the right to bring a representational-capacity claim as procedural. Not one of them held a plan participant had a substantive right to pursue representative-capacity claims.

Plaintiffs' and the DOL's other rejoinders are unpersuasive. Offering little more than unexplained say-so, Plaintiffs insist that using Section 502(a)(2) to

challenge an alleged fiduciary breach on a plan-wide basis is "not a mere procedural mechanism" because such cases do not involve "different transactions and different facts," but "a single, unitary injury" to the Plan. Pls.' Br. at 30-31. That is a red herring.

The distinction between substance and procedure does not turn on the differences or similarities among claimants' injuries; it turns on the nature of the right itself. A right is *substantive* when it relates to the "rules of decision" that define the plaintiff's entitlement to recover and defendant's liability to pay. *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 445-46 (1946). That does not describe the right to bring representative-capacity suits under ERISA, which instead "relates merely to the manner and the means by which a right to recover is enforced." *Id.* at 446 (cleaned up) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)).

The statutory language confirms this. ERISA Section 409 speaks to a fiduciary's "liab[ility] to make good to such plan any losses to the plan" caused by a breach of fiduciary duty. 29 U.S.C. § 1109(a). But it "does not mention class or collective action procedures" or in any other way "speak[] to the procedures [that] judges or arbitrators must apply in disputes [in a] courtroom or arbitral forum" when a claimant asserts a violation of the provision. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624-25 (2018). There is simply nothing inconsistent with Section 409's rights-creating language on the one hand, and an assessment of a fiduciary's liability

13

to a defined-contribution plan on an account-by-account basis, on the other hand. The difference between that approach and plan-wide relief relates only to "the manner and the means by which [the] right to recover is enforced." *Mississippi Publ'g*, 326 U.S. at 446.

Even on its own terms, Plaintiffs' characterization of the alleged breach as a "unitary" injury to the Plan does not alter the nature of the claim. The injury Plaintiffs assert in this case is, by definition, experienced by individual Plan participants as a reduction in the value of their personal accounts. That is true even if the injury stems from a single Plan transaction, the sale of stock held by the Plan. And as a practical matter, the end result of a successful representative-capacity suit here would be a recovery of the losses suffered by the individual accounts of Plaintiffs and all similarly situated Plan participants—not a recovery singularly for the plan as some separate and distinct entity unto itself. Again, Plaintiffs effectively concede this point. *See* Pls.' Br. at 44 ("although the participant sues on behalf of the plan, she maintains a personal stake in an § 1132(a)(2) claim"). To say otherwise would be to place formalisms above reality.

For its part, the DOL takes a different tack, pointing to dictum from *Viking River Cruises* for the proposition that the right to bring a "representative action[] in which a single agent litigates on behalf of a single principal" is a "substantive" right. DOL Br. at 25-26 (quoting *Viking River Cruises*, 142 S. Ct. at 1922). While this is

14

true, nothing in *Viking River Cruises* suggests that Section 502(a)(2) representative-capacity claims meet that description. Defendants have shown that they do not and nothing in the DOL's brief changes this analysis. To find otherwise, would mean that the requirements of individual standing and Rule 23-like protections would be inapposite. Moreover, it was a core premise of the Court's decision in *Viking River Cruises* that the right to assert "representative standing" is otherwise "waivable by contract." 142 S. Ct. at 1922. The same is true here.

### B.    The arbitration procedure in this case does not otherwise foreclose any substantive rights conferred by ERISA

For these reasons just given, the arbitration procedure in this case does not violate the rule of effective vindication merely by requiring claimant-by-claimant litigation and barring recovery for losses suffered by all Plan participants in a single suit. But that is not an end to the appeal, because Plaintiffs assert that the procedure violates the effective vindication rule for a related but distinct reason—they say it forbids certain substantive (equitable) remedies that otherwise would be available to them in court. *Cf. Smith*, 13 F.4th at 622 ("the problem with the plan's arbitration provision is its prohibition on certain plan-wide remedies, not plan-wide representation"). That, too, is wrong. In fact, all relief available in court is available in individual arbitration.[1]

---

[1] Claims to recover Section 409 remedies are brought under ERISA Section 502(a)(2). 29 U.S.C. § 1132(a)(2). Certain claims in the First Amended Complaint,

### 1.    All of the equitable remedies sought in the Complaint would be available in individual arbitration

As Plaintiffs see it, "plan-wide remedies are the core purpose of claims under § 1132(a)(2)," and the Plan's arbitration procedure "impermissibly eliminates these [plan-wide] remedies." Pls.' Br. at 12-13. The DOL takes a similar position, insisting that the arbitration procedure "restricts the *remedies* available to participants rather than simply the *manner* of" resolving their substantive claims. DOL Br. at 24 (emphases in original). But in support of this argument, neither Plaintiffs nor the DOL rely on anything more than unexplained generalities and abstractions. Neither identifies specific remedies that are supposedly available in representative-capacity suits in court but not in claimant-by-claimant suits in arbitration. That is because there are none.

Plaintiffs say that the arbitration procedure "precludes an arbitrator from ordering rescission of the Stock Sale, imposing a constructive trust or equitable lien on funds wrongfully held by Defendants, or ordering plan-wide equitable

---

such as the claims against Defendant Sterling Investment Partners II, L.P., are brought only under a different section of ERISA, Section 502(a)(3), and relief for such claims is limited by the statutory text to "appropriate equitable relief." Whether the relief Plaintiffs seek is "appropriate equitable relief" is beyond the scope of this appeal, so Defendants do not address that issue here. Indeed, Plaintiffs do not argue that the Plan's arbitration procedure impaired any right to a remedy available under Section 502(a)(3).

surcharge—all of which are equitable remedies available under ERISA, and all of which Plaintiffs seek here." Pls.' Br. at 21-22. But that is simply wrong.

To begin with, it is not clear that Section 409 actually grants a right to rescission. It gives a participant a statutory right to obtain a remedy that "makes good" for any "losses" resulting from a breach of fiduciary duty. *See* 29 U.S.C. § 1109(a). Further, Section 502(a)(2), in turn, authorizes courts to enter only "appropriate relief" to that end. *See* 29 U.S.C. § 1132(a)(2). Yet rescission would never be "appropriate" unless monetary relief were inadequate to make good on losses caused by the fiduciary's breach. *See Geiger v. United States*, 707 F.2d 157, 161 (5th Cir. 1983). That will never be so in ERISA fiduciary-breach cases involving defined-contribution plans, where (as here) the crux of the case is simple monetary harms. Thus, although "Fifth Circuit cases have recognized [the availability of recission] in passing, [none has ever] granted, rescission of the transaction as an authorized ERISA remedy." *Perez v. Bruister*, 823 F.3d 250, 265 (5th Cir. 2016) (denying recission because damages were adequate). For their part, Plaintiffs simply assume such relief is available to them.

Setting that aside and assuming for the sake of argument that recission is available in cases like this, it *would* be available in individual arbitrations. That is because the remedy of recission has never exclusively comprised an actual un-winding of the transaction at issue. *See In re Orchard Enters., Inc. Stockholder*

*Litig.*, 88 A.3d 1, 39 (Del. Ch. 2014); *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1144 (Del. Ch. 1994), *aff'd*, 663 A.2d 1156 (Del. 1995). "[W]hen equitable rescission of a transaction would be appropriate," the remedy in actual practice can be *either* an unwinding *or* simply "rescissory damages." *Cinerama*, 663 A.2d at 1144; *see also Randall v. Loftsgaarden*, 478 U.S. 647, 659-62 (1986) (repeatedly describing the "rescissory remedy" as including "rescission or a rescissory measure of damages").

As the Delaware courts (expert in matters of equity) have held, "[r]escissory damages are the monetary equivalent of rescission" and are appropriately awarded when recission is deemed warranted. *Orchard Enters.*, 88 A.3d at 38 (citation and internal quotation marks omitted). As the name suggests, "rescissory damages function to put a party in the same financial position it would have occupied prior to the initiation of a transaction which is found to be invalid or voidable." *Cinerama*, 663 A.2d at 1144. Accordingly, recission, taken to mean rescissory damages, is available on a claim-by-claim basis in individual arbitrations under the arbitration procedure at issue here.

The same goes for "a constructive trust or equitable lien on funds wrongfully held by Defendants." Pls.' Br. at 22. Again, such relief would be available only if "there is no adequate remedy at law." *In re RONFIN Series C Bonds Sec. Int. Litig.*, 182 F.3d 366, 371 (5th Cir. 1999). Moreover, an equitable lien or constructive trust

requires "an express or implied agreement between the parties demonstrating a clear intent to create a security interest [in specific property] in order to secure an obligation between them." *Id*. Even imagining that were a conceptual fit to ERISA breach-of-fiduciary cases like this (it is not, not least because simple damages will always suffice), there is no reason that an arbitrator could not impose an equitable lien on specific property for the benefit of an individual claimant alone. Such relief can be meted out individually and need not be granted in gross. Neither Plaintiffs nor the DOL have made any effort to show otherwise.

Likewise the equitable remedy of "surcharge," which traces to the era before the merger of law and equity and is a mere "monetary remedy against a trustee," requiring "a trust or beneficiary [to be] made whole following a trustee's breach of trust." *CIGNA Corp. v. Amara*, 563 U.S. 421, 442, 444 (2011). In modern litigation not complicated by the division of law and equity, a surcharge is nothing more than an award of monetary relief, which obviously can be awarded individually.

The two Plaintiffs here are really asking only for money. That can plainly be addressed on an individual basis. In the event monetary relief were somehow inadequate, they seek equitable remedies that are merely alternative ways of obtaining monetary relief. Such relief also can be awarded claimant by claimant under the arbitration procedure at issue here.

**2.    Removal of a trustee—which is no longer possible and was not sought—would have been available in arbitration if there were a trustee left to remove**

The sole non-monetary equitable remedy discussed in the parties' briefing is "removal of a fiduciary." *See* Pls.' Br. at 23; DOL Br. at 17 n.4. But for two reasons, that is no basis for declining to enforce the arbitration procedure on that basis.

*First*, Plaintiffs do not, (and could not) seek removal of a fiduciary in this case. The Plan has been terminated and the Plan Trust no longer exists. ROA.242-244. As such, there is no trustee to be removed. It is thus wrong for Plaintiffs to say that the dispute resolution procedure at issue here limits remedies otherwise available to them because removal of a trustee is categorically unavailable in this case, regardless of whether the Court enforces the arbitration procedure.

*Second*, it also would be wrong to say that removal or replacement of a trustee would have been unavailable even if the Plan Trust still existed. As Defendants explained in the Opening Brief (at 18, 44 n.5), removal and replacement of a trustee may have an incidental impact on other participants in the plan, but it does not constitute a "benefit[] or monetary relief" (ROA.173 [§ A-2(b)]) obtained on behalf of or for absent third parties, which is what the arbitration procedure is plainly aimed at foreclosing. Removal and replacement of a trustee is therefore permitted in individual arbitrations by the plain terms of the arbitration procedure.

Plaintiffs say that Defendants' argument on this score is a mere "after-the-fact effort to escape the plain meaning" of the procedure, which "unquestionably bars fiduciary removal." Pls.' Br. at 23-24. But that is simply incorrect. At most, the language of the arbitration procedure is ambiguous on this point. Defendants expressly waive the interpretation that Plaintiffs contend would render the procedure unenforceable. *Cf. In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 411-12 (S.D.N.Y. 2003) (defendants' waiver of fee-shifting rights meant plaintiff could not rely on arbitration costs as ground for finding arbitration agreement unconscionable).

At bottom, the arbitration procedure here entails a waiver only of procedural rights and not substantive rights. It is thus valid and enforceable.

### C. The Court should remand to the district court to determine the validity of the 2018 Plan amendment in the first instance

Plaintiffs devote nearly one third of their argument section to an alternative argument, i.e., that the 2018 Plan amendment is unenforceable under general rules of contract formation.[2] *See* Pls.' Br. at 41-51. The Court can and should summarily reject the invitation to address that issue.

The district court did not reach or resolve Plaintiffs' challenge to the validity of the 2018 Plan amendment under general rules of contract law. *See* ROA.1697.

---

[2] Although not relevant to the appeal, Plaintiffs' recitation of the purported facts is materially inaccurate.

That alone is reason to disregard Plaintiffs' argument on this point. Few rules of procedure are better settled than the rule that "federal appellate courts do not resolve questions not passed on by the district court." *Zapata v. Melson*, 750 F.3d 481, 486 n.3 (5th Cir. 2014).

There is no basis for disregarding that rule in this case. Whether the circumstances here produced an enforceable contract is a fact-intensive issue that must first be aired before the district court. For this Court to resolve the issue in the first instance would be manifestly premature, denying both the Parties and this Court of the benefit of fulsome development of the issues on remand. If the Court concludes (as it should) that the arbitration procedure here does not violate the effective vindication doctrine, the appropriate course would therefore be to reverse and remand for consideration of Plaintiffs' alternative arguments in the first instance before the district court.

In all events, Plaintiffs' alternative arguments are meritless. Plaintiffs argue that principles of Texas law with respect to unilateral contracts should govern and that, applying such principles, the arbitration procedure is unenforceable because Plaintiffs never assented to be bound by the arbitration procedure. Pls.' Br. at 48-49. Plaintiffs are wrong because Texas law does not apply here. Rather, principles of the common law of trusts and federal common law govern the interpretation of ERISA plans where the statute is silent. *See, e.g.*, *Chamber of Com. v. U.S. Dep't of Labor*,

22

885 F.3d 360, 370 (5th Cir. 2018); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989). Under federal common law, the Plan sponsor assents to any valid amendment on behalf of the plan and such provisions are presumed to be valid. *See Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014); *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019).

In this case, the Plan expressly reserved to RVNB the "right to amend the Plan at any time." *See* ROA.235 [§ 14-1]. In 2018, RVNB exercised that right and amended the Plan to include the arbitration procedure. *See* ROA.171-178. Thus, the Plan assented to the 2018 Plan amendment, including the arbitration procedure. The Plan sponsor's determination to include the arbitration procedure controls. As former participants in the Plan, Plaintiffs are bound by its terms including the arbitration procedure. *Cf. Conley v. Pitney Bowes*, 34 F.3d 714, 717 (8th Cir. 1994) (holding that a plan document is an agreement where promises of future performance are exchanged). Indeed, as the district court held earlier in this case when transferring venue, "RVNB was . . . free to amend or modify the Plan at any time, and it was not obligated to seek Plaintiffs' assent, negotiate with Plaintiffs, or furnish Plaintiffs consideration for the same." *Coleman v. Brozen*, No. 4:19-cv-705, 2020 WL 2200220, at *3 (E.D. Tex. May 6, 2020).

However, even if Texas law was relevant, Plaintiffs have manifested personal assent to the Plan's arbitration procedure amendment under the Texas doctrine of

direct-benefits estoppel. The Texas Supreme Court has held that an arbitration provision in a trust (such as the Plan) is enforceable against a beneficiary of a trust (such as the Plaintiffs) under direct-benefits estoppel when the beneficiary attempts to enforce rights that would not exist without the trust. *See Rachal v. Reitz*, 403 S.W.3d 840, 847 (Tex. 2013). Thus, Plaintiffs cannot disavow the Plan's arbitration procedure because Plaintiffs are seeking to enforce alleged claims that would not exist without the Plan.

Finally, even if the Plan were correctly viewed as a unilateral contract, the 2018 Plan amendment would still be valid and enforceable as to Plaintiffs because the alleged unilateral contract necessarily included RVNB's "right to amend the Plan at any time" to include provisions such as the arbitration procedure. *See* ROA.235 [§ 14-1]. The right to amend has existed in the Plan since its inception, and Plaintiffs agreed to that provision when they chose to participate in the Plan. RVNB's exercise of that right to add a venue provision, arbitration provision, or class action waiver is perfectly permissible and within the terms of the unilateral contract allegedly formed. *See Coleman*, 2020 WL 2200220, at *3.

Having said all that, these issues are complex both factually and legally, and it would not be appropriate for this Court to resolve them in the first instance.

24

### CONCLUSION

For all of the foregoing reasons and the reasons given in the Opening Brief, the Court should reverse the order denying Defendants' motion to compel arbitration and remand to the district court, and grant Defendants any other relief the Court deems just.

Respectfully submitted,

*/s/ Todd D. Wozniak*
Todd D. Wozniak
**HOLLAND & KNIGHT LLP**
1180 West Peachtree Street NW,
Suite 1800
Atlanta, GA 30309
404-817-8431
todd.wozniak@hklaw.com

Lindsey R. Camp
**HOLLAND & KNIGHT LLP**
West Tower, 777 S. Flagler Dr.,
Suite 1900
West Palm Beach, FL 33401
404-817-8439
lindsey.camp@hklaw.com

Melissa Davis Andrews
**HOLLAND & KNIGHT LLP**
98 San Jacinto Blvd., Suite 1900
Austin, TX 78701
512-469-6100
melissa.davis@hklaw.com

Counsel for Defendants-Appellants
Robert Peterson, Jr.; Vasilia Peterson;
Mike Paxton; Sterling Investment
Partners III, L.P.; Nick Bouras; Nicole

*/s/ J. Christian Nemeth*
J. Christian Nemeth
**MCDERMOTT WILL & EMERY, LLP**
333 SE 2nd Ave., Suite 4500
Miami, FL 33131
305-358-3500
jcnemeth@mwe.com

*/s/ Peter B. Allport*
Peter B. Allport
**LEVIN SCHREDER & CAREY, LTD.**
120 N. LaSalle St., Floor 38
Chicago, IL 60602
312-895-6359
pallport@lsclaw.com

Counsel for Defendant-Appellant Neil
M. Brozen

Peterson 2012 Irrevocable Trust;
Brooke Peterson 2012 Irrevocable
Trust

### CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Defendant-Appellant Neil M. Brozen certifies that this brief:

(i)     complies with the type-volume limitation of Rule 32(a)(7) because it contains 5,906 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)     complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it is typeset in Times New Roman in 14 points or larger.

*/s/ Peter B. Allport*
Peter B. Allport

Counsel for Defendant-Appellant Neil M. Brozen

Dated: December 7, 2023

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing document has been served via the Court's

ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of

Appellate Procedure, on December 7, 2023, on all registered counsel of record, and

has been transmitted to the Clerk of the Court.

*/s/ Peter B. Allport*
Peter B. Allport

Counsel for Defendant-Appellant Neil M.
Brozen

1056008.2